UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| FRED LEIGHTON HOLDING, INC., <u>et al.</u>, | Case No. 08-11363 (RDD) |
| Debtors. | Jointly Administered |

## JOINT AND CONSOLIDATED PLAN OF REORGANIZATION AND LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

HERRICK, FEINSTEIN LLP
Joshua J. Angel
Frederick E. Schmidt, Jr.
2 Park Avenue
New York, New York 10016
Telephone:  (212) 592-1400
Facsimile:  (212) 592-1500

Counsel to the Debtors


DEWEY & LEBOEUF LLP
Judy G.Z. Liu
1301 Avenue of the Americas
New York, New York  10019
Telephone:  (212) 259-8000
Facsimile:  (212) 259-6333

Special Counsel to the Debtors

Dated: October 9, 2009

CADWALADER, WICKERSHAM & TAFT LLP
John J. Rapisardi
Zachary H. Smith
Christopher J. Updike
One World Financial Center
New York, New York  10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666

Counsel to Merrill Lynch Mortgage Capital Inc.

# TABLE OF CONTENTS

Page

ARTICLE 1 DEFINITIONS AND RULES OF INTERPRETATION .................................................. 1

Section 1.1 Scope of Definitions .............................................................................. 1
Section 1.2 Definitions .............................................................................................. 1
Section 1.3 Rules of Interpretation .......................................................................... 10

ARTICLE 2 CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS................................... 11

Section 2.1 Classes of Claims and Equity Interests.................................................. 11
Section 2.2 Separate Classification of Other Secured Claims .................................. 12

ARTICLE 3 TREATMENT OF CLAIMS AND EQUITY INTERESTS.......................................... 12

Section 3.1 Class A (Priority Non-Tax Claims)......................................................... 12
Section 3.2 Class B (ML Secured Claim).................................................................. 13
Section 3.3 Class C (Other Secured Claims) ........................................................... 13
Section 3.4 Class D (General Unsecured Claims)...................................................... 13
Section 3.5 Class E (Subordinated Claims) ............................................................. 14
Section 3.6 Class F (Equity Interests) ...................................................................... 14
Section 3.7 Class G (Intercompany Claims) ............................................................. 15

ARTICLE 4 UNCLASSIFIED CLAIMS ....................................................................................... 15

Section 4.1 Treatment of Unclassified Claims........................................................... 15
Section 4.2 Deadline to File Unclassified Claims ..................................................... 16
Section 4.3 Objections to and Settlement of Unclassified Claims ........................... 16

ARTICLE 5 ACCEPTANCE OR REJECTION OF THE PLAN...................................................... 17

Section 5.1 Classes Entitled to Vote......................................................................... 17
Section 5.2 Classes Deemed to Accept..................................................................... 17
Section 5.3 Classes Deemed to Reject...................................................................... 18
Section 5.4 Acceptance by an Impaired Class .......................................................... 18
Section 5.5 Cramdown .............................................................................................. 18
Section 5.6 Elimination of Vacant Classes ............................................................... 18

ARTICLE 6 THE PLAN ADMINISTRATOR ............................................................................... 18

Section 6.1 Appointment and Removal of the Plan Administrator ............................. 18
Section 6.2 Duties and Powers of the Plan Administrator.......................................... 18
Section 6.3 Accounting and Reporting....................................................................... 20
Section 6.4 Plan Expenses......................................................................................... 20
Section 6.5 Limitation of Liability ............................................................................ 21
Section 6.6 Reliance on Documents........................................................................... 22
Section 6.7 Requirement of Undertaking ................................................................... 22

ARTICLE 7    MEANS FOR IMPLEMENTATION.......................................................................22

Section 7.1    Substantive Consolidation ...........................................................................22
Section 7.2    Sale of the FL Auction Assets to the Successful Bidder or Merrill Lynch......................23
Section 7.3    Acknowledgment of Liens and Security Interests of Merrill Lynch ..............................23
Section 7.4    Subordination of Claims Asserted by Esmerian and REI...........................................24
Section 7.5    Disallowance of Duplicative Claims.................................................................24
Section 7.6    Cancellation of Existing Securities and Agreements ..............................................24
Section 7.7    Settlement of Claims of the Family Claimants ....................................................24
Section 7.8    Establishment of NewCo...............................................................................24
Section 7.9    Dissolution of Debtor Entities ......................................................................24
Section 7.10   Establishment of Liquidation Trust ................................................................25
Section 7.11   Effectuating Documents and Further Transactions ...............................................26
Section 7.12   Authority to Act .......................................................................................26

ARTICLE 8    DISTRIBUTIONS.................................................................................................27

Section 8.1    Distribution Record Date.............................................................................27
Section 8.2    Responsibility for and Date of Distributions Under the Plan .....................................27
Section 8.3    Unclassified Claims Reserve .........................................................................28
Section 8.4    Classified Claims Reserve .............................................................................28
Section 8.5    No Distribution in Excess of Allowed Amount of Claim...........................................28
Section 8.6    Distributions with Respect to Disputed Claims .....................................................28
Section 8.7    Distributions with Respect to Defendants ...........................................................29
Section 8.8    Disputed Payments .....................................................................................29
Section 8.9    Postpetition Interest on Claims .......................................................................29
Section 8.10   Setoffs....................................................................................................29
Section 8.11   Delivery of Distributions ..............................................................................29
Section 8.12   Unclaimed Property.....................................................................................30
Section 8.13   Manner of Payment Under Plan.......................................................................30
Section 8.14   Claims Paid by Third Parties .........................................................................30
Section 8.15   Allocation of Plan Distributions Between Principal and Interest....................................31
Section 8.16   Withholding and Reporting Requirements ..........................................................31
Section 8.17   Distributions Free and Clear..........................................................................31
Section 8.18   Time Bar to Cash Payments...........................................................................32

ARTICLE 9    DISPUTED CLAIMS AND EQUITY INTERESTS ....................................................32

Section 9.1    Objections to Claims and Equity Interests...........................................................32
Section 9.2    Estimation of Claims ...................................................................................32
Section 9.3    No Recourse.............................................................................................33
Section 9.4    Late-Filed Claims and Amendments to Claims .....................................................34
Section 9.5    Settlement of Disputed Claims .......................................................................34

ARTICLE 10    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.......................................34

Section 10.1   Assumption and Rejection of Executory Contracts and Unexpired Leases......................34
Section 10.2   Cure of Defaults........................................................................................36
Section 10.3   Assignment ..............................................................................................36
Section 10.4   Objections to Rejection, Assumption, Assignment or Cure ........................................36
Section 10.5   Rejection Damage Claims .............................................................................37

ARTICLE 11   EFFECT OF CONFIRMATION ................................................................................. 38

Section 11.1   Vesting of Assets .......................................................................................... 38
Section 11.2   Injunction ..................................................................................................... 38
Section 11.3   Siegman Injunction ...................................................................................... 39
Section 11.4   Injunction Against Interference with Plan ................................................... 39
Section 11.5   Term of Injunctions or Stays Arising Under or Entered During the Chapter 11
              Cases ............................................................................................................ 39
Section 11.6   Exculpation .................................................................................................. 40
Section 11.7   Releases ....................................................................................................... 40
Section 11.8   Exclusions and Limitations on Exculpation, Indemnification, and Releases ................. 41
Section 11.9   Binding Effect .............................................................................................. 42

ARTICLE 12   CONDITIONS PRECEDENT TO EFFECTIVE DATE ............................................ 42

Section 12.1   Conditions to Effectiveness of Plan .............................................................. 42
Section 12.2   Waiver of Conditions ................................................................................... 43

ARTICLE 13   RETENTION OF JURISDICTION ....................................................................... 43

ARTICLE 14   MISCELLANEOUS PROVISIONS ........................................................................ 45

Section 14.1   Operations Between the Confirmation Date and the Effective Date ............................... 45
Section 14.2   Transition of the Affairs of the Debtors' Estates After the Effective Date ..................... 45
Section 14.3   Payment of Statutory Fees ........................................................................... 45
Section 14.4   Substantial Consummation ........................................................................... 45
Section 14.5   Exemption from Transfer Taxes ................................................................... 45
Section 14.6   Tax Treatment of the Liquidation Trust ........................................................ 46
Section 14.7   Determination of Tax Liabilities .................................................................. 46
Section 14.8   Fifty Percent Shareholder ............................................................................ 46
Section 14.9   Exemption from Securities Laws .................................................................. 47
Section 14.10  Modification and Amendment ...................................................................... 47
Section 14.11  Revocation or Withdrawal of the Plan .......................................................... 47
Section 14.12  Reservation of Rights .................................................................................. 48
Section 14.13  Severability ................................................................................................. 48
Section 14.14  Notice of Entry of Confirmation Order and Relevant Dates .......................... 48
Section 14.15  Courts of Competent Jurisdiction ................................................................. 48
Section 14.16  No Admissions ............................................................................................ 48
Section 14.17  Closing of the Chapter 11 Cases .................................................................. 49
Section 14.18  Rates .......................................................................................................... 49
Section 14.19  Governing Law ........................................................................................... 49
Section 14.20  Schedules, Exhibits and Supplements .......................................................... 49
Section 14.21  Notices ....................................................................................................... 49

# INTRODUCTION

Fred Leighton Holding, Inc., Fred Leighton LLC, Phoenix Nevada 1, LLC, Fred Leighton BH LLC, Calypso Mines LLC, Endymion, LLC, Foxtrot LLC, and Tango LLC (collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned cases (the "Chapter 11 Cases") pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), through their chief restructuring officer and plan facilitator (the "CROPF"), and Merrill Lynch Mortgage Capital Inc. ("Merrill Lynch"), prepetition secured lender to certain of the Debtors, jointly propose and are the proponents within the meaning of section 1129 of title 11 of the United States Code (the "Bankruptcy Code") of the following joint and consolidated plan of reorganization and liquidation for the Debtors' estates pursuant to section 1121(a) of the Bankruptcy Code (the "Plan").

The centerpiece of the Plan is the sale of the Fred Leighton jewelry business and certain specifically identified jewelry and jeweled objects related thereto (the "FL Auction Assets") pursuant to section 1123 of the Bankruptcy Code (or section 363 of the Bankruptcy Code under certain circumstances set forth in the Plan), and the sale of certain higher-end jewelry and jeweled objects at a public auction to be held on October 21, 2009, at Christie's, Inc. in New York City (the "Christie's Auction"). The proceeds from the sale of the FL Auction Assets and the Christie's Auction, together with the balance of the property of the Debtors' estates, shall be transferred to Merrill Lynch under the Plan on the Effective Date, except for the cash estimated to be sufficient to satisfy in full all administrative expense claims and priority tax claims (collectively, the "Unclassified Claims"), and general unsecured claims, secured claims (other than that of Merrill Lynch), and priority non-tax claims (collectively, the "Classified Claims"). The distributions with respect to disputed Unclassified Claims and Classified Claims shall be paid from reserves to be established in amounts deemed sufficient by the Bankruptcy Court to pay holders of such claims in full. It is a condition to the effectiveness of the Plan that the reserve for Unclassified Claims not exceed $2,625,000 and the reserve for Classified Claims not exceed $600,000. The Plan also provides that approximately $250,000 of cash otherwise payable to Merrill Lynch will be transferred to a reserve to fund post-confirmation expenses incurred by the Debtors' estates with respect to, among other things, processing payments to creditors, analyzing and objecting to disputed claims and winding down the affairs of the Debtors.

As of the date hereof, pursuant to the procedures (the "Bidding Procedures") approved by the Bankruptcy Court, as subsequently amended by notices filed with the Bankruptcy Court (see Docket Nos. 643 & 648), governing the submission of bids for the FL Auction Assets, the Debtors and Merrill Lynch have evaluated the bids submitted for the purchase of the FL Auction Assets and have chosen a bidder that they anticipate will serve as stalking horse during an auction for the FL Auction Assets to be held on or before October 19, 2009. The bidder that submits the highest and best bid for the FL Auction Assets at the auction shall be designated as the successful bidder. The Plan seeks approval of the sale of the FL Auction Assets to the successful bidder selected by the Debtors and Merrill Lynch. In the alternative, however, if the successful bidder fails to timely close on the purchase of the FL Auction Assets, the Plan provides that Merrill Lynch shall acquire the FL Auction Assets free and clear of all liens, claims, encumbrances, charges or other interests.

Notably, irrespective of whether the FL Auction Assets are purchased by a successful bidder or acquired by Merrill Lynch, the estimated recoveries on allowed claims in the Chapter 11 Cases are not affected. Under either scenario, the reserves established under the Plan shall have been deemed sufficient by the Bankruptcy Court to satisfy the estimated amount of allowed claims in full, other than subordinated claims, intercompany claims and equity interests, which shall not be entitled to any distributions under the Plan. Such recoveries are made possible through the gift transfer by Merrill Lynch of a significant portion of the cash otherwise payable to Merrill Lynch on account of its secured claim against the Debtors' estates. In order to effectively resolve the Chapter 11 Cases, the Plan also

contemplates: (a) acknowledgement that Merrill Lynch holds valid, duly perfected, enforceable and non-avoidable liens on and security interests in all of the assets of the Debtors' estates; (b) ratification of a settlement agreement resolving the claims and adversary proceedings of certain members of the family of Ralph Esmerian; (c) equitable subordination of all claims asserted or that may be asserted by Ralph Esmerian or R. Esmerian, Inc.; (d) substantive consolidation of the Debtors' estates for purposes of voting and confirmation; (e) the prosecution of all causes of action of the Debtors or their estates for the benefit of Merrill Lynch in partial satisfaction of Merrill Lynch's unsecured deficiency claim; and (f) the appointment of a plan administrator to administer the Plan after the effective date thereof and serve as trustee for the trust and reserves created thereunder.

# ARTICLE 1    DEFINITIONS AND RULES OF INTERPRETATION

## Section 1.1   Scope of Definitions

For purposes of this Plan, except as expressly provided otherwise or unless the context requires otherwise, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Section 1.2 of this Plan.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

## Section 1.2   Definitions

**"Acquisition Credit Agreement"** means that certain credit agreement dated March 29, 2006, by and between Merrill Lynch and Fred Leighton Holding, Inc., as well as the first, second and third amendments, dated June 22, 2006, August 25, 2006 and April 6, 2007, respectively, and the waivers between Fred Leighton Holding, Inc., Endymion, LLC and Merrill Lynch, dated August 18, 2006 and November 3, 2006.

**"Administrative Expense Claim"** means any request for payment of a cost or expense of administration of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code, arising on or prior to the Effective Date, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' Estates and Professional Claims.

**"Administrative Expense Claim Bar Date"** means the date that is the first Business Day that is thirty (30) days after the Effective Date, or such other date as may be fixed by the Bankruptcy Court.

**"Allowed"** means, with respect to a Claim, (a) any Claim that has been listed by a Debtor in the Schedules, as such Schedules may be amended by such Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim or interest has been filed; (b) any properly and timely filed, liquidated, non-contingent Claim with respect to which no objection to the allowance thereof has been filed within the applicable period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order of the Bankruptcy Court; or (c) any Claim allowed pursuant to this Plan, the Confirmation Order or a Final Order of the Bankruptcy Court.

**"Asset Purchase Agreement"** means that certain asset purchase agreement by and among the Debtors and the Successful Bidder memorializing the terms and conditions of the purchase and sale of the FL Auction Assets, in all respects satisfactory to the Debtors and Merrill Lynch, and, in the event that the Successful Bidder is the Windsor Group, which provides that certain FL Auction Assets may be acquired by the Purchaser's Designee.

**"Bankruptcy Code"** means title 11 of the United States Code, as applicable to the Chapter 11 Cases.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as applicable to the Chapter 11 Cases, and any local rules of the Bankruptcy Court.

**"Bar Date Order"** means the "Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof" entered by the Bankruptcy Court in the Chapter 11 Cases on October 23, 2008 [Docket No. 280], and amended by order of the Bankruptcy Court on November 3, 2008 [Docket No. 294].

**"Bidding Procedures"** means those certain bidding procedures, as amended from time to time, governing the submission and consideration of bids to purchase the FL Auction Assets, as approved by order of the Bankruptcy Court dated August 14, 2009 [Docket No. 604].

**"Business Day"** means any day other than a Saturday, a Sunday, a "legal holiday" as such term is defined in Bankruptcy Rule 9006(a), or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

**"Cash"** means legal tender of the United States of America.

**"Causes of Action"** means any and all actions, proceedings, causes of action, suits, demands, rights to legal remedies, rights to equitable remedies, rights to payment and Claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity or otherwise, of the Debtors or their Estates, existing as of the Effective Date, unless otherwise waived or released by the Debtors or the Plan Administrator, including, without limitation, any of the foregoing arising under sections 542, 543, 544, 547 through 551, and 553 of the Bankruptcy Code.

**"Chapter 11 Cases"** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court and styled <u>In re Fred Leighton Holding, Inc., et al.</u>, Case No. 08-11363 (RDD).

**"Christie's Auction"** means the auction of the items of jewelry and jeweled objects identified on the Christie's Jewelry List conducted by Christie's, Inc. on October 21, 2009.

**"Christie's Jewelry List"** means that certain list of specifically designated items of jewelry and jeweled objects to be offered for sale at the Christie's Auction, which shall be included in the Plan Supplement.

**"Claim"** has the meaning set forth in section 101 of the Bankruptcy Code.

**"Claims Objection Deadline"** means the date that is the first Business Day that is ninety (90) days after the Effective Date, subject to extension from time to time by order of the Bankruptcy Court upon motion of the Plan Administrator or Merrill Lynch, or its designee.

**"Class"** means any group of Claims or Equity Interests classified by this Plan pursuant to section 1122(a) of the Bankruptcy Code.

**"Classified Claim"** means any Priority Non-Tax Claim, Other Secured Claim, or General Unsecured Claim (except the ML Deficiency Claim).

**"Classified Claims Reserve"** means the escrow account to be established pursuant to Section 8.4 of this Plan on the Effective Date and funded with Confirmation Cash in the amount of $600,000, which amount has been determined by the Bankruptcy Court pursuant to the Confirmation Order to be sufficient to make all necessary distributions with respect to Classified Claims that are estimated to become Allowed after the Effective Date.

**"Commencement Date"** means April 15, 2008.

**"Confirmation Cash"** means Cash from the Debtors' balance sheet in the amount of $3,475,000, which amount has been determined by the Bankruptcy Court at or prior to the Confirmation Hearing to be sufficient to fund the Unclassified Claims Reserve, the Classified Claims Reserve and the Plan Expenses Reserve.

**"Confirmation Date"** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order.

**"Confirmation Hearing"** means the hearing before the Bankruptcy Court to consider the request of the Debtors, through the CROPF, and Merrill Lynch, for entry of an order confirming this Plan under section 1129 of the Bankruptcy Code.

**"Confirmation Objection Deadline"** means the deadline to be established by the Bankruptcy Court pursuant to the Confirmation Scheduling Order, for the filing and service by any and all parties in interest of objections to confirmation of this Plan.

**"Confirmation Order"** means the order or orders of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, which order or orders shall be in form and substance acceptable to the Debtors and Merrill Lynch.

**"Confirmation Scheduling Order"** means the order to be entered by the Bankruptcy Court (a) scheduling the Confirmation Hearing; (b) establishing the Distribution Record Date; (c) establishing the deadline to accept or reject this Plan; and (d) establishing the Confirmation Objection Deadline.

**"Credit Agreements"** means the Special Collection Credit Agreement and the Acquisition Credit Agreement.

**"Creditor"** means any entity holding a Claim.

**"Creditors Committee"** means the statutory committee of unsecured Creditors appointed in the Chapter 11 Cases by the United States Trustee on April 24, 2008, and disbanded by the United States Trustee on July 6, 2009.

**"CROPF"** means the Chief Restructuring Officer and Plan Facilitator of the Debtors as appointed by order of the Bankruptcy Court dated December 18, 2008 [Docket No. 389].

**"CROPF Services Agreement"** means that certain services agreement among Meridian Ventures, LLC and the Debtors, dated December 18, 2008, and approved by order of the Bankruptcy Court dated January 27, 2009 [Docket No. 400].

**"CROPF Transaction Fee"** means the transaction fee to be paid to the CROPF pursuant to the CROPF Services Agreement upon entry of an order of the Bankruptcy Court approving such fee.

**"Cure"** means all monetary liabilities of the Debtors that must be paid or otherwise satisfied to cure all of the Debtors' monetary defaults under any and all executory contracts or unexpired leases to be assumed, or assumed and assigned, by the Debtors pursuant to this Plan, the Confirmation Order, or Final Order of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code.

**"Debtors"** means, collectively, Fred Leighton Holding, Inc., Fred Leighton LLC, Phoenix Nevada 1, LLC, Fred Leighton BH LLC, Calypso Mines LLC, Endymion, LLC, Foxtrot LLC, and Tango LLC.

**"Debtor Avoidance Action"** means that certain adversary proceeding commenced by the Debtors against Merrill Lynch, on October 1, 2008, styled Fred Leighton Holding Inc., et al. v. Merrill Lynch, Adv. Proc. No. 08-01603 (RDD).

**"Distribution Record Date"** means the date to be established by the Bankruptcy Court pursuant to the Confirmation Scheduling Order as the date on which recordholders of any Claim against or Equity Interest in the Debtors is fixed.

**"Disallowed"** means, with respect to a Claim or Equity Interest, any Claim or Equity Interest that has been disallowed by this Plan, the Confirmation Order or Final Order of the Bankruptcy Court.

**"Disputed"** means, with respect to a Claim or Equity Interest, any Claim or Equity Interest that is not Allowed or Disallowed.

**"Effective Date"** means the first Business Day on which all conditions to effectiveness of this Plan set forth in Article 12 of this Plan are satisfied, or waived in writing by a party entitled to waive such condition.

**"Effective Date Cash"** means Cash from the Debtors' balance sheet in an amount equal to $1,505,000, which amount has been determined by the Bankruptcy Court at or prior to the Confirmation Hearing to be sufficient to make all necessary distributions with respect to (a) Claims that are estimated to be Allowed as of the Effective Date; (b) any portion of the monthly fee due and unpaid to the CROPF under the CROPF Services Agreement as of the Effective Date, in an amount not to exceed $105,000; and (c) the CROPF Transaction Fee, if the CROPF Transaction Fee is approved pursuant to an order of the Bankruptcy Court on or before the Effective Date.

**"Equity Interest"** means the legal, equitable, contractual and other rights of a holder of an ownership interest in any of the Debtors, including, without limitation, any interest evidenced by common or preferred stock, membership interests and options or other rights to purchase or otherwise receive any ownership interest in any of the Debtors.

**"Esmerian"** means Ralph Esmerian, an individual.

**"Estate"** means as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

**"Estate Assets"** means all property of the Debtors' Estates pursuant to section 541 of the Bankruptcy Code.

**"Excluded Asset Cash"** means all Excluded Assets in the form of Cash.

**"Excluded Assets"** means all Estate Assets, including, without limitation, the Excluded Jewelry and the Excluded Asset Cash, and all proceeds of the foregoing, other than the FL Auction Assets, the Effective Date Cash and the Confirmation Cash.

**"Excluded Jewelry"** means the jewelry and jeweled objects not specifically identified on the FL Jewelry List.

**"Executory Contract and Unexpired Lease Schedules"** means collectively, the Schedule of Assumed Contracts and Leases and the Schedule of Rejected Contracts and Leases.

**"Family Claimants"** means Jacqueline Esmerian King, Cynthia King Vance, Frederic King, Philip King, Edward King, Jacqueline Esmerian, Pierre Esmerian, Anne Robin-Prevalee and Eric Esmerian, as individuals, each of whom is a party to the Family Settlement Agreement.

**"Family Settlement Agreement"** means that certain settlement agreement by and between the Debtors, Merrill Lynch and the Family Claimants, included in the Plan Supplement.

**"Final Order"** means an order or judgment, the operation or effect of which has not been reversed, vacated, stayed, modified, or amended, and as to which order or judgment (or any reversal, vacation, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for certiorari, or request for reargument or further review or rehearing has been timely filed; or (b) any appeal that has been or may be taken or any petition for certiorari or request for reargument or further review or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken or granted; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, rule 59 or rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

**"FL Auction Assets"** means (a) substantially all of the non-jewelry tangible and intangible assets of the Debtors specifically included in the Asset Purchase Agreement, including, without limitation, intellectual property rights, trade secrets, trademarks, trade names, the "Fred Leighton" trade name, customer lists, domain names, a copy of the Debtors' books and records, software, security deposits, leases, executory contracts, vaults, fixtures, equipment, and other assets and facilities, used in or necessary to the operation of the Fred Leighton business, other than all Causes of Action related to the foregoing; and (b) the FL Jewelry.

**"FL Jewelry"** means the jewelry and jeweled objects identified on the FL Jewelry List only to the extent in the possession, custody or control of the Debtors as of the Effective Date.

**"FL Jewelry List"** means that certain list of specifically designated items of jewelry and jeweled objects identified as the "FL Jewelry List" and included in the Plan Supplement.

**"General Unsecured Claim"** means any Claim that is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, an Other Secured Claim, a Subordinated Claim or an Intercompany Claim.

**"Impaired"** means, with respect to a Claim or Equity Interest, any Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**"Intercompany Claim"** means any Claim held by a Debtor or Non-Debtor Affiliate against a Debtor.

**"Liquidation Trust"** means that certain trust established on the Effective Date pursuant to the Liquidation Trust Formation Documents, and funded with Confirmation Cash in the amount of $3,475,000, for the purpose of transferring Confirmation Cash to the Unclassified Claims Reserve, the Classified Claims Reserve, and the Plan Expenses Reserve, pursuant to the terms and conditions of this Plan.

"**Liquidation Trust Formation Documents**" means those documents creating and governing the Liquidation Trust, which shall be included in the Plan Supplement.

"**Merrill Lynch**" means Merrill Lynch Mortgage Capital Inc. or any of its successors or affiliates.

"**Merrill Lynch Released Parties**" means Merrill Lynch, Merrill Lynch & Co., Bank of America, and any current or former officers, directors, employees, agents, representatives, partners, limited partners, members, trustees, managers, affiliates, parents, subsidiaries, attorneys, auditors, appraisers, accountants, financial advisors, investment bankers, consultants, or other professionals of any of the foregoing and any entity controlling or controlled by any of the foregoing and any predecessors, successors and assigns of the foregoing.

"**ML Claim**" means the Claim of Merrill Lynch against the Debtors in an amount equal to (a) the principal amount owed to Merrill Lynch under the Credit Agreements; (b) interest payable as of the Commencement Date to Merrill Lynch calculated at the default rate in accordance with the Credit Agreements; and (c) the aggregate amount of Merrill Lynch's professional fees, costs of collections and other reasonable fees, costs and charges incurred under the Credit Agreements.

"**ML Deficiency Claim**" means the General Unsecured Claim of Merrill Lynch against the Debtors in the amount equal to the amount of the ML Claim less the amount of the ML Secured Claim.

"**ML Secured Claim**" means the Secured Claim of Merrill Lynch against the Debtors in the amount equal to the value of Merrill Lynch's valid, duly perfected, enforceable, and non-avoidable liens on and interests in the Estate Assets.

"**NewCo**" means the entity to be formed by Merrill Lynch, or its designee, to acquire the FL Auction Assets on the Effective Date, in the event no Successful Bidder is selected in accordance with the Bidding Procedures, or in the event a Successful Bidder is selected in accordance with the Bidding Procedures but such Successful Bidder fails to timely close on the purchase of the FL Auction Assets in accordance with the Bidding Procedures.

"**Non-Debtor Affiliate**" means any of Esmerian, REI and Cal Mines Manager LLC or any affiliate, parent or subsidiary of the foregoing that is not a Debtor.

"**Other Secured Claim**" means any Secured Claim against a Debtor that is not the ML Secured Claim.

"**Plan**" means this joint and consolidated plan of reorganization, including the schedules, exhibits and supplements hereto including, without limitation, the Plan Supplement, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

"**Plan Administrator**" means one or more entities selected by Merrill Lynch, and approved by the Bankruptcy Court pursuant to the Confirmation Order or other Final Order of the Bankruptcy Court, to administer the provisions of this Plan after the Effective Date and act as trustee of the Liquidation Trust in accordance with this Plan.

"**Plan Expenses**" means all actual and necessary fees, costs, expenses and obligations incurred by or owed to, the Plan Administrator and its agents, employees, attorneys, advisors and other professionals in administering this Plan, including, without limitation, (a) reasonable compensation for

services rendered, and reimbursement for actual and necessary expenses incurred, by the Plan Administrator and its agents, employees and professionals after the Effective Date through and including the date upon which the Bankruptcy Court enters a final decree closing the Chapter 11 Cases; and (b) all fees payable pursuant to Section 14.3 of this Plan.

**"Plan Expenses Reserve"** means the escrow account to be established pursuant to Section 6.4 of this Plan on the Effective Date and funded with Confirmation Cash in the amount of $250,000, which amount has been determined by the Bankruptcy Court pursuant to the Confirmation Order to be sufficient to satisfy all Plan Expenses pursuant to Section 6.4 of this Plan.

**"Plan Supplement"** means those certain schedules and other documents to be filed with the Bankruptcy Court on or before the date that is seven (7) calendar days prior to the deadline to accept or reject this Plan fixed by the Bankruptcy Court pursuant to the Confirmation Scheduling Order, in support of confirmation of this Plan, or otherwise attendant or incidental to the transactions contemplated under this Plan, which schedules and other documents shall be considered a part of this Plan for all purposes.

**"Priority Claims"** means, collectively, Priority Non-Tax Claims and Priority Tax Claims.

**"Priority Non-Tax Claim"** means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code other than Administrative Expense Claims and Priority Tax Claims.

**"Priority Tax Claim"** means any Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**"Pro Rata"** means, with respect to an Allowed Claim, the ratio of the amount of the Allowed Claim to the total amount of all Allowed Claims in the same Class.

**"Professional Claim"** means a Claim of any professional retained in these Chapter 11 Cases pursuant to the Bankruptcy Code, Bankruptcy Rules, or a Final Order of the Bankruptcy Court, for compensation for services rendered, and reimbursement of expenses incurred, by such professional after the Commencement Date and prior to and including the Effective Date.

**"Professional Claims Objection Deadline"** means the date that is the first Business Day that is forty-five (45) days after the Effective Date, subject to extension from time to time by order of the Bankruptcy Court upon motion of the Plan Administrator or Merrill Lynch, or its designee.

**"Proposed Cure"** means the Cure amounts identified on the Schedule of Assumed Contracts and Leases.

**"Purchaser's Designee"** means, collectively, FL Acquisitions, LLC, the members of which include investment funds affiliated with Och-Ziff Capital Investments, L.L.C., Kwiat Enterprises LLC and its affiliated entities, and Triton Equity Partners, LLC.

**"Qualified Bid"** means "Qualified Bid" as defined in the Bidding Procedures.

**"REI"** means R. Esmerian, Inc.

**"Rejection Damage Claim"** means a Claim for damages arising from the rejection by any Debtor of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

**"Released Claims"** means any and all Claims or Equity Interests released pursuant to this Plan.

**"Released Parties"** means, collectively, (a) the Debtors and any current employee of the Debtors; (b) the CROPF; (c) Meridian Ventures LLC and any of its current or former partners, agents, employees and affiliates; (d) Dewey & LeBoeuf LLP; (e) Herrick, Feinstein LLP; (f) Blank Rome LLP; (g) the Merrill Lynch Released Parties; (h) the Plan Administrator; and (i) the Successful Bidder. For the avoidance of doubt, the Released Parties shall not include Esmerian, REI, Robert Hoberman, Mitchel May, John M. Ullmann, Saralee Smithwick, Bonnie Selfe, Helen Chaitman, Satyajit Bose, Robert Barandes, Peter Bacanovic, any former employee of the Debtors, any party to an adversary proceeding or other proceeding pending as of the Effective Date to which Merrill Lynch or the Debtors are a party, any auditors, appraisers, accountants, consultants, or other professionals of any of the foregoing and any entity controlling or controlled by any of the foregoing and any predecessors, successors and assigns of the foregoing.

**"Sale Order"** means the order of the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code, authorizing and approving the sale of the FL Auction Assets to the Windsor Group in the event that the Effective Date does not occur on or before November 6, 2009.

**"Schedules"** means, collectively, the schedules of the Debtors' assets and liabilities, the statement of the Debtors' financial affairs and any other schedules and statements filed with the Bankruptcy Court pursuant to sections 521 or 1106 of the Bankruptcy Code or Bankruptcy Rule 1007, as such schedules and statements have been or may be amended and supplemented from time to time in accordance with Bankruptcy Rule 1009.

**"Schedule of Assumed Contracts and Leases"** means that certain schedule to be included in the Plan Supplement that identifies certain executory contracts and unexpired leases to be deemed automatically assumed by the Debtors pursuant to this Plan.

**"Schedule of Duplicative Claims"** means that certain schedule to be included in the Plan Supplement that identifies certain Claims against the Debtors that shall be Disallowed and expunged in full pursuant to Section 7.5 of this Plan as being duplicative of other Claims in the Chapter 11 Cases.

**"Schedule of Rejected Contracts and Leases"** means that certain schedule to be included in the Plan Supplement that indentifies certain executory contracts and unexpired leases to be deemed automatically rejected by the Debtors pursuant to this Plan.

**"Secured Claim"** means a Claim (a) that is secured by a valid, duly perfected, enforceable, and non-avoidable lien on property in which any of the Debtors' Estates has an interest, to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such Creditor's interest in the applicable Debtor's Estate's interest in such property, as determined by a Final Order of the Bankruptcy Court or as otherwise agreed upon in this Plan by the Debtors and such Creditor; or (b) that is secured by the amount of any valid non-avoidable right of setoff of the Creditor thereof pursuant to section 553 of the Bankruptcy Code.

**"Securities Act"** means the Securities Act of 1933, as amended, 15 U.S.C. § 77a, et seq., and all rules or regulations promulgated thereunder.

**"Siegman Injunction"** means the injunction against the Siegman Trust, as set forth in the Family Settlement Agreement and Section 11.3 of this Plan, which injunction shall become effective upon the Effective Date of this Plan.

**"Siegman Trust"** means the trust established under the will of Mathilde S. Siegman, as described in the Family Settlement Agreement.

**"Special Collection Credit Agreement"** means that certain credit agreement dated November 4, 2005 by and between Merrill Lynch and Calypso Mines LLC, as well as the first and second amendments thereto, dated June 22, 2006 and April 6, 2007, respectively.

**"Subordinated Claim"** means any Claim that has been subordinated to all General Unsecured Claims by this Plan, the Confirmation Order or a Final Order of the Bankruptcy Court pursuant to section 510 of the Bankruptcy Code.

**"Successful Bid"** means the best and highest Qualified Bid for the FL Auction Assets as determined by Merrill Lynch, in consultation with, and under the supervision of, the CROPF, in accordance with the Bidding Procedures.

**"Successful Bidder"** means the entity who has submitted the Successful Bid for the FL Auction Assets, in accordance with the Bidding Procedures.

**"Unclaimed Property"** means any Cash, checks and other property to be distributed in respect of an Allowed Claim pursuant to this Plan, which was deemed unclaimed (a) on the date such property would have been distributed by the CROPF or the Plan Administrator but such distribution did not occur because the current address of such holder could not reasonably be determined by the CROPF or the Plan Administrator; or (b) on the date such property was returned to the Plan Administrator as undeliverable without a proper forwarding address after having been properly distributed by the CROPF or the Plan Administrator.

**"Unclassified Claim"** means any Administrative Expense Claim or Priority Tax Claim.

**"Unclassified Claims Reserve"** means the escrow account to be established pursuant to Section 8.3 of this Plan on the Effective Date and funded with Confirmation Cash in the amount of $2,625,000, which amount has been determined by the Bankruptcy Court pursuant to the Confirmation Order to be sufficient to make all necessary distributions with respect to Unclassified Claims that are estimated to become Allowed after the Effective Date.

**"United States Trustee"** means the Office of the United States Trustee for the Southern District of New York.

**"Windsor Group"** means, collectively, Sima G., Ltd., Moonbeam Consulting, LLC, European Arts & Antiques and Windsor Jewelers, Inc.

## Section 1.3   Rules of Interpretation

For purposes of this Plan, unless otherwise provided herein:

(a)    whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural;

(b)    each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and neuter;

(c)    any reference in this Plan to an existing document filed or to be filed means such document, as it may have been or may be amended, modified, or supplemented;

(d)    any reference in this Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions;

(e)    any reference in this Plan to an entity as a holder of a Claim or Equity Interest includes that entity's successors and assigns;

(f)    all references in this Plan to articles, sections, schedules, exhibits and supplements are references to the respective articles, sections, schedules, exhibits and supplements of or to this Plan, as the same may be amended, waived, or modified from time to time;

(g)    the words "herein", "hereunder", "hereof", "hereto" and other words of similar import refer to this Plan in its entirety rather than to a particular article, section, subsection, or clause of this Plan;

(h)    captions and headings in this Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan;

(i)    subject to the provisions of any contract, certificate of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules;

(j)    whenever the words "include", "includes", or "including" are used in this Plan, they shall be deemed to be followed by the words "without limitation", whether or not they are in fact followed by those words or words of similar import;

(k)    references in this Plan from or through any date mean from and including or through and including, respectively;

(l)    in the event that a particular term of the definitive documentation required to be implemented pursuant to the terms of this Plan or any settlement or other agreement contemplated hereunder is inconsistent with a particular term of this Plan, the definitive documentation shall govern and shall be binding on the parties thereto;

(m)    to the extent that any schedule, exhibit or supplement to this Plan is inconsistent with the terms of this Plan, and unless otherwise provided herein or in the Confirmation Order, the terms of the schedule, exhibit or supplement shall govern;

(n)     to the extent that the Asset Purchase Agreement, if any, is inconsistent with the terms of this Plan or any schedule, exhibit or supplement to this Plan, the terms of the Asset Purchase Agreement shall govern;

(o)     to the extent that the Confirmation Order or the Sale Order is inconsistent with this Plan, including, without limitation, the Asset Purchase Agreement, if any, the provisions of the Confirmation Order or Sale Order (as applicable) shall govern;

(p)     to the extent that the Confirmation Order or the Sale Order is inconsistent with any schedule, exhibit or supplement to this Plan, the provisions of the Confirmation Order or Sale Order (as applicable) shall govern;

(q)     the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan;

(r)     in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006 shall apply;

(s)     in the event that any payment, distribution, act or deadline under this Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or have occurred as of the required date;

(t)     all references in this Plan to monetary figures shall refer to currency of the United States of America; and

(u)     because this Plan is the product of extensive negotiations between the Debtors and Merrill Lynch, who were each represented by counsel who (i) participated in the formulation and documentation of this Plan; and (ii) were afforded the opportunity to review and provide comments on this Plan and the documents ancillary thereto, the general rule of contract construction known as contra preferentem shall not apply to the construction or interpretation of any provision of this Plan, or any contract, instrument, release, indenture, exhibit, or other agreement or document generated in connection therewith.

## ARTICLE 2     CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

### Section 2.1   Classes of Claims and Equity Interests

This Plan constitutes a single chapter 11 plan of reorganization for the Debtors, who shall be substantively consolidated pursuant to Section 7.1 of this Plan for the purposes of voting, confirmation and distribution. Pursuant to sections 1122 and 1123 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Equity Interests in the consolidated Debtors that specifies whether each Class is Impaired under this Plan. As provided by section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims shall not be classified under this Plan, and shall instead be treated separately on the terms set forth in Article 4.

| Class | Designation | Impairment | Voting Rights |
|-------|-------------|------------|---------------|
| A | Priority Non-Tax Claims | Not Impaired | Deemed to Accept |
| B | ML Secured Claim | Impaired | Entitled to Vote |
| C | Other Secured Claims | Not Impaired | Deemed to Accept |
| D | General Unsecured Claims | Not Impaired | Deemed to Accept |
| E | Subordinated Claims | Impaired | Deemed to Reject |
| F | Equity Interests | Impaired | Deemed to Reject |
| G | Intercompany Claims | Impaired | Deemed to Reject |

## Section 2.2   Separate Classification of Other Secured Claims

Although all Other Secured Claims against the Debtors have been placed in a single Class for purposes of nomenclature, each such Other Secured Claim shall be treated as a separate Class for purposes of voting on this Plan and receiving distributions pursuant to this Plan.

## ARTICLE 3        TREATMENT OF CLAIMS AND EQUITY INTERESTS

### Section 3.1   Class A (Priority Non-Tax Claims)

Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Non-Tax Claim shall receive, in full settlement, satisfaction, release and discharge of such Claim, Cash in an amount equal to the Allowed but unpaid portion of such Claim, on or as soon as reasonably practicable after, the later of (a) the Effective Date; (b) the date such Claim becomes Allowed; and (c) the date for payment provided by any agreement or understanding between the Debtors or the Plan Administrator and the holder of such Claim.

A holder of an Allowed Priority Non-Tax Claim shall be entitled to receive its respective distribution under this Plan solely from the Effective Date Cash, if such Claim is Allowed as of the Effective Date, or from the Classified Claims Reserve, if such Claim is Allowed after the Effective Date. In no event shall any holder of an Allowed Priority Non-Tax Claim, whether Allowed before or after the Effective Date, have any recourse against the Unclassified Claims Reserve, the Plan Expenses Reserve, any proceeds of the Causes of Action transferred to the Liquidation Trust, the Plan Administrator, the Debtors, the Successful Bidder, if any, the Merrill Lynch Released Parties, the Released Parties, or any holder of an Allowed Claim or any current or former officers, directors, employees, agents, representatives, partners, limited partners, members, trustees, managers, affiliates, parents, subsidiaries, attorneys, auditors, appraisers, accountants, financial advisors, investment bankers, consultants, or other professionals of any of the foregoing and any entity controlling or controlled by any of the foregoing and any predecessors, successors and assigns of any of the foregoing, or any property of any of the foregoing, with respect to the distributions made, or to be made, under this Plan on account of such Claim, regardless of whether sufficient Cash or other property remains available for distribution in the Classified Claims Reserve at the time that such Claim becomes Allowed.

## Section 3.2   Class B (ML Secured Claim)

On the Effective Date, (a) the ML Secured Claim shall be Allowed in an amount equal to the value of the Estate Assets; and (b) the holder of the ML Secured Claim shall receive in full settlement, satisfaction, release and discharge of such Claim, either (i) if the Successful Bidder timely closes on the purchase of the FL Auction Assets on or before the Effective Date pursuant to Section 7.2 of this Plan, (x) all rights and title to and interest in, the Excluded Assets, and possession of the Excluded Assets in the possession, custody or control of the Debtors as of the Effective Date, and (y) Cash in an amount equal to the total consideration paid by the Successful Bidder for the FL Auction Assets, or (ii) if the FL Auction Assets are not sold to the Successful Bidder pursuant to Section 7.2 of this Plan, (x) all rights and title to and interest in, the Excluded Assets, and possession of the Excluded Assets in the possession, custody or control of the Debtors as of the Effective Date, and (y) all rights and title to and interest in, and possession of, the FL Auction Assets.  All transfers to Merrill Lynch on account of the ML Secured Claim shall be free and clear of all liens, Claims, encumbrances, charges and other interests, other than the liens, Claims, encumbrances, charges and other interests of Merrill Lynch, and shall be made on the Effective Date. Excluded Assets not in the possession, custody or control of the Debtors as of the Effective Date that are received by the Plan Administrator on behalf of the Debtors' Estates after the Effective Date, including, without limitation, any proceeds and Estate Assets returned from the Christie's Auction, shall be transferred by the Plan Administrator to Merrill Lynch upon receipt thereof.

## Section 3.3   Class C (Other Secured Claims)

Except to the extent that a holder of an Allowed Other Secured Claim agrees to less favorable treatment, each holder of an Allowed Other Secured Claim (which shall be identified in a schedule in the Plan Supplement) shall receive in full settlement, satisfaction, release and discharge of such Claim, Cash in an amount equal to the Allowed but unpaid portion of such Claim, on or as soon as reasonably practicable after, the later of (a) the Effective Date; (b) the date such Claim becomes Allowed; and (c) the date for payment provided by any agreement or understanding between the Debtors or the Plan Administrator and the holder of such Claim.

A holder of an Allowed Other Secured Claim shall be entitled to receive its respective distribution under this Plan solely from the Effective Date Cash, if such claim is Allowed as of the Effective Date, or from the Classified Claims Reserve, if such Claim is Allowed after the Effective Date. In no event shall any holder of an Allowed Other Secured Claim, whether allowed before or after the Effective Date, have any recourse against the Unclassified Claims Reserve, the Plan Expenses Reserve, any proceeds of the Causes of Action transferred to the Liquidation Trust, the Plan Administrator, the Debtors, the Successful Bidder, if any, the Merrill Lynch Released Parties, the Released Parties, or any holder of an Allowed Claim or any current or former officers, directors, employees, agents, representatives, partners, limited partners, members, trustees, managers, affiliates, parents, subsidiaries, attorneys, auditors, appraisers, accountants, financial advisors, investment bankers, consultants, or other professionals of any of the foregoing and any entity controlling or controlled by any of the foregoing and any predecessors, successors and assigns of any of the foregoing, or any property of any of the foregoing, with respect to the distributions made, or to be made, under this Plan on account of such Claim, regardless of whether sufficient Cash or other property remains available for distribution in the Classified Claims Reserve at the time that such Claim becomes Allowed.

## Section 3.4   Class D (General Unsecured Claims)

Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each holder of an Allowed General Unsecured Claim against any of the Debtors shall receive, in full settlement, satisfaction, release and discharge of such Claim, Cash in an amount equal to

the Allowed but unpaid portion of such Claim, on or as soon as reasonably practicable after, the later of (a) the Effective Date; (b) the date such Claim becomes Allowed; and (c) the date for payment provided by any agreement or understanding between the Debtors or the Plan Administrator and the holder of such Claim.

A holder of an Allowed General Unsecured Claim shall be entitled to receive its respective distribution under this Plan solely from the Effective Date Cash, if such Claim is Allowed as of the Effective Date, or from the Classified Claims Reserve, if such Claim is Allowed after the Effective Date. In no event shall any holder of an Allowed General Unsecured Claim, whether Allowed before or after the Effective Date, have any recourse against the Unclassified Claims Reserve, the Plan Expenses Reserve, any proceeds of the Causes of Action transferred to the Liquidation Trust, the Plan Administrator, the Debtors, the Successful Bidder, if any, the Merrill Lynch Released Parties, the Released Parties, or any holder of an Allowed Claim or any current or former officers, directors, employees, agents, representatives, partners, limited partners, members, trustees, managers, affiliates, parents, subsidiaries, attorneys, auditors, appraisers, accountants, financial advisors, investment bankers, consultants, or other professionals of any of the foregoing and any entity controlling or controlled by any of the foregoing and any predecessors, successors and assigns of any of the foregoing, or any property of any of the foregoing, with respect to the distributions made, or to be made, under this Plan on account of such Claim, regardless of whether sufficient Cash or other property remains available for distribution in the Classified Claims Reserve at the time that such Claim becomes Allowed.

By agreement between the Debtors and Merrill Lynch, (a) the ML Deficiency Claim shall be Allowed in full on the Effective Date; and (b) the holder of the ML Deficiency Claim shall receive as treatment for such Claim under this Plan, all rights and title to and interest in (i) the remaining balance of the Unclassified Claims Reserve in the event that all Unclassified Claims have been either Allowed or Disallowed by this Plan, the Confirmation Order or Final Order of the Bankruptcy Court, (ii) the remaining balance of the Classified Claims Reserve in the event that all Classified Claims have been either Allowed or Disallowed by this Plan, the Confirmation Order or Final Order of the Bankruptcy Court, (iii) the remaining balance of the Plan Expenses Reserve upon satisfaction of all valid Plan Expenses and entry by the Bankruptcy Court of a final decree closing the Chapter 11 Cases, (iv) the remaining balance of the Effective Date Cash upon the date that is the first Business Day that is five (5) calendar days after the Effective Date, (v) the remaining balance of any other assets of the Liquidation Trust upon the termination of the Liquidation Trust, and (vi) any and all proceeds of the Causes of Action transferred to the Liquidation Trust. The transfer of the Causes of Action to the Liquidation Trust for the benefit of Merrill Lynch, or its designee, shall be free and clear of all liens, Claims, encumbrances, charges, and other interests, other than the liens, Claims, encumbrances, charges and other interests of Merrill Lynch. The treatment under this Plan of the ML Deficiency Claim solely as against the Debtors' Estates shall not reduce, limit or otherwise preclude any recovery by Merrill Lynch on any guaranty provided by the Debtors or any other entity for the benefit of Merrill Lynch.

### Section 3.5    Class E (Subordinated Claims)

All Subordinated Claims shall be subordinated to all General Unsecured Claims and holders of Allowed Subordinated Claims shall not receive or retain any property or interest in property on account of such Claim.

### Section 3.6    Class F (Equity Interests)

All Equity Interests in any of the Debtors shall be deemed cancelled and terminated as of the Effective Date, and holders of an Equity Interest in any of the Debtors shall not receive or retain any property or interest in property on account of such Equity Interest.

## Section 3.7    Class G (Intercompany Claims)

All Intercompany Claims shall be deemed cancelled and discharged as of the Effective Date, and holders of such Claims shall not receive or retain any property or interest in property on account of such Claims. Additionally, except as otherwise provided in this Plan, the substantive consolidation of the Debtors will eliminate any guarantees by any Debtor of the direct or indirect obligation of another Debtor.

## ARTICLE 4        UNCLASSIFIED CLAIMS

## Section 4.1    Treatment of Unclassified Claims

(a)        Administrative Expense Claims

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, or as otherwise provided in this Plan, each holder of an Allowed Administrative Expense Claim, including Professional Claims, shall receive, in full settlement, satisfaction, release and discharge of such Claim, Cash in an amount equal to the Allowed but unpaid portion of such Claim, on or as soon as reasonably practicable after, the later of (i) the Effective Date; (ii) the date such Claim becomes Allowed; and (iii) the date for payment provided by any agreement or understanding between the Debtors or the Plan Administrator and the holder of such Claim.

A holder of an Allowed Administrative Expense Claim shall be entitled to receive its respective distribution under this Plan solely from the Effective Date Cash, if such Claim is Allowed as of the Effective Date, or from the Unclassified Claims Reserve, if such Claim becomes Allowed after the Effective Date. In no event shall any holder of an Allowed Administrative Expense Claim, including Professional Claims, whether Allowed before or after the Effective Date, have any recourse against the Classified Claims Reserve, the Plan Expenses Reserve, any proceeds of the Causes of Action transferred to the Liquidation Trust, the Plan Administrator, the Debtors, the Successful Bidder, if any, the Merrill Lynch Released Parties, the Released Parties, or any holder of an Allowed Claim or any current or former officers, directors, employees, agents, representatives, partners, limited partners, members, trustees, managers, affiliates, parents, subsidiaries, attorneys, auditors, appraisers, accountants, financial advisors, investment bankers, consultants, or other professionals of any of the foregoing and any entity controlling or controlled by any of the foregoing and any predecessors, successors and assigns of any of the foregoing, or any property of any of the foregoing, with respect to the distributions made, or to be made, under this Plan on account of such Claim, regardless of whether sufficient Cash or other property remains available for distribution in the Unclassified Claims Reserve at the time that such Claim becomes Allowed.

(b)        Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full settlement, satisfaction, release and discharge of such Claim, Cash in an amount equal to the Allowed but unpaid portion of such Claim, on or as soon as reasonably practicable after, the later of (i) the Effective Date; (ii) the date such Claim becomes Allowed; and (iii) the date for payment provided by any agreement or understanding between the Debtors and the holder of such Claim; provided, however, that no holder of an Allowed Priority Tax Claim shall be entitled to any payments on account of any interest or penalty accrued with respect to or in connection with such Claim from the Commencement Date through the Effective Date.

A holder of an Allowed Priority Tax Claim shall be entitled to receive its respective distribution under this Plan solely from the Effective Date Cash, if such Claim is Allowed as of the Effective Date, or from the Unclassified Claims Reserve, if such Claim is Allowed as of the Effective Date. In no event shall any holder of an Allowed Priority Tax Claim, whether Allowed before or after the Effective Date, have any recourse against the Classified Claims Reserve, the Plan Expenses Reserve, any proceeds of the Causes of Action transferred to the Liquidation Trust, the Plan Administrator, the Debtors, the Successful Bidder, if any, the Merrill Lynch Released Parties, the Released Parties, or any holder of an Allowed Claim or any current or former officers, directors, employees, agents, representatives, partners, limited partners, members, trustees, managers, affiliates, parents, subsidiaries, attorneys, auditors, appraisers, accountants, financial advisors, investment bankers, consultants, or other professionals of any of the foregoing and any entity controlling or controlled by any of the foregoing and any predecessors, successors and assigns of any of the foregoing, or any property of any of the foregoing, with respect to the distributions made, or to be made, under this Plan on account of such Claim, regardless of whether sufficient Cash or other property remains available for distribution in the Unclassified Claims Reserve at the time that such Claim becomes Allowed.

## Section 4.2   Deadline to File Unclassified Claims

(a)   Administrative Expense Claims

Except as otherwise provided in this Plan, all Administrative Expense Claims (other than Administrative Expense Claims that have been fully satisfied or Allowed on or before the Effective Date), including all applications for final allowance of Professional Claims, must be filed with the Bankruptcy Court and served on counsel for the Debtors (if filed and served on or before the Effective Date), the Plan Administrator (if filed and served on or after the Effective Date) and Merrill Lynch by the Administrative Expense Claim Bar Date.

**THE FAILURE TO PROPERLY FILE AND SERVE AN ADMINISTRATIVE EXPENSE CLAIM OR APPLICATION FOR FINAL ALLOWANCE OF A PROFESSIONAL CLAIM ON OR BEFORE THE ADMINISTRATIVE EXPENSE CLAIM BAR DATE SHALL RESULT IN SUCH ADMINISTRATIVE EXPENSE CLAIM OR PROFESSIONAL CLAIM (AS APPLICABLE) BEING DEEMED FOREVER BARRED, DISALLOWED AND DISCHARGED AS OF THE EFFECTIVE DATE AUTOMATICALLY WITHOUT THE NEED FOR ANY OBJECTION FROM THE DEBTORS, THE PLAN ADMINISTRATOR, MERRILL LYNCH OR ANY OTHER PARTY IN INTEREST OR ANY ACTION BY THE BANKRUPTCY COURT.**

(b)   Priority Tax Claims

Pursuant to Bankruptcy Rule 3002(c)(1), all Priority Tax Claims must have been filed with the Bankruptcy Court on or before the date set forth in the Bar Date Order or no later than one-hundred and eighty (180) days after the Commencement Date.

## Section 4.3   Objections to and Settlement of Unclassified Claims

(a)   Administrative Expense Claims

As of the Effective Date, Merrill Lynch, or its designee, and the Plan Administrator, upon direction and approval by Merrill Lynch, or its designee, shall have the exclusive right to object to any Administrative Expense Claim on or before the Claims Objection Deadline (other than objections to Professional Claims, which must be filed on or before the Professional Claims Objection Deadline), subject to extension from time to time by order of the Bankruptcy Court upon motion of the Plan Administrator or Merrill Lynch, or its designee, and notice and a hearing. Unless Merrill Lynch, or its

designee, or the Plan Administrator objects to a timely-filed and properly-served Administrative Expense Claim, such Claim shall be deemed Allowed in the amount requested. In the event that Merrill Lynch, or its designee, or the Plan Administrator objects to an Administrative Expense Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Claim should be Allowed and, if so, in what amount. Merrill Lynch, or its designee, and the Plan Administrator may settle Administrative Expense Claims (other than Professional Claims) in the ordinary course of business without further Bankruptcy Court approval.

(b)     Professional Claims

Objections to any Professional Claim must be filed and served on the holder of such Professional Claim on or before the Professional Claims Objection Deadline, subject to extension from time to time by order of the Bankruptcy Court upon motion of the Plan Administrator or Merrill Lynch, or its designee, and notice and a hearing. The Plan Administrator and Merrill Lynch, or its designee, may settle Professional Claims subject to approval by the Bankruptcy Court.

As soon as reasonably practicable following the seventh Business Day after the occurrence of the Professional Claims Objection Deadline, a hearing will be held to consider all timely-filed and properly-served applications for final allowance of Professionals Claims.

(c)     Priority Tax Claims

As of the Effective Date, Merrill Lynch, or its designee, and the Plan Administrator, upon direction and approval by Merrill Lynch, or its designee, shall have the exclusive right to object to any Priority Tax Claim on or before the Claims Objection Deadline, subject to extension from time to time by order of the Bankruptcy Court upon motion of the Plan Administrator or Merrill Lynch, or its designee, and notice and a hearing. Unless Merrill Lynch, or its designee, or the Plan Administrator objects to a timely-filed and properly-served Priority Tax Claim, such Claim shall be deemed Allowed in the amount requested. In the event that Merrill Lynch, or its designee, or the Plan Administrator objects to a Priority Tax Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Claim should be Allowed and, if so, in what amount. Merrill Lynch, or its designee, and the Plan Administrator may settle Priority Tax Claims in the ordinary course of business without further Bankruptcy Court approval.

## ARTICLE 5      ACCEPTANCE OR REJECTION OF THE PLAN

### Section 5.1   Classes Entitled to Vote

Class B (ML Secured Claim) is Impaired by this Plan. Merrill Lynch, the holder of the only Claim in Class B, is the only holder of a Claim against or Equity Interest in the Debtors entitled to vote to accept or reject this Plan. As a co-proponent of this Plan, Merrill Lynch shall be deemed to have voted to accept this Plan as of the deadline to accept or reject this Plan fixed by the Bankruptcy Court pursuant to the Confirmation Scheduling Order. For the avoidance of doubt, if the Debtors seek to amend or modify this Plan or the Asset Purchase Agreement, if any, after the deadline to accept or reject this Plan, and without the prior written consent of Merrill Lynch, Merrill Lynch shall be deemed to have rescinded its acceptance of this Plan.

### Section 5.2   Classes Deemed to Accept

Class A, Class C and Class D are not Impaired by this Plan and therefore, pursuant to section 1126(f) of the Bankruptcy Code, the holders of Claims in such Classes are conclusively presumed to have accepted this Plan and the votes of such holders will not be solicited.

### Section 5.3 Classes Deemed to Reject

The holders of Claims and Equity Interests in Class E, Class F and Class G shall not receive or retain any property under this Plan on account of such Claims or Equity Interests. Accordingly, pursuant to section 1126(g) of the Bankruptcy Code, such Classes are deemed to have rejected this Plan and the votes of holders of Claims and Equity Interests in such Classes will not be solicited.

### Section 5.4 Acceptance by an Impaired Class

Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims of such Class that have voted on this Plan. As set forth in Section 5.1 above, Class B (ML Secured Claim) is Impaired under this Plan and shall be deemed to have voted to accept this Plan as of the deadline to accept or reject this Plan fixed by the Bankruptcy Court pursuant to the Confirmation Scheduling Order.

### Section 5.5 Cramdown

If all applicable requirements for confirmation of this Plan are met as set forth in sections 1129(a)(1) through (16) of the Bankruptcy Code, except subsection (8) thereof, then this Plan shall be treated as a request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), on the basis that this Plan does not discriminate unfairly, and is fair and equitable, with respect to each Class of Claims that is Impaired under, and has not accepted, this Plan.

### Section 5.6 Elimination of Vacant Classes

Any Class of Claims against or Equity Interests in the Debtors that is not populated as of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018, or as to which no vote is cast, shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining the acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE 6 THE PLAN ADMINISTRATOR

### Section 6.1 Appointment and Removal of the Plan Administrator

The Plan Administrator shall be selected by Merrill Lynch and approved by the Bankruptcy Court at the Confirmation Hearing. On the Effective Date, the Plan Administrator shall be vested with the authority described in Section 6.2 hereof. After the Effective Date, Merrill Lynch may replace the Plan Administrator in any of its capacities pursuant to Section 7.10(c) of this Plan.

### Section 6.2 Duties and Powers of the Plan Administrator

(a) Duties of the Plan Administrator

As of the Effective Date, upon direction and approval by Merrill Lynch, the Plan Administrator shall:

(i)     act as the trustee for the Liquidation Trust;

(ii)    hold and maximize the value of all assets of the Liquidation Trust for the benefit of the beneficiaries of the Liquidation Trust;

(iii)   transfer the Confirmation Cash to the Liquidation Trust on the Effective Date in accordance with this Plan;

(iv)    investigate, commence and prosecute, on behalf of Merrill Lynch, or its designee, to judgment or settlement, all Causes of Action transferred to the Liquidation Trust under this Plan;

(v)     file and prosecute objections to, and negotiate, settle or otherwise resolve, any and all Disputed Claims and Equity Interests;

(vi)    assume the role of the Debtors to review all Professional Claims;

(vii)   if warranted, object to any applications for final allowance of Professional Claims on or before the Professional Claims Objection Deadline pursuant to Section 4.3(b) of this Plan;

(viii)  make, on behalf of the Debtors and their Estates, the distributions required to be made pursuant to this Plan after the Effective Date;

(ix)    prepare and file quarterly financial reports pursuant to Section 6.3 of this Plan; and

(x)     retain attorneys, advisors, and other professionals as may be necessary and appropriate to perform the duties required of, and the obligations assumed by, the Plan Administrator hereunder.

Under no circumstances shall the Plan Administrator have any power to engage in any trade or business or any other similar activity with respect to the Liquidation Trust, except as specifically provided herein or otherwise reasonably necessary or appropriate to perform the duties required of, and the obligations assumed by, the Plan Administrator hereunder.

The Plan Administrator shall not be selected by the United States Trustee, will not be supervised by the United States Trustee, and is not bonded in favor of the United States in an amount set by the United States Trustee.  The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that the Plan Administrator is so otherwise ordered, all Cash and expenses of procuring any such bond or surety shall be funded and paid from the Plan Expenses Reserve, and not by the Successful Bidder, if any, or the Merrill Lynch Released Parties (in any capacity).

(b)     Powers of the Plan Administrator

As of the Effective Date, unless otherwise expressly provided in this Plan, the Plan Administrator shall have the power and authority to perform all actions that the Plan Administrator may deem necessary or appropriate to perform the duties required of, and all obligations assumed by, the Plan Administrator hereunder, in addition to any powers granted by law or conferred on the Plan Administrator by any provision of this Plan.

## Section 6.3    Accounting and Reporting

The Plan Administrator shall maintain an accounting of receipts and disbursements with respect to the Liquidation Trust, which shall be open to inspection and review by the Bankruptcy Court, Merrill Lynch, and any holder of an Allowed Claim or Equity Interest or their respective professionals, upon reasonable notice to the Plan Administrator.  After the Effective Date, the Plan Administrator shall serve the United States Trustee with, and shall file with the Bankruptcy Court, a quarterly financial report for each quarter (or portion thereof) that the Chapter 11 Cases remain open as well as a final financial report after the Bankruptcy Court enters a final decree closing each of the Chapter 11 Cases.  The quarterly financial report with respect to the Liquidation Trust shall include the following:

(a)    a statement of all disbursements made during the course of the quarter, whether or not pursuant to this Plan;

(b)    a summary, by Class, of distributions made or other property transferred to each recipient under this Plan, and an explanation of the failure to make any distributions or other transfers of property under this Plan;

(c)    projections as to the continuing ability of the Liquidation Trust to comply with the terms of this Plan;

(d)    a statement of the aggregate funds of the Unclassified Claims Reserve, the Classified Claims Reserve, and the Plan Expenses Reserve;

(e)    a description of any other factors that may materially affect the ability to consummate this Plan; and

(f)    an estimated date when an application for a final decree closing the Chapter 11 Cases will be filed with the Bankruptcy Court (or, in the case of the final quarterly report, the date upon which the final decree was entered by the Bankruptcy Court).

## Section 6.4    Plan Expenses

Upon direction and approval by Merrill Lynch, or its designee, the Plan Administrator may, in the ordinary course of business and without the necessity for any application to, or approval of, the Bankruptcy Court, pay all Plan Expenses.  All Plan Expenses shall be charged against and paid from the Plan Expenses Reserve.  On the Effective Date, the Plan Administrator shall (a) establish the Plan Expenses Reserve; and (b) transfer Confirmation Cash to the Plan Expenses Reserve in an amount equal to $250,000, which funds shall vest in the Plan Expenses Reserve free and clear of all liens, Claims, encumbrances, charges and other interests, other than the liens, Claims, encumbrances, charges and other interests of Merrill Lynch.  Except as provided in this Section 6.4, the Debtors and the Plan Administrator shall have no further obligation, and neither the Merrill Lynch Released Parties nor the Successful Bidder, if any, shall have any obligation, to fund the Plan Expenses Reserve.  For the avoidance of doubt, Plan Expenses shall not be charged against or paid from the Effective Date Cash, the Unclassified Claims Reserve, the Classified Claims Reserve, or any proceeds of the Causes of Action transferred to the Liquidation Trust.  Upon satisfaction of all valid Plan Expenses and entry by the Bankruptcy Court of a final decree closing the Chapter 11 Cases, any remaining balance of the Plan Expenses Reserve shall be distributed by the Plan Administrator to Merrill Lynch, or its designee, as soon as reasonably practicable thereafter.

In no event shall the Plan Administrator or any agent, employee, attorney, advisor or other professional retained by the Plan Administrator have any recourse against the Effective Date Cash,

the Unclassified Claims Reserve, the Classified Claims Reserve, any proceeds of the Causes of Action transferred to the Liquidation Trust, the Debtors, the Successful Bidder, if any, the Merrill Lynch Released Parties, the Released Parties, or any holder of an Allowed Claim or any current or former officers, directors, employees, agents, representatives, partners, limited partners, members, trustees, managers, affiliates, parents, subsidiaries, attorneys, auditors, appraisers, accountants, financial advisors, investment bankers, consultants, or other professionals of any of the foregoing and any entity controlling or controlled by any of the foregoing and any predecessors, successors and assigns of any of the foregoing, or any property of any of the foregoing, with respect to compensation for services rendered, and reimbursement for expenses incurred by, the Plan Administrator or any agent, employee, attorney, advisor or other professional retained by the Plan Administrator, with respect to the administration of this Plan, regardless of whether sufficient Cash or other property remains for payment of such compensation or reimbursement in the Plan Expenses Reserve at the time such request for compensation or reimbursement is made.

Attorneys, advisors and any other professionals retained by the Plan Administrator shall submit periodic statements for all reasonable compensation for services rendered, and reimbursement for actual and necessary expenses incurred, by such professionals to the Plan Administrator for review and approval. The Plan Administrator and Merrill Lynch, or its designee, shall have twenty (20) days to object to any such statement. In the event that any such objection is received by the relevant professional and cannot be promptly resolved by such professional and the Plan Administrator and Merrill Lynch, or its designee, the dispute shall be submitted by the Plan Administrator or Merrill Lynch, or its designee, to the Bankruptcy Court for adjudication. The Bankruptcy Court shall retain jurisdiction to adjudicate any such objection. In the event that no objection is raised to a statement within the twenty (20) day period, such statement shall be promptly paid by the Plan Administrator, upon direction and approval by Merrill Lynch.

## Section 6.5   Limitation of Liability

No recourse shall ever be had, directly or indirectly, against the Plan Administrator, its officers, directors, agents, employees, attorneys, advisors or other professionals, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note, or upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Plan Administrator under this Plan or by reason of the creation of any indebtedness by the Plan Administrator under this Plan for any purpose authorized by this Plan. All such liabilities, covenants, and agreements of the Plan Administrator, its respective officers, directors, agents, employees, attorneys, advisors or other professionals, whether in writing or otherwise, under this Plan shall be enforceable, if at all, only against, and shall be satisfied only out of, the Plan Expenses Reserve. Every undertaking, contract, covenant or agreement entered into in writing by the Plan Administrator shall provide expressly against the personal liability of the Plan Administrator.

The Plan Administrator and its officers, directors, agents, employees, attorneys, advisors and other professionals shall not be liable for any act they may do, or omit to do hereunder in good faith and in the exercise of their respective best judgment, and the fact that such act or omission was advised, directed or approved by an attorney acting as counsel for the Plan Administrator shall be conclusive evidence of such good faith and best judgment; provided, however, that this Section 6.5 shall not apply to any gross negligence or willful misconduct by the Plan Administrator or the Plan Administrator's officers, directors, agents, employees, attorneys, advisors or other professionals.

## Section 6.6   Reliance on Documents

The Plan Administrator may rely, and shall be protected in acting or refraining from acting, upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper entity.

## Section 6.7   Requirement of Undertaking

The Plan Administrator may request any court of competent jurisdiction to require, and any such court may in its discretion require, in any suit for the enforcement of any right or remedy under this Plan, or in any suit against the Plan Administrator for any act taken or omitted by the Plan Administrator, that the filing party litigant in such suit undertake to pay the costs of such suit, and such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant.

## ARTICLE 7     MEANS FOR IMPLEMENTATION

## Section 7.1   Substantive Consolidation

The Debtors shall be substantively consolidated for all purposes and actions associated with implementation and consummation of this Plan, including, without limitation, for purposes of voting, confirmation and distribution.  On and after the Effective Date, (a) all assets and liabilities of the Debtors shall be treated as though they were merged into the Estate of Fred Leighton Holding, Inc. solely for purposes of this Plan; (b) no distributions shall be made under this Plan on account of any Claims or Equity Interests between and among any of the Debtors; (c) for all purposes associated with confirmation of this Plan, including, without limitation, for purposes of tallying acceptances and rejections of this Plan, the Estates of the Debtors shall be deemed to be one consolidated Estate of Fred Leighton Holding, Inc.; and (d) each and every Claim filed or to be filed in the Chapter 11 Cases of the Debtors shall be deemed filed against the consolidated Debtors, and shall be Claims against and obligations of the consolidated Debtors.  As a result of the consolidation, any guaranty by one or more Debtors of the obligations of another Debtor will be eliminated.

Substantive consolidation shall not affect: (a) the legal and organizational structure of the Debtors; (b) pre and post-Commencement Date guarantees, liens, and security interests that are required to be maintained (i) under the Bankruptcy Code or in connection with contracts or leases that were entered into during the Chapter 11 Cases or executory contracts or unexpired leases that have been or will be assumed, or (ii) pursuant to this Plan; and (c) distributions from any insurance policies or proceeds of such policies.

In the event that the Bankruptcy Court does not order substantive consolidation of the Debtors, then: (a) nothing in this Plan shall constitute or be deemed to constitute an admission that one of the Debtors is subject to or liable for any Claim against any other Debtor; (b) Claims against multiple Debtors shall be treated as separate Claims with respect to each Debtor's Estate for all purposes (including, without limitation, distribution and voting), and such Claims shall be administered as provided in this Plan; and (c) the Debtors and Merrill Lynch shall not, nor shall they be required to, resolicit votes with respect to this Plan, nor will the failure of the Bankruptcy Court to approve substantive consolidation of the Debtors alter the economics of the distributions set forth in this Plan.  In the event that the Bankruptcy Court does not order substantive consolidation, (a) this Plan shall be deemed to provide for eight (8) subplans of reorganization; and (b) a vote by a holder of a Claim against the Debtors to accept this Plan shall be deemed a vote to accept the separate plan for each of the Debtors against whom such

holder holds a Claim, provided that the treatment of the Claim being voted would not be different in the absence of substantive consolidation.

### Section 7.2 Sale of the FL Auction Assets to the Successful Bidder or Merrill Lynch

In the event that the Effective Date occurs on or before 11:59 p.m. (prevailing Eastern time) on November 6, 2009, all of the Debtors' rights and title to and interest in the FL Auction Assets either shall be (a) sold to the Successful Bidder on the Effective Date pursuant to section 1123(a)(5) of the Bankruptcy Code, in accordance with the terms and provisions of the Asset Purchase Agreement executed by such Successful Bidder, and the Confirmation Order, for an all-Cash purchase price that shall be paid to Merrill Lynch on the Effective Date in partial satisfaction of the ML Secured Claim as set forth in Section 3.2 and Article 7 of this Plan; or (b) acquired by Merrill Lynch, or its designee, on the Effective Date in partial satisfaction of the ML Secured Claim pursuant to Section 3.2 and Article 7 of this Plan, and the Confirmation Order, if (i) no Successful Bidder is selected in accordance with the Bidding Procedures, or (ii) if a Successful Bidder is selected in accordance with the Bidding Procedures but such Successful Bidder fails to timely close on the purchase of the FL Auction Assets in accordance with Section XI of the Bidding Procedures and the Asset Purchase Agreement executed by such Successful Bidder.

In the event that the Effective Date does not occur on or before 11:59 p.m. (prevailing Eastern time) on November 6, 2009, and the Successful Bidder is the Windsor Group, effective as of 12:00 a.m. (prevailing Eastern time) on November 7, 2009, all of the Debtors' rights and title to and interest in the FL Auction Assets shall be sold to the Windsor Group pursuant to section 363 of the Bankruptcy Code, in accordance with the terms and provisions of the Asset Purchase Agreement executed by the Windsor Group, and the Sale Order, for an all-Cash purchase price that shall be paid to Merrill Lynch upon the closing of such sale. In addition, pursuant to the Sale Order, (a) the Debtors shall unequivocally and unconditionally acknowledge and agree for all purposes that Merrill Lynch holds valid, duly perfected, enforceable, and non-avoidable liens on and interests in any and all Estate Assets; (b) the ML Secured Claim and the ML Deficiency Claim shall be deemed Allowed in full; and (c) Merrill Lynch shall receive (i) the total proceeds realized from the Christie's Auction, and (ii) the remaining Estate Assets, including the Cash on the balance sheet of the Debtors, _less only_ (x) the total amount of the Effective Date Cash, and (y) the total amount of the Confirmation Cash.

Irrespective of whether the FL Auction Assets are sold to the Successful Bidder or acquired by Merrill Lynch, or its designee, such transaction shall be effectuated free and clear of all liens, Claims, encumbrances, rights, remedies, restrictions, interests, liabilities, and contractual commitments of any kind or nature whatsoever, whether arising before or after the Commencement Date, whether at law or in equity, including all rights or claims based on any successor or transferee liability.

### Section 7.3 Acknowledgment of Liens and Security Interests of Merrill Lynch

Irrespective of whether the FL Auction Assets are sold to a Successful Bidder or acquired by Merrill Lynch, or its designee, as described in Section 7.2 above, on the Effective Date, in accordance with this Plan and pursuant to the applicable terms and provisions of the Confirmation Order and the Sale Order (if applicable), (a) the Debtors and their Estates shall be deemed to unconditionally acknowledge and agree for all purposes whatsoever that Merrill Lynch holds valid, duly perfected, enforceable, and non-avoidable first priority liens on and security interests in any and all Estate Assets, including the FL Auction Assets (or any Cash consideration paid for the FL Auction Assets) and the Excluded Assets, and

that such lien is free and clear of any set off, defense, counterclaim or dispute; and (b) the Debtor Avoidance Action shall be deemed withdrawn, with prejudice.

### Section 7.4    Subordination of Claims Asserted by Esmerian and REI

On the Effective Date, pursuant to the Confirmation Order, all Claims asserted or that may be asserted by Esmerian or REI shall be subordinated pursuant to section 510(c) of the Bankruptcy Code to all Allowed General Unsecured Claims, due to the inequitable conduct by Esmerian and REI prior to and during these Chapter 11 Cases, which conduct has resulted in significant injury to Creditors of the Debtors' Estates and conferred an unfair advantage on Esmerian and REI, all as discussed in detail in Merrill Lynch's brief in support of confirmation of this Plan, and as will be adduced on the record of the Confirmation Hearing.

### Section 7.5    Disallowance of Duplicative Claims

The duplicative proofs of claim filed against the Debtors that are identified on the Schedule of Duplicative Claims to be included in the Plan Supplement shall be Disallowed and expunged in full in favor of the respective "Surviving Claim" identified on the Schedule of Duplicative Claims without any action required of the Debtors, the Plan Administrator, Merrill Lynch or the Bankruptcy Court.

### Section 7.6    Cancellation of Existing Securities and Agreements

Except to the extent reinstated or unimpaired under this Plan, or for purposes of evidencing a right to distribution under this Plan or as otherwise provided hereunder, on the Effective Date, all agreements and other documents evidencing (a) any Claim or rights of any holder of a Claim against the Debtors, including all indentures and notes evidencing such Claims; or (b) any Equity Interest in the Debtors, including any options or warrants to purchase Equity Interests or any other capital stock of the Debtors, shall be canceled.

### Section 7.7    Settlement of Claims of the Family Claimants

Prior to the Confirmation Date, the Debtors and Merrill Lynch contemplate settling all Claims of the Family Claimants pursuant to the Family Settlement Agreement, which agreement shall be approved pursuant to the Confirmation Order.  The Family Settlement Agreement shall be included in the Plan Supplement and is incorporated herein in its entirety by reference.

### Section 7.8    Establishment of NewCo

In the event that Merrill Lynch, or its designee, acquires the FL Auction Assets pursuant to Section 7.2 of this Plan, Merrill Lynch, or its designee, shall establish NewCo pursuant to the governance and other documents to be included in the Plan Supplement.

### Section 7.9    Dissolution of Debtor Entities

On the Effective Date, each of the Debtor entities shall be deemed dissolved and the Plan Administrator shall be authorized to take any and all actions necessary to effect such dissolution, if any.

## Section 7.10 Establishment of Liquidation Trust

      (a)      Creation of Liquidation Trust

On the Effective Date, (i) the Liquidation Trust, which includes the Unclassified Claims Reserve, the Classified Claims Reserve, and the Plan Expenses Reserve, shall be established pursuant to the Liquidation Trust Formation Documents; (ii) the Plan Administrator shall be appointed as trustee of the Liquidation Trust; (iii) except as otherwise provided herein, the Plan Administrator shall transfer Confirmation Cash to the Liquidation Trust in an amount equal to $3,475,000; and (iv) all Causes of Action belonging to any of the Debtors or their Estates shall be transferred to and vested in the Liquidation Trust for the benefit of Merrill Lynch, or its designee, pursuant to Section 7.10(d) hereof. Except as provided for in this Section 7.10, the Debtors and the Plan Administrator shall have no further obligation, and neither the Merrill Lynch Released Parties, nor the Successful Bidder, if any, shall have any obligation, to fund the Liquidation Trust.

      (b)      Removal of Plan Administrator as Trustee of Liquidation Trust

After the Effective Date, Merrill Lynch may remove or replace the Plan Administrator as trustee for the Liquidation Trust in its sole discretion upon filing a notice with the Bankruptcy Court.

      (c)      Transfer of Causes of Action to Liquidation Trust

Except as otherwise expressly provided in this Plan, (i) upon the occurrence of the Effective Date, all Causes of Action belonging to any of the Debtors or their Estates, shall be vested in the Liquidation Trust solely for the benefit of Merrill Lynch, or its designee, free and clear of all liens, Claims, encumbrances, charges, and other interests, other than the liens, Claims, encumbrances, charges and other interests held by Merrill Lynch; and (ii) nothing in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable right or defense that the Debtors (through the Plan Administrator, as trustee of the Liquidation Trust) may have or choose to assert on behalf of the Debtors or their respective Estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (x) any and all Claims against any entity, to the extent such entity asserts a cross-claim, counterclaim and/or claim for setoff which seeks affirmative relief against the Debtors, their officers, directors, or representatives, (y) the turnover of any Estate Asset, and (z) the Debtors' right to object to any Claim or Equity Interest pursuant to section 502(d) of the Bankruptcy Code.

**No entity may rely on the absence of a specific reference in this Plan to any Cause of Action against them as an indication that the Plan Administrator or Merrill Lynch will not pursue any and all available Causes of Action against them. The Plan Administrator and Merrill Lynch expressly reserve all rights to prosecute any and all Causes of Action against any entity except as otherwise provided in this Plan. Unless any Causes of Action against an entity are expressly waived, relinquished, exculpated, released, compromised or settled in this Plan, the Confirmation Order or other Final Order of the Bankruptcy Court, the Debtors expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon or after the confirmation or consummation of this Plan.**

(d)  Distribution of Assets of Liquidation Trust

(i)  Unclassified Claims Reserve.  All Confirmation Cash transferred to the Unclassified Claims Reserve shall be distributed to holders of Unclassified Claims that become Allowed after the Effective Date pursuant to Article 4 and Article 8 hereof.

(ii)  Classified Claims Reserve.  All Confirmation Cash transferred to the Classified Claims Reserve shall be distributed to holders of Classified Claims that become Allowed after the Effective Date pursuant to Article 3 and Article 8 hereof.

(iii)  Plan Expenses Reserve.  All Confirmation Cash transferred to the Plan Expenses Reserve shall be distributed by the Plan Administrator pursuant to Section 6.4 hereof.

(iv)  Proceeds of Causes of Action.  Unless otherwise directed by Merrill Lynch, or its designee, all proceeds of the Causes of Action transferred to the Liquidation Trust shall be distributed to Merrill Lynch, or its designee, as such proceeds are received by the Plan Administrator on behalf of the Liquidation Trust.

(v)  Other Assets of the Liquidation Trust.  Unless otherwise directed by Merrill Lynch, or its designee, all other assets of the Liquidation Trust, other than the Unclassified Claims Reserve, the Classified Claims Reserve, the Plan Expenses Reserve, and all proceeds of the Causes of Action transferred to the Liquidation Trust, shall be distributed by the Plan Administrator to Merrill Lynch, or its designee, as soon as practicable after receipt of such assets.

(e)  Termination of Liquidation Trust

The Liquidation Trust shall terminate upon the entry by the Bankruptcy Court of a final decree closing the Chapter 11 Cases and submission by the Plan Administrator of the final financial report to the Bankruptcy Court pursuant to Section 6.3 of this Plan.  On or prior to the date of termination of the Liquidation Trust, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Liquidation Trust, if such an extension is necessary to resolve a dispute with respect to any assets of the Liquidation Trust or for other good cause.  Upon termination of the Liquidation Trust and as soon as reasonably practicable thereafter, the balance of the Cash and other property of the Liquidation Trust shall be distributed to Merrill Lynch, or its designee.

## Section 7.11  Effectuating Documents and Further Transactions

Upon entry of the Confirmation Order, each of the Debtors or the Plan Administrator (as applicable), shall be authorized and are instructed to execute, deliver, file or record such contracts, instruments, releases, consents, certificates, resolutions, programs and other agreements and documents and take such actions as may be reasonably necessary or appropriate to effectuate, implement, consummate and further evidence the terms and conditions of this Plan, including, without limitation, implementing all settlements and compromises as set forth in or contemplated by this Plan, amending and restating the Debtors' constituent documents in accordance with the terms of this Plan, and performing all obligations under this Plan.  As of the Effective Date, no member, partner or equity security holder of the Debtors shall take any action that affects, alters or creates any additional or incremental liability for or imputed to the Debtors.

## Section 7.12  Authority to Act

Prior to, on or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the CROPF, stockholders, security holders,

officers, directors, partners, managers, members or other owners of one or more of the Debtors shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to the applicable law of the states in which the Debtors are formed, without any requirement of further vote, consent, approval, authorization or other action by the CROPF, or such stockholders, security holders, officers, directors, partners, managers, members or other owners of such entities or notice to, order of or hearing before the Bankruptcy Court.

### ARTICLE 8     DISTRIBUTIONS

### Section 8.1     Distribution Record Date

Except as otherwise provided in this Plan, as of 12:00 p.m. (prevailing Eastern time) on the Distribution Record Date, there shall be no further changes in the recordholders of any Claim against or Equity Interest in the Debtors, and the Debtors shall have no obligation to recognize any transfer of any Claim against or Equity Interest in the Debtors occurring after the Distribution Record Date. The Debtors, the CROPF, the Plan Administrator and Merrill Lynch shall be entitled to recognize and deal for all purposes hereunder only with those recordholders of Claims against and Equity Interests in the Debtors as of 12:00 p.m. (prevailing Eastern time) on the Distribution Record Date, to the extent applicable.

### Section 8.2     Responsibility for and Date of Distributions Under the Plan

(a)     Distributions on the Effective Date

Except as otherwise provided herein or pursuant to agreement or understanding between the Debtors and the holder of an Allowed Claim as of the Effective Date, all transfers and distributions required to be made under this Plan with respect to Claims that are Allowed as of the Effective Date shall be made by the CROPF from the Effective Date Cash on the Effective Date, or as soon as reasonably practicable thereafter; provided, however, that all transfers and distributions required to be made on the Effective Date under this Plan with respect to the ML Secured Claim and ML Deficiency Claim shall be made on the Effective Date. On the date that is the first Business Day that is five (5) calendar days after the Effective Date, the CROPF shall transfer the remaining balance of the Effective Date Cash to Merrill Lynch.

(b)     Distributions After the Effective Date

Except as otherwise provided in this Plan or pursuant to agreement or understanding between the Plan Administrator and the holder of a Disputed Claim, if such Claim becomes Allowed after the Effective Date, the Plan Administrator shall make all transfers and distributions with respect to such Claim on or as soon as reasonably practicable after the date on which such Claim becomes Allowed. All Excluded Assets, including, without limitation, any proceeds or Estate Assets returned from the Christie's Auction, that are received by the Plan Administrator on behalf of the Debtors' Estates after the Effective Date, shall be distributed by the Plan Administrator to Merrill Lynch upon receipt thereof.

Distributions made after the Effective Date to holders of Allowed Claims shall be deemed to have been made on the Effective Date. No interest shall accrue or be payable with respect to such Claims or any distributions related thereto.

### Section 8.3    Unclassified Claims Reserve

At or prior to the Confirmation Hearing, the Debtors shall seek an estimation of the aggregate amount of all Unclassified Claims that is anticipated to be ultimately Allowed after the Effective Date.  On the Effective Date, the Plan Administrator shall (a) establish the Unclassified Claims Reserve; and (b) transfer Confirmation Cash to the Unclassified Claims Reserve in an amount determined by the Bankruptcy Court in the Confirmation Order to be sufficient to make all necessary distributions with respect to Unclassified Claims that are estimated to become Allowed after the Effective Date. Except as provided for in this Section 8.3, the Debtors and the Plan Administrator shall have no further obligation, and neither the Merrill Lynch Released Parties nor the Successful Bidder, if any, shall have any obligation, to fund the Unclassified Claims Reserve.  In the event that all Unclassified Claims have been either Allowed or Disallowed by this Plan, the Confirmation Order or Final Order of the Bankruptcy Court, any remaining balance of the Unclassified Claims Reserve shall be distributed by the Plan Administrator to Merrill Lynch, or its designee, as soon as reasonably practicable thereafter.

### Section 8.4    Classified Claims Reserve

At or prior to the Confirmation Hearing, the Debtors shall seek an estimation of the aggregate amount of all Classified Claims that are anticipated to be ultimately Allowed after the Effective Date.  On the Effective Date, the Plan Administrator shall (a) establish the Classified Claims Reserve; and (b) transfer Confirmation Cash to the Classified Claims Reserve in an amount determined by the Bankruptcy Court pursuant to the Confirmation Order to be sufficient to make all necessary distributions with respect to Classified Claims that are estimated to become Allowed after the Effective Date.  Except as provided for in this Section 8.4, the Debtors and the Plan Administrator shall have no further obligation, and neither the Merrill Lynch Released Parties nor the Successful Bidder, if any, shall have any obligation, to fund the Classified Claims Reserve.  In the event that all Classified Claims have been either Allowed or Disallowed by this Plan, the Confirmation Order or Final Order of the Bankruptcy Court, any remaining balance of the Classified Claims Reserve shall be distributed by the Plan Administrator to Merrill Lynch, or its designee, as soon as reasonably practicable thereafter.

### Section 8.5    No Distribution in Excess of Allowed Amount of Claim

Notwithstanding any other provision of this Plan, no holder of an Allowed Claim shall receive in respect of such Claim any distribution in excess of the Allowed amount of such Claim.

### Section 8.6    Distributions with Respect to Disputed Claims

Notwithstanding any other provision of this Plan, no distributions of any kind or nature shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim have been settled or withdrawn or have been determined by Final Order of the Bankruptcy Court, and the Disputed Claim has become Allowed.  Except as otherwise provided in this Plan, each holder of a Disputed Claim that becomes Allowed after the Effective Date shall receive an amount, without any interest thereon, that provides such holder with the same percentage recovery, as of the Effective Date, as holders of Claims in the same Class that were Allowed on the Effective Date, subject to the setoff rights as provided in Section 8.10 of this Plan.  To the extent that a Disputed Claim is Disallowed or expunged, the holder of such Claim shall not receive or retain any property or interest in property on account of the portion of such Claim that is Disallowed or expunged.

### Section 8.7    Distributions with Respect to Defendants

Notwithstanding any other provision of this Plan, the CROPF or the Plan Administrator (as applicable) may, in their exclusive discretion, withhold any and all distributions on account of any portion of a Claim held by an entity that (a) is a defendant in any pending contested matter or adversary proceeding being prosecuted by the CROPF prior to the Effective Date or the Plan Administrator after the Effective Date, as trustee of the Liquidation Trust; or (b) against whom the Debtors may assert a Cause of Action.

### Section 8.8    Disputed Payments

If any dispute arises as to the identity of a holder of an Allowed Claim that is to receive any distribution under this Plan, the CROPF or the Plan Administrator (as applicable) may, in lieu of making such distribution to such entity, make such distribution into an escrow account until such dispute is resolved by Final Order of the Bankruptcy Court or by written agreement among the interested parties to such dispute, which written agreement is reasonably acceptable to the Plan Administrator and Merrill Lynch, or its designee.

### Section 8.9    Postpetition Interest on Claims

Except as otherwise expressly provided in this Plan, the Confirmation Order or any contract, instrument, release, settlement or other agreement entered into in connection with this Plan, or required by applicable bankruptcy law (including the fair and equitable rule), postpetition interest shall not accrue on or after the Commencement Date on account of any Claim.  The provisions of this Section 8.9 shall not apply to interest on bonds or other securities or instruments issued by parties that are not Debtors.  Notwithstanding the foregoing, nothing in this Plan or the Confirmation Order shall preclude Merrill Lynch from asserting against any non-Debtor guarantor a claim for unpaid prepetition, postpetition or post-Effective Date interest, and reimbursement of Merrill Lynch's professional fees and expenses.

### Section 8.10  Setoffs

Except as otherwise provided in this Plan, the Confirmation Order, or in an agreement approved by a Final Order of the Bankruptcy Court, the CROPF or the Plan Administrator, upon the approval of Merrill Lynch, or its designee, (as applicable) may, pursuant to applicable law (including section 553 of the Bankruptcy Code), set off against any distribution amounts related to any Claim before such distribution is made on account of such Claim, any and all of the Claims (other than the Released Claims), rights and Causes of Action of any nature that the Debtors, their Estates, or the Liquidation Trust may hold against the holder of such Claim; provided, however, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, or any other act or omission of the CROPF or the Plan Administrator, nor any provision of this Plan, shall constitute a waiver or release by the CROPF or the Plan Administrator of any such Claims, rights and Causes of Action that the Liquidation Trust may possess against such holder.  To the extent that the CROPF or the Plan Administrator sets off a Claim of the Debtors' Estates against a holder of a Claim against the Debtors before a distribution is made to the holder of such Claim against the Debtors pursuant to this Plan, the CROPF or the Plan Administrator (as applicable) shall be entitled to full recovery on the Debtors' Claim against such holder.

### Section 8.11  Delivery of Distributions

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court

or on the books and records of the Debtors or their agents or in a letter of transmittal unless the CROPF or the Plan Administrator (as applicable) has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or interest by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder.

All costs and expenses related to the delivery of jewelry, jeweled objects and other in-kind (non-Cash) distributions required to be made under this Plan shall be posted and paid by the recipient thereof.

## Section 8.12 Unclaimed Property

(a)     Escrow of Unclaimed Property

The Plan Administrator shall hold all Unclaimed Property for the benefit of the holders of Claims entitled thereto under the terms of this Plan.  The Plan Administrator shall use reasonable efforts to determine the current address of the holders of Claims entitled to Unclaimed Property, but no distribution to such holders shall be made unless and until the Plan Administrator has determined the then current address of such holders, at which time such distribution shall be made to such holders without any interest thereon whatsoever, except as otherwise provided in this Plan.

(b)     Distribution of Unclaimed Property

Upon the conclusion of one hundred and twenty (120) calendar days following the date that any Cash or other property becomes Unclaimed Property, the holders of Allowed Claims theretofore entitled to such Unclaimed Property shall be deemed to have forfeited such property, whereupon (i) all rights and title to and interest in such Unclaimed Property shall immediately and irrevocably re-vest in the Liquidation Trust for the benefit of holders of Allowed, but as yet not fully paid, Claims in the Class in which the applicable Claim was classified; (ii) such holders shall cease to be entitled to such Unclaimed Property or any further distributions on account of such Claims; (iii) such Claims shall be deemed to be Disallowed and expunged to the extent of such forfeiture; and (iv) such Unclaimed Property shall be redistributed by the Plan Administrator Pro Rata to any Allowed Claims that remain unpaid, either in whole or in part, in the Class in which the applicable Claim was classified.  If no Allowed Claims remain unpaid within the Class in which the applicable Claim was classified, the Unclaimed Property shall be redistributed to Merrill Lynch, or its designee.

## Section 8.13 Manner of Payment Under Plan

Any distributions to be made on behalf of the applicable Debtor pursuant to this Plan shall be made by checks drawn on accounts maintained by the CROPF or the Plan Administrator (as applicable), or by wire transfer if circumstances justify, at the option of the CROPF or the Plan Administrator (as applicable).

## Section 8.14 Claims Paid by Third Parties

(a)     Claims Paid by Third Parties

To the extent that a holder of a Claim against the Debtors receives payment on account of such Claim from a party that is not the CROPF or the Plan Administrator, such Claim shall be reduced accordingly without an objection to such Claim having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.  To the extent that a holder of a Claim against the Debtors receives a distribution on account of such Claim and also receives payment from a party that is not the CROPF or the Plan Administrator on account of such Claim, such holder shall, within thirty (30)

calendar days of receipt thereof, repay and/or return the distribution to the Plan Administrator, to the extent that the holder's total recovery on account of such Claim from the third party and under this Plan exceeds the Allowed amount of such Claim. Any amounts returned by the holder of a Claim against the Debtors to the Plan Administrator pursuant to this Section 8.14 shall be placed in the Unclassified Claims Reserve or Classified Claims Reserve, as applicable.

### Section 8.15 Allocation of Plan Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest. Except as otherwise required by the terms of the applicable transaction documents, the provisions of this Section 8.15 shall not apply to bonds or other securities or instruments issued by parties that are not Debtors.

### Section 8.16 Withholding and Reporting Requirements

All distributions under this Plan shall be subject to federal, state, local and foreign withholding taxes or other amounts required to be withheld under any applicable law and such amounts shall be deducted and withheld from any distributions made pursuant to this Plan. All entities holding Allowed Claims shall be required to provide to the CROPF or the Plan Administrator (as applicable) any information necessary to effectuate the withholding of such taxes. Notwithstanding the foregoing, each holder of an Allowed Claim that is to receive a distribution (other than Merrill Lynch, or its designee) shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit on account of such distribution, including withholding tax obligations in respect of in-kind (non-Cash) distributions. The CROPF or the Plan Administrator (as applicable) shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, establishing any mechanisms the CROPF or the Plan Administrator (as applicable) believes is reasonable and appropriate, including, without limitation, requiring claimholders to submit appropriate tax withholding certifications. Any entity issuing an instrument or making an in-kind (non-Cash) distribution under this Plan has the right, but not the obligation, to refrain from making such distribution until the entity to which the distribution is to be made has made arrangements satisfactory to such issuing or disbursing entity for payment of any such tax obligation.

### Section 8.17 Distributions Free and Clear

Except as otherwise expressly provided herein, any distribution or transfer made under this Plan, including, without limitation, distributions to any holder of an Allowed Claim, shall be free and clear of any liens, Claims, encumbrances, charges and other interests, and no other entity shall have any interest, whether legal, beneficial or otherwise, in property distributed or transferred pursuant to this Plan.

For the avoidance of doubt, the transfer of all rights and title to and interest in (a) the Excluded Assets, including, without limitation, the Excluded Assets not in the possession, custody, or control of the Debtors on the Effective Date; and (b) the Causes of Action transferred to the Liquidation Trust for the benefit of Merrill Lynch, shall be free and clear of all liens, Claims, encumbrances, charges and other interests, other than the liens, Claims, encumbrances, charges and other interests of Merrill Lynch.

## Section 8.18  Time Bar to Cash Payments

Checks issued by the CROPF or the Plan Administrator, on behalf of the Debtors in respect of Allowed Claims shall be null and void if not presented for payment within sixty (60) calendar days after the date of issuance thereof.  Requests for reissuance of any check shall be made to the CROPF or the Plan Administrator (as applicable) by the holder of the Allowed Claim to whom such check originally was issued on or before thirty (30) calendar days after the expiration of the sixty (60) calendar day period following the date of issuance of such check.  After such date, all funds held on account of such voided check shall be redistributed by the Plan Administrator to Merrill Lynch, or its designee, as soon as reasonably practicable thereafter.

## ARTICLE 9       DISPUTED CLAIMS AND EQUITY INTERESTS

### Section 9.1   Objections to Claims and Equity Interests

As of the Effective Date, Merrill Lynch, or its designee, and the Plan Administrator, upon direction and approval by Merrill Lynch, or its designee, shall have the exclusive right to file and prosecute objections to, and negotiate, settle or otherwise resolve, any and all Claim and Equity Interests. Except as otherwise provided herein, any objection to a Claim or Equity Interest shall be filed and served upon the holder of such Claim or Equity Interest on or before the Claims Objection Deadline.  The Claims Objection Deadline may be extended by order of the Bankruptcy Court upon motion of the Plan Administrator or Merrill Lynch and notice and a hearing.  Notwithstanding any authority to the contrary, an objection to a Claim or Equity Interest shall be deemed properly served on the holder of such Claim or Equity Interest if service is made in any of the following manners:  (a) in accordance with rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (b) by first class mail, postage prepaid, on any counsel that has appeared on behalf of the holder of such Claim or Equity Interest in the Chapter 11 Cases and has not withdrawn such appearance; (c) by first class mail, postage prepaid, on the signatory on the respective proof of claim or interest or other representative identified on the proof of claim or interest or any attachment thereto; or (d) at the last known address of the holder of such Claim or Equity Interest if no proof of claim is filed or if the CROPF or the Plan Administrator (as applicable) has been notified in writing of a change of address.

### Section 9.2   Estimation of Claims

As of the Effective Date, Merrill Lynch, or its designee, and the Plan Administrator, upon direction and approval by Merrill Lynch, or its designee, shall have the exclusive right to request at any time that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, for any reason or purpose, regardless of whether an objection has been previously filed with respect to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, the estimated amount shall constitute either the Allowed amount of such Claim or a limitation on the maximum amount of such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a limitation on the maximum amount of such Claim, Merrill Lynch, or its designee, and the Plan Administrator, upon direction and approval of Merrill Lynch, or its designee, may pursue supplementary proceedings to object to the ultimate allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or otherwise resolved by any mechanism set forth in this Plan or approved by the Bankruptcy Court.  Notwithstanding section 502(j) of the Bankruptcy Court, in no event shall any holder of a Claim that has been estimated be entitled to seek reconsideration of the estimation of

such Claim unless the holder of such Claim has filed a motion requesting the right to seek such reconsideration on or before thirty (30) calendar days after the date such Claim is estimated by the Bankruptcy Court.

## Section 9.3   No Recourse

Any holder of a Claim that is Allowed as of the Effective Date shall be entitled to receive its respective distribution under this Plan solely from the Effective Date Cash.  In no event shall any holder of a Claim that is Allowed as of the Effective Date have any recourse against the Unclassified Claims Reserve, the Classified Claims Reserve, the Plan Expenses Reserve, any proceeds of the Causes of Action transferred to the Liquidation Trust, the Plan Administrator, the Debtors, the Successful Bidder, if any, the Merrill Lynch Released Parties, the Released Parties, or any holder of an Allowed Claim or any current or former officers, directors, employees, agents, representatives, partners, limited partners, members, trustees, managers, affiliates, parents, subsidiaries, attorneys, auditors, appraisers, accountants, financial advisors, investment bankers, consultants, or other professionals of any of the foregoing and any entity controlling or controlled by any of the foregoing and any predecessors, successors and assigns of any of the foregoing, or any property of any of the foregoing, with respect to the distributions made, or to be made, under this Plan on account of such Claim, regardless of whether there is sufficient Effective Date Cash.

Any holder of a Classified Claim that ultimately becomes Allowed after the Effective Date shall be entitled to receive its respective distribution under this Plan solely from the Classified Claims Reserve.  In no event shall any holder of a Classified Claim that becomes Allowed after the Effective Date have any recourse against the Effective Date Cash, the Unclassified Claims Reserve, the Plan Expenses Reserve, any proceeds of the Causes of Action transferred to the Liquidation Trust, the Plan Administrator, the Debtors, the Successful Bidder, if any, the Merrill Lynch Released Parties, the Released Parties, or any holder of an Allowed Claim or any current or former officers, directors, employees, agents, representatives, partners, limited partners, members, trustees, managers, affiliates, parents, subsidiaries, attorneys, auditors, appraisers, accountants, financial advisors, investment bankers, consultants, or other professionals of any of the foregoing and any entity controlling or controlled by any of the foregoing and any predecessors, successors and assigns of any of the foregoing, or any property of any of the foregoing, with respect to the distributions made, or to be made, under this Plan on account of such Claim, regardless of whether sufficient Cash or other property remains available for distribution in the Classified Claims Reserve at the time that such Claim becomes Allowed.

Any holder of an Unclassified Claim that ultimately becomes Allowed after the Effective Date shall be entitled to receive its respective distribution under this Plan solely from the Effective Date Cash, the Unclassified Claims Reserve.  In no event shall any holder of an Unclassified Claim that becomes Allowed after the Effective Date have any recourse against the Classified Claims Reserve, Plan Expenses Reserve, any proceeds of the Causes of Action transferred to the Liquidation Trust, the Plan Administrator, the Debtors, the Successful Bidder, if any, the Merrill Lynch Released Parties, the Released Parties, or any holder of an Allowed Claim or any current or former officers, directors, employees, agents, representatives, partners, limited partners, members, trustees, managers, affiliates, parents, subsidiaries, attorneys, auditors, appraisers, accountants, financial advisors, investment bankers, consultants, or other professionals of any of the foregoing and any entity controlling or controlled by any of the foregoing and any predecessors, successors and assigns of any of the foregoing, or any property of any of the foregoing, with respect to the distributions made, or to be made, under this Plan on account of such Claim, regardless of whether sufficient Cash or other property remains available for distribution in the Unclassified Claims Reserve at the time that such Claim becomes Allowed.

## Section 9.4   Late-Filed Claims and Amendments to Claims

Pursuant to section 502(b)(9) of the Bankruptcy Code, any Claim that is not filed on or before the applicable deadline to file such Claim shall be Disallowed and expunged in full as of the Effective Date without any action required of the Debtors, the Plan Administrator, Merrill Lynch or the Bankruptcy Court.

On or after the applicable deadline to file a Claim, the holder of such Claim must obtain prior authorization from the Bankruptcy Court, or the Plan Administrator or the Debtors (as applicable), to file or amend such Claim.  Any new or amended Claim filed after the applicable deadline to file such Claim without such prior authorization will not appear on the register of claims and will be deemed Disallowed and expunged in full without any action required of the Debtors, the Plan Administrator, Merrill Lynch or the Bankruptcy Court.

## Section 9.5   Settlement of Disputed Claims

Except as otherwise provided in this Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, as of the Effective Date, upon direction and approval by Merrill Lynch, or its designee, the Plan Administrator shall have the exclusive authority to compromise, settle, or otherwise resolve all Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors' Estates may hold against any entity, without the necessity for notice to or approval by the Bankruptcy Court or any other party in interest.

## ARTICLE 10    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### Section 10.1 Assumption and Rejection of Executory Contracts and Unexpired Leases

(a)     Assumption of Executory Contracts and Unexpired Leases

All executory contracts and unexpired leases listed on the Schedule of Assumed Contracts and Leases shall be deemed automatically assumed (and if applicable, assigned) pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code effective as of and subject to the occurrence of the Effective Date, except for those executory contracts or unexpired leases that (i) have already been assumed, assigned or rejected pursuant to a Final Order of the Bankruptcy Court; (ii) are specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts and Leases; (iii) are not capable of assumption pursuant to section 365(c) of the Bankruptcy Code; or (iv) have previously expired or terminated pursuant to their own terms (and not otherwise extended).

To the extent any provision in any executory contract or unexpired lease assumed pursuant to this Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the applicable Debtor's assumption and/or assignment of such executory contract or unexpired lease, then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto.

Modifications, amendments, supplements and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during the Chapter 11 Cases and actions taken in accordance therewith, (i) do not alter in any way the prepetition nature of the executory contracts and unexpired leases, or the validity, priority or amount of any Claims against the Debtors that

may arise under such executory contract or unexpired lease; (ii) are not and do not create postpetition contracts or leases; (iii) do not elevate to Administrative Expense Claims any Claims of the counterparties to the executory contracts and unexpired leases against any of the Debtors; and (iv) do not entitle any entity to a Claim under any section of the Bankruptcy Code on account of the difference between the terms of any prepetition executory contracts or unexpired leases and subsequent modifications, amendments, supplements or restatements.

(b)     Rejection of Remaining Executory Contracts and Unexpired Leases

All executory contracts and unexpired leases to which any of the Debtors is a party, including the executory contracts and unexpired leases listed on the Schedule of Rejected Contracts and Leases, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code effective as of and subject to the occurrence of the Effective Date, except for those executory contracts or unexpired leases that (i) have already been rejected pursuant to a Final Order of the Bankruptcy Court; or (ii) have previously expired or terminated pursuant to their own terms (and not otherwise extended). Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections and a finding that such rejected executory contracts or unexpired leases are burdensome and that the rejection thereof is in the best interests of the Debtors and their Estates.

(c)     The Executory Contract and Unexpired Lease Schedules

The Executory Contract and Unexpired Lease Schedules shall be included in the Plan Supplement and shall represent the Debtors' then-current good faith belief regarding the intended treatment of all executory contracts and unexpired leases listed thereon. The Debtors and Merrill Lynch reserve the right, on or prior to 3:00 p.m. (prevailing Eastern time) on the Business Day immediately prior to the commencement of the Confirmation Hearing, (i) to amend the Executory Contract and Unexpired Lease Schedules in order to add, delete or reclassify any executory contract or unexpired lease or amend a proposed assignment; and (ii) to amend the Proposed Cure with respect to any executory contract or unexpired lease previously listed as to be assumed; provided, however, that if the Confirmation Hearing is adjourned for a period of more than two consecutive calendar days, such amendment right shall be extended to 3:00 p.m. (prevailing Eastern time) on the Business Day immediately prior to the rescheduled or contingent Confirmation Hearing, and this proviso shall apply in the case of any and all subsequent adjournments of the Confirmation Hearing.

Unless otherwise specified in the Executory Contract and Unexpired Lease Schedules, each executory contract and unexpired lease listed on such schedules, shall include all (i) modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease; and (ii) all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem relating to such premises, unless any of the foregoing agreements has been rejected pursuant to a Final Order of the Bankruptcy Court.

(d)     Exhibits Not Admissions

The inclusion or exclusion of a contract, lease or other agreement in the Executory Contract and Unexpired Lease Schedules shall not constitute an admission by the Debtors as to the characterization of whether any such contract, lease, or other agreement is, or is not, an executory contract or unexpired lease or whether any parties to any such contract, lease or other agreement are time-barred from asserting Claims against the Debtors or that any Debtor has any liability thereunder. The Debtors and Merrill Lynch reserve all rights with respect to the characterization of any such contracts, leases or other agreements.

## Section 10.2 Cure of Defaults

Any monetary defaults under each executory contract and unexpired lease to be assumed under this Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code, (a) by payment of the default amount in Confirmation Cash from the Unclassified Claims Reserve on the Effective Date or as soon as reasonably practicable thereafter; (b) by payment of the default amount in Cash by the Successful Bidder, if any, as agreed to by the Debtors, Merrill Lynch and the Successful Bidder; or (c) on such other terms as agreed to by the Debtors or the Plan Administrator, upon approval by Merrill Lynch, or its designee, and the parties to such executory contract or unexpired lease. With the exception of such payment of a Cure, if any, the Debtors are not required to make any payment or take any other action in order to satisfy the requirements of section 365(b) of the Bankruptcy Code with regard to the executory contracts and unexpired leases being assumed under this Plan. No Cure shall be allowed with respect to a penalty rate or default rate of interest, each to the extent not allowed under the Bankruptcy Code or applicable law.

The Schedule of Assumed Contracts and Leases lists the Proposed Cure for each executory contract or unexpired lease to be assumed under this Plan. The Proposed Cures set forth in the Schedule of Assumed Contracts and Leases shall be final and binding on all non-Debtor parties to the respective executory contract or unexpired lease, and shall not be subject to further dispute or audit based on performance prior to the time of assumption, irrespective of the terms and conditions of such executory contracts or unexpired leases, unless an objection to such Proposed Cure is timely-filed and properly-served pursuant to Section 10.4 below. In the event of a dispute with respect to the assumption and/or assignment of any executory contract or unexpired lease or the amount of the respective Proposed Cure, payment of the Cure, if any, shall be made following the entry of a Final Order by the Bankruptcy Court resolving the dispute and approving assumption (and, if applicable, assignment) of such executory contract or unexpired lease. If no such objection is filed, the Proposed Cure shall be deemed to satisfy fully any obligations the Debtors might have with respect to such executory contract or unexpired lease under section 365(b) of the Bankruptcy Code.

## Section 10.3 Assignment

To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease assumed and assigned pursuant to this Plan shall remain in full force and effect for the benefit of the assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment. To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts or conditions the assignment of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension or modify any term or condition upon any such assignment constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

## Section 10.4 Objections to Rejection, Assumption, Assignment or Cure

Any non-Debtor party to an executory contract or unexpired lease listed on the Executory Contract and Unexpired Lease Schedules that wishes to object to the rejection, assumption, assignment of, or Proposed Cure related to, such executory contract or unexpired lease, must file an objection with the Bankruptcy Court by the Confirmation Objection Deadline and serve such objection on (a) counsel to the Debtors; (b) special counsel to the Debtors; and (c) counsel to Merrill Lynch. Any objection to the

Proposed Cure set forth on the Schedule of Assumed Contracts and Leases shall state with specificity the Cure amount the objecting party believes is required and provide appropriate documentation in support thereof.

**THE FAILURE TO PROPERLY FILE AND SERVE AN OBJECTION TO THE DEBTORS' REJECTION, ASSUMPTION, ASSIGNMENT OR PROPOSED CURE ON OR BEFORE THE CONFIRMATION OBJECTION DEADLINE SHALL RESULT IN THE NON-DEBTOR PARTY TO THE APPLICABLE EXECUTORY CONTRACT OR UNEXPIRED LEASE BEING (A) DEEMED TO CONSENT TO SUCH REJECTION, ASSUMPTION, ASSIGNMENT OR PROPOSED CURE; (B) BARRED, ESTOPPED AND PERMANENTLY ENJOINED FROM (I) OBJECTING TO SUCH REJECTION, ASSUMPTION, ASSIGNMENT OR PROPOSED CURE AND PRECLUDED FROM BEING HEARD AT THE CONFIRMATION HEARING WITH RESPECT TO SUCH OBJECTION, (II) ASSERTING AGAINST THE DEBTORS, THEIR ESTATES, ANY OF THE DEBTORS' PROPERTY, THE PLAN ADMINISTRATOR, THE SUCCESSFUL BIDDER, IF ANY, OR THE MERRILL LYNCH RELEASED PARTIES, ANY DEFAULT EXISTING AS OF THE EFFECTIVE DATE OR ANY COUNTERCLAIM, DEFENSE, SETOFF OR ANY OTHER INTEREST, AND (III) IMPOSING OR CHARGING AGAINST THE DEBTORS, THEIR ESTATES, ANY OF THE DEBTORS' PROPERTY, THE PLAN ADMINISTRATOR, THE SUCCESSFUL BIDDER, IF ANY, OR THE MERRILL LYNCH RELEASED PARTIES, ANY ACCELERATIONS, ASSIGNMENT FEES, INCREASES OR ANY OTHER FEES AS A RESULT OF ANY ASSUMPTION OR ASSIGNMENT PURSUANT TO THIS PLAN; AND (C) DEEMED TO WAIVE ANY RIGHT TO RECEIVE A CURE OTHER THAN THE PROPOSED CURE SET FORTH IN THE SCHEDULE OF ASSUMED CONTRACTS AND LEASES.**

With respect to any timely-filed and properly-served objection to the Debtors' proposed rejection, assumption, assignment or Proposed Cure, the Debtors and Merrill Lynch may, in their sole discretion, (a) settle or otherwise resolve such objection; (b) respond to such objection (in which case the Bankruptcy Court shall decide such objection at the Confirmation Hearing); or (c) remove the particular agreement from the respective Executory Contract and Unexpired Lease Schedules.

Notwithstanding anything in the foregoing to the contrary, with respect to any contract, lease or other agreement that is subject to litigation or a proceeding in which the characterization of such contract, lease or agreement is an issue and that is pending as of the commencement of the Confirmation Hearing, the Debtors shall have thirty (30) calendar days after the entry of a Final Order by the Bankruptcy Court resolving the litigation or proceeding to assume or reject such contract, lease or agreement.

### Section 10.5 Rejection Damage Claims

All Rejection Damage Claims shall be treated as General Unsecured Claims and shall be classified in Class D, and may be objected to in accordance with the provisions of Article 9 of this Plan and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. Any holder of a Rejection Damage Claim that ultimately becomes Allowed shall be entitled to receive its applicable distribution under this Plan as a General Unsecured Claim solely from the Classified Claims Reserve.

All proofs of claim with respect to Rejection Damage Claims must be filed with the Bankruptcy Court and served on the Debtors on or before the later of (a) the deadline to file such claims set forth in the Bar Date Order; and (b) the first business day that is thirty (30) calendar days after entry of an order authorizing the rejection of the respective executory contract or unexpired lease, including the Confirmation Order with respect to the executory contracts and unexpired leases rejected pursuant to this Plan.

**THE FAILURE TO PROPERLY FILE AND SERVE A PROOF OF CLAIM WITH RESPECT TO A REJECTION DAMAGE CLAIM BY THE DEADLINES SET FORTH IN THIS ARTICLE 10, AS APPLICABLE, SHALL RESULT IN SUCH CLAIM BEING DEEMED FOREVER BARRED, DISALLOWED AND DISCHARGED AS OF THE EFFECTIVE DATE AUTOMATICALLY WITHOUT THE NEED FOR ANY OBJECTION FROM THE DEBTORS, THE PLAN ADMINISTRATOR OR MERRILL LYNCH OR ANY ACTION BY THE BANKRUPTCY COURT.**

## ARTICLE 11   Effect of Confirmation

### Section 11.1 Vesting of Assets

Except as otherwise provided in this Plan, upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, (a) all of the Confirmation Cash transferred to the Liquidation Trust shall vest in the Liquidation Trust subject to all liens on and security interests in such Confirmation Cash and all Disputed Claims against the Debtors as of the Effective Date; (b) all Causes of Action belonging to any of the Debtors or their Estates shall vest in the Liquidation Trust solely for the benefit of Merrill Lynch, or its designee, free and clear of all liens, Claims, encumbrances, charges, and other interests, other than the liens, Claims, encumbrances, charges and other interests held by Merrill Lynch; (c) all of the Excluded Assets shall vest in Merrill Lynch, free and clear of all liens, Claims, encumbrances, charges and other interests, other than the liens, Claims, encumbrances, charges and other interests of Merrill Lynch; and (d) the FL Auction Assets and the proceeds thereof, shall vest in (i) the Successful Bidder, free and clear of all liens, Claims, encumbrances, charges, and other interests, if the FL Auction Assets are sold to the Successful Bidder pursuant to Section 7.2 of this Plan, or (ii) NewCo, free and clear of all liens, Claims, encumbrances, charges and other interests, if Merrill Lynch, or its designee, acquires the FL Auction Assets pursuant to Section 7.2 of this Plan.

### Section 11.2 Injunction

**Except as otherwise provided herein, on the Effective Date, all holders of Claims against and Equity Interests in the Debtors or their Estates shall be precluded and enjoined from asserting against the Debtors, their Estates, their successors and assigns, or any of their assets or property, (a) any such Claim against or Equity Interest in the Debtors, by any means, including, without limitation, (i) commencing or continuing, in any matter or in any place, any action or other proceeding of any kind with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors or their Estates with respect to such Claim or Equity Interest, (iii) creating, perfecting or enforcing any lien or encumbrance of any kind against the Debtors or their Estates or against property or interests in property of the Debtors or their Estates with respect to such Claim or Equity Interest, or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or their Estates or against the property or interests in property of the Debtors or their Estates with respect to such Claim or Equity Interest; and (b) any other or further Claim, Equity Interest or Cause of Action based upon any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred on or before the Effective Date, whether or not such holder has filed a proof of such Claim or Equity Interest and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date; <u>provided</u>, <u>however</u>, that nothing contained herein shall preclude such entity from exercising their rights pursuant to and consistent with the terms of this Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered under or in connection with this Plan.**

## Section 11.3 Siegman Injunction

**Pursuant to the Family Settlement Agreement, this Plan, and the Confirmation Order, on the Effective Date, the Siegman Trust, and any Creditor, beneficiary or party in interest claiming derivatively through the Siegman Trust, shall be precluded and enjoined from, at any time, directly or indirectly, (a) asserting any interest in any of the Special Collection (as defined in the Family Settlement Agreement) or any of the proceeds from the sale, transfer or consignment of any item of the Special Collection; (b) asserting any interest in any of the Debtors' Property or Merrill Lynch Collateral (as such terms are defined in the Family Settlement Agreement), or any of the proceeds from the sale, transfer or consignment of any of the Debtors' Property or Merrill Lynch Collateral; (c) challenging the validity of any pledge or contribution of property by Esmerian or REI to any of the Debtors or Merrill Lynch; (d) challenging the validity of any of the Loan Documents (as defined in the Family Settlement Agreement); and (e) asserting any and all Claims, demands, obligations, judgments and Causes of Action of any type and kind, whether known or unknown, that the Siegman Trust now has, ever had, or may have in the future, that were or could have been asserted against the Merrill Lynch Released Parties or the Debtor Released Parties (as such terms are defined in the Family Settlement Agreement), including those Claims that were or could have been asserted in the King Adversary Proceeding, Esmerian Adversary Proceeding and the State Court Adversary Proceeding (as such terms are defined in the Family Settlement Agreement).**

## Section 11.4 Injunction Against Interference with Plan

Except as otherwise provided in this Plan, upon entry of the Confirmation Order, all holders of Claims against or Equity Interests in any of the Debtors, and other parties in interest, along with any current or former officers, directors, employees, agents, representatives, partners, limited partners, members, trustees, managers, affiliates, parents, subsidiaries, attorneys, auditors, appraisers, accountants, financial advisors, investment bankers, consultants, or other professionals of any of the foregoing and any entity controlling or controlled by any of the foregoing and any predecessors, successors and assigns of any of the foregoing, shall be enjoined from seeking to oppose, delay, interfere or otherwise frustrate implementation or consummation of this Plan, including, without limitation, taking any action whatsoever that changes, alters, modifies or expands the tax filing status of any of the Debtors, and any such action or omission shall be void ab initio.

## Section 11.5 Term of Injunctions or Stays Arising Under or Entered During the Chapter 11 Cases

Unless otherwise provided in the Plan, (a) all injunctions with respect to or stays against an action against property of the Debtors' Estates arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the Confirmation Date, shall remain in full force and effect until such property is no longer property of the Debtors' Estates; and (b) all other injunctions and stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (i) the date that the Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court, (ii) the date that the Chapter 11 Cases are dismissed pursuant to a Final Order of the Bankruptcy Court, or (iii) the date that a discharge is granted or denied pursuant to a Final Order of the Bankruptcy Court.

## Section 11.6 Exculpation

To the fullest extent permissible under applicable law, none of the Merrill Lynch Released Parties, or the Released Parties, or any of such parties' successors and assigns, shall have or incur any liability to, or be subject to any right of action by, any holder of a Claim against or Equity Interest in any of the Debtors, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or agents acting in such capacity, or any of their successors and assigns, for any act or omission in connection with, related to or arising out of, the Chapter 11 Cases, the operation of the Debtors' businesses during the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of this Plan, the Asset Purchase Agreement, if any, or any other contract, instrument, release, agreement, settlement or document created, modified, amended, terminated or entered into in connection with this Plan, or any other act or omission in connection with the Debtors' bankruptcy; **provided**, **however**, that nothing in this Section 11.6 shall impact the allowance or disallowance of any Claim not expressly released under this Plan; **provided further**, **however**, that the foregoing shall not limit the liability of the Debtors' professionals to their clients or the Debtors' Estates contrary to the requirements of Rule 1.8(h)(1) of the New York Rules of Professional Conduct or absolve conduct of such professionals that rises to the level of gross negligence or willful misconduct.

## Section 11.7 Releases

(a)     Release by Debtors

On the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, the Debtors and any entity seeking to exercise the rights of the Debtors or their Estates, including, without limitation, any successor to the Debtors, shall completely, conclusively, absolutely, unconditionally, irrevocably, and forever release, waive and discharge the Released Parties, including the Merrill Lynch Released Parties, from any and all Claims, Equity Interests, liens, encumbrances, obligations, damages, demands, debts, suits, Causes of Action, judgments, liabilities or rights whatsoever (other than the rights of the Debtors or their successors to enforce this Plan and contracts, instruments, releases, indentures, agreements and other documents delivered hereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or in part upon any act, omission, transaction, agreement, event or occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of this Plan, the Asset Purchase Agreement, if any, the business or contractual arrangements between any Debtor and any Released Party, or any other act or omission in connection with the Debtors' bankruptcy, without further notice to or action by the Bankruptcy Court, or act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any entity, **provided**, **however**, that the foregoing shall not operate as a waiver or release of Claims or Causes of Action, if any, against any current employee of the Debtors arising out of the fraud, misappropriation, willful misconduct, gross negligence or criminal conduct of such employee; **provided further**, **however**, that the foregoing shall not limit the liability of the Debtors' professionals to their clients or the Debtors' Estates contrary to the requirements of Rule 1.8(h)(1) of the New York Rules of Professional Conduct or absolve conduct of such professionals that rises to the level of gross negligence or willful misconduct.

(b)     Release by Holders of Claims and Equity Interests, and Released Parties

**On the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, the holders of Claims against and Equity Interests in the Debtors, and the Released Parties, will be deemed to completely, conclusively, absolutely, unconditionally, irrevocably, and forever release, waive and discharge the Released Parties, including the Merrill Lynch Released Parties, from any and all Claims, Equity Interests, liens, encumbrances, obligations, damages, demands, debts, suits, Causes of Action, judgments, liabilities or rights whatsoever (other than the right to enforce the Debtors' obligations under this Plan and the contracts, instruments, releases, indentures, agreements and other documents delivered hereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, based in whole or in part on any act, omission, transaction, agreement, event or occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the business or contractual arrangements with any Debtor, the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of this Plan, the Asset Purchase Agreement, if any, or any other contract, instrument, release, agreement, settlement or document created, modified, amended, terminated or entered into in connection with this Plan, the restructuring of any Claims against and Equity Interests in the Debtors, the property to be distributed under this Plan, or any other act or omission in connection with the Debtors' bankruptcy, without further notice to or action by the Bankruptcy Court, or act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any entity; <u>provided</u>, <u>however</u>, that the foregoing shall not limit the liability of the Debtors' professionals to their clients or the Debtors' Estates contrary to the requirements of Rule 1.8(h)(1) of the New York Rules of Professional Conduct or absolve conduct of such professionals that rises to the level of gross negligence or willful misconduct.**

### Section 11.8 Exclusions and Limitations on Exculpation, Indemnification, and Releases

Notwithstanding anything in this Plan to the contrary, no provision of this Plan, the Confirmation Order, or exhibits, schedules and supplements related thereto, including, without limitation, any exculpation, indemnification, or release provision, shall modify, release, or otherwise limit the liability of any entity not specifically released hereunder, including, without limitation, (a) the liability of any entity who is a co-obligor or joint tortfeasor of a Released Party or who is otherwise liable under theories of vicarious or other derivative liability; and (b) the liability of the Debtors' professionals to their clients or the Debtors' Estates contrary to the requirements of Rule 1.8(h)(1) of the New York Rules of Professional Conduct or absolve conduct of such professionals that rises to the level of gross negligence or willful misconduct.

Nothing in the Confirmation Order or this Plan shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any Claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order or this Plan enjoin the United States or any state or local authority from bringing any Claim, suit, action or other proceedings against the Released Parties for any liability whatever, including, without limitation, any Claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any

liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties.

## Section 11.9 Binding Effect

Upon the Effective Date, this Plan shall be binding on, and shall inure to the benefit of, the Debtors' Estates and their respective successors and assigns. The rights, benefits and obligations of any entity named or referenced in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity, including any holder of a Claim against or Equity Interest in the Debtors, whether or not the Claim or Equity Interest of such holder is Impaired under this Plan and whether or not such holder has voted to accept this Plan.

## ARTICLE 12    CONDITIONS PRECEDENT TO EFFECTIVE DATE

## Section 12.1 Conditions to Effectiveness of Plan

The following are conditions precedent to the effectiveness of this Plan and the occurrence of the Effective Date, each of which must be satisfied, or waived in accordance with Section 12.2 of this Plan:

(a)    In the event that the FL Auction Assets are sold to a Successful Bidder pursuant to Section 7.2 of this Plan (i) all "Conditions to Obligations of Parties" set forth in the Asset Purchase Agreement executed by such Successful Bidder shall have been satisfied or waived, in writing, by the party entitled to waive such condition, (ii) the Bankruptcy Court shall have entered the Confirmation Order and Sale Order (if applicable) in form and substance satisfactory to the Debtors and Merrill Lynch, (iii) the Confirmation Order and the Sale Order (if applicable) shall, among other things, direct the (x) payment to Merrill Lynch of the Cash consideration paid for the FL Auction Assets by the Successful Bidder, and (y) transfer to Merrill Lynch all rights and title to and interest in the Excluded Assets, and possession of the Excluded Assets in the possession, custody or control of the Debtors as of the Effective Date, (iv) the Confirmation Order and the Sale Order (if applicable) shall not be subject to any stay or injunction, and (v) the Confirmation Order and the Sale Order (if applicable) shall have become final and non-appealable (provided that such condition (v) above may be waived, in writing, by the Debtors and Merrill Lynch);

(b)    In the event that the FL Auction Assets are acquired by Merrill Lynch pursuant to Section 7.2 of this Plan, (i) the Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtors and Merrill Lynch, (ii) the Confirmation Order shall, among other things, direct the transfer to Merrill Lynch (x) all rights and title to and interest in, and possession of, the FL Auction Assets, and (y) all rights and title to and interest in, the Excluded Assets, and possession of the Excluded Assets in the possession, custody or control of the Debtors as of the Effective Date, (iii) the Confirmation Order shall not be subject to any stay or injunction, and (iv) the Confirmation Order shall have become final and non-appealable (provided that such condition (iv) above may be waived, in writing, by the Debtors and Merrill Lynch);

(c)    All actions, documents, instruments and agreements necessary to implement this Plan (each in form and substance satisfactory to the Debtors and Merrill Lynch) shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived, in writing, by the parties benefited thereby;

(d)    All consents, authorizations and approvals necessary to implement this Plan shall have been obtained and not revoked; and

(e)     The Bankruptcy Court shall have determined pursuant to the Confirmation Order that (i) the Effective Date Cash in the amount of $1,505,000 is sufficient to make all necessary distributions with respect to (x) Claims that are estimated to be Allowed as of the Effective Date; (y) any portion of the monthly fee due and unpaid to the CROPF under the CROPF Services Agreement as of the Effective Date in an amount not to exceed $105,000; and (z) the CROPF Transaction Fee, provided that the CROPF Transaction Fee is approved pursuant to an order of the Bankruptcy Court on or before the first Business Day that is five (5) Business Days after the Effective Date; (ii) the Unclassified Claims Reserve in the amount of $2,625,000 is sufficient to make all necessary distributions with respect to Unclassified Claims that are estimated to become Allowed after the Effective Date; (iii) the Classified Claims Reserve in the amount of $600,000 is sufficient to make all necessary distributions with respect to Classified Claims that are estimated to become Allowed after the Effective Date; and (iv) the Plan Expenses Reserve in the amount of $250,000 is sufficient to satisfy all Plan Expenses pursuant to Section 6.4 of this Plan.

## Section 12.2  Waiver of Conditions

Subject to the terms and conditions of the Asset Purchase Agreement, if any, Merrill Lynch and the Debtors, may waive any of the conditions to effectiveness of this Plan without leave of or notice to the Bankruptcy Court or any party in interest and without any formal action other than proceeding with confirmation and consummation of this Plan. The failure to satisfy or waive a condition to effectiveness of this Plan may be asserted by Merrill Lynch and the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of Merrill Lynch or the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights hereunder and each right shall be deemed an ongoing right that may be asserted at any time.

## ARTICLE 13     RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising in, arising under, or related to the Chapter 11 Cases and this Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine any motions for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b)     To hear and determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)     To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)     To hear and determine all matters related to the allowance, disallowance, liquidation, classification, priority, compromise, estimation or payment of any Claim or Equity Interest, including any objections to, or requests for estimation of, Claims or Equity Interests, whether filed, asserted or made before or after the Confirmation Date;

(e)     To enter, implement or enforce such orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(f)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation,

implementation or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(g)     To hear and determine any application to modify this Plan to cure any defect or omission or reconcile any inconsistency in this Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)     To hear and determine any application for compensation for services rendered and reimbursement of expenses incurred to the extent authorized to be paid or reimbursed under this Plan or the Bankruptcy Code;

(i)     To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan, the Confirmation Order, the Sale Order, the Asset Purchase Agreement, any transactions, distributions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)     To hear and determine disputes arising in connection with statements for fees and expenses incurred by counsel or any other professional retained by the Plan Administrator;

(k)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate this Plan or to maintain the integrity of this Plan following consummation;

(l)     To determine any other matters that may arise in connection with or are related to this Plan, the Confirmation Order, the Sale Order, the Asset Purchase Agreement, or any other contract, instrument, release or other agreement or document related to this Plan;

(m)     To hear and determine all disputes involving the existence, nature or scope of the discharges, injunctions and releases granted under this Plan, the Confirmation Order or the Bankruptcy Code;

(n)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(o)     To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

(p)     To consider and act on the compromise and settlement of any Claim, Equity Interest or Cause of Action by, on behalf of, or against the Debtors' Estates, to the extent that Bankruptcy Court approval is required;

(q)     To hear and determine any rights, Claims, Equity Interests or Causes of Action held by or accruing to the Debtors, the Liquidation Trust and all related reserves pursuant to this Plan, the Bankruptcy Code or any federal or state law;

(r)     To resolve any matter relating to the sale of property of the Debtors' Estates;

(s)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(t)     To recover all assets of any of the Debtors and property of the applicable Debtor's Estate, wherever located, and to hear and determine all adversary proceedings or other litigations related thereto; and

(u)     To enter a final decree closing the Chapter 11 Cases.

## ARTICLE 14     MISCELLANEOUS PROVISIONS

### Section 14.1 Operations Between the Confirmation Date and the Effective Date

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate their businesses as debtors in possession, subject to the oversight of the CROPF and the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court that are then in full force and effect.

### Section 14.2 Transition of the Affairs of the Debtors' Estates After the Effective Date

Through and including the date that is the first Business Day that is five (5) Business Days after the Effective Date, the CROPF shall use his best efforts to ensure that the affairs of the Debtors' Estates are smoothly transitioned to (i) the Plan Administrator, and (ii) the Successful Bidder, or Merrill Lynch, or its designee (as applicable).  The CROPF shall not receive any additional compensation for the services rendered after the Effective Date and the CROPF's employment by the Debtors shall be deemed terminated on the date that is the first Business Day that is five (5) Business Days after the Effective Date.  On the date that is the first Business Day that is five (5) Business Days after the Effective Date, the CROPF shall transfer any remaining balance of the Effective Date Cash to Merrill Lynch and the CROPF's duties shall be considered completed.

On the Effective Date, all of the Debtors' books and records shall be transferred to Merrill Lynch.  As soon as reasonably practicable after the Effective Date, Merrill Lynch shall make a complete copy of the Debtors' books and records and transfer such copy to the Successful Bidder, if any.

### Section 14.3 Payment of Statutory Fees

All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid by the Plan Administrator with funds from the Plan Expenses Reserve as soon as reasonably practicable after such fees become due and payable.

### Section 14.4 Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### Section 14.5 Exemption from Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange of any security under, in furtherance of, or in connection with, this Plan; or (b) the assignment or surrender of any lease or sublease, or the delivery of any instrument of transfer under, in furtherance of, or in connection with, this Plan, including, without limitation, any deed, asset purchase agreement, bill of sale, assignment, mortgage, deed of trust or similar document executed in connection with any

disposition of assets contemplated by this Plan (including real and personal property), shall not be subject to any stamp tax, real estate transfer tax, recording tax, sales tax, personal property tax, mortgage tax, use tax, or other similar tax, or any Uniform Commercial Code filing or recording fee or similar or other government assessment. The Confirmation Order shall direct the appropriate state or local government officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## Section 14.6 Tax Treatment of the Liquidation Trust

The Unclassified Claims Reserve and the Classified Claims Reserve are each intended to be "disputed ownership funds" as defined in Treasury Regulation section 1.468B-9 for United States federal income tax purposes and the Plan Administrator shall elect to treat the Unclassified Claims Reserve and the Classified Claims Reserve as a separate "disputed ownership fund" in accordance with Treasury Regulation section 1.468B-9. All parties, including the Debtors, the Plan Administrator, the Liquidation Trust, and the beneficiaries of the Unclassified Claims Reserve and the Classified Claims Reserve, shall report for tax purposes consistent with the foregoing treatment and satisfy any additional tax compliance requirements in Treasury Regulation section 1.468B-9. The Plan Administrator shall be the "administrator" of each disputed ownership funds for purposes of Treasury Regulation section 1.468B-9. Each disputed ownership fund, and not its beneficiaries, shall be treated as the owner of the assets transferred to it, and each disputed ownership fund shall be treated as a separate taxable entity for United States federal income tax purposes. If the assets from the Plan Expenses Reserve are used to pay any Plan Expenses of the Unclassified Claims Reserve or the Classified Claims Reserve, for federal income tax purposes, such funds shall be treated as contributed to the respective disputed ownership fund.

The Causes of Action transferred to the Liquidation Trust shall be treated as transferred to a disregarded entity for United States federal income tax purposes of Merrill Lynch. Merrill Lynch shall be treated as the owner of the assets of such disregarded entity and report its income, gain, loss and expense for federal income tax purposes. The Plan Administrator shall provide Merrill Lynch with all information required by Merrill Lynch to determine its federal, state and local tax liability and satisfy any other obligations under law.

## Section 14.7 Determination of Tax Liabilities

The Debtors or the Plan Administrator (as applicable) and Merrill Lynch shall, pursuant to section 505(b) of the Bankruptcy Code, have the right to request an expedited determination of an any unpaid liability of the Debtors' Estates for any tax incurred during the administration of the Chapter 11 Cases. Neither the Merrill Lynch Released Parties nor the Successful Bidder, if any, shall have any obligation for such tax liability and sole recourse for payment of such tax liability shall be against the Unclassified Claims Reserve. As of the Effective Date, the Plan Administrator will be responsible for preparing and filing any tax forms or returns on behalf of the Debtors' Estates; provided, however, that the Plan Administrator shall not be responsible for preparing or filing any tax forms for holders of Equity Interests in the Debtors (which Equity Interests shall be cancelled pursuant to this Plan), but shall provide such holders with any information they reasonably require to prepare such forms.

## Section 14.8 Fifty Percent Shareholder

Unless otherwise ordered by the Bankruptcy Court, on and after the Confirmation Date, any "Fifty Percent Shareholder" within the meaning of section 382(g)(4)(D) of the Internal Revenue Code of 1986, as amended, shall be enjoined from claiming a worthless stock deduction with respect to any

Equity Interest held by such shareholder for any taxable year of such shareholder ending prior to the Effective Date.

## Section 14.9 Exemption from Securities Laws

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance and distribution of any securities contemplated by this Plan and any and all settlement agreements incorporated therein shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any state or local law requiring registration prior to the offering, issuance, distribution or sale of securities. In addition, under section 1145 of the Bankruptcy Code, any securities contemplated by this Plan will be freely tradable by the recipients thereof, subject to (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (b) the restrictions, if any, on the transferability of such securities and instruments; and (c) applicable regulatory approval.

## Section 14.10 Modification and Amendment

The Debtors and Merrill Lynch together may alter, amend, modify or supplement this Plan pursuant to section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of this Plan, the Debtors or the Plan Administrator (as applicable) and Merrill Lynch together may, upon order of the Bankruptcy Court, amend or modify this Plan in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan as may be necessary to carry out the purpose and effects of this Plan. A holder of a Claim against or Equity Interest in the Debtors that has accepted this Plan shall be deemed to have accepted this Plan as altered, amended or modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such holder.

## Section 14.11 Revocation or Withdrawal of the Plan

The Debtors and Merrill Lynch each reserve the right to revoke or withdraw this Plan or the Confirmation Order in each party's sole and absolute discretion prior to the Effective Date as to any or all of the Debtors. If this Plan or the Confirmation Order is revoked or withdrawn, then (a) this Plan; (b) all settlements and compromises set forth in this Plan and not otherwise approved by a separate Final Order of the Bankruptcy Court; (c) any assumption or rejection of an executory contract or unexpired lease effected by this Plan; and (d) any document or agreement executed pursuant to this Plan, shall be deemed null and void with respect to the applicable Debtors without further notice to or order by the Bankruptcy Court; provided, however, such revocation or withdrawal shall not alter or otherwise affect the enforceability or effectiveness of the Sale Order.

In the event that this Plan or the Confirmation Order is revoked or withdrawn, nothing in this Plan, and no actions taken in preparation for consummation of this Plan shall (a) constitute a waiver or release of any Claim by or against or Equity Interest in the applicable Debtors, Merrill Lynch or any other entity or party in interest; (b) prejudice in any manner the rights of the Debtors, Merrill Lynch or any other entity or party in interest; (c) constitute an admission, acknowledgment, offer or undertaking by the Debtors, Merrill Lynch or any other entity or party in interest; (d) constitute a waiver or release of the rights of the Debtors or Merrill Lynch, or its designee, to move to dismiss any of the Chapter 11 Cases or convert any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; or (e) alter or otherwise affect the enforceability or effectiveness of the Sale Order.

## Section 14.12          Reservation of Rights

Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall have entered the Confirmation Order and the Effective Date has occurred. Prior to the Effective Date, none of the filing of this Plan, any statement or provision contained herein or the taking of any action by the Debtors or Merrill Lynch with respect to this Plan, shall be or shall be deemed to be (a) an admission or waiver of any rights of the Debtors or Merrill Lynch, or its designee, of any kind, including with respect to the holders of Claims or Equity Interests or as to any treatment or classification of any contract or lease; or (b) a waiver or release of the rights of the Debtors or Merrill Lynch, or its designee, to move to dismiss any of the Chapter 11 Cases or convert any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.

## Section 14.13          Severability

In the event that prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the joint request of the Debtors and Merrill Lynch, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and in no way will be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## Section 14.14          Notice of Entry of Confirmation Order and Relevant Dates

As soon as reasonably practicable after entry of the Confirmation Order, the Debtors shall, as directed by the Bankruptcy Court, publish and serve on all known parties in interest and holders of Claims against and Equity Interests in the Debtors, notice of the entry of the Confirmation Order and all relevant deadlines and dates under this Plan, including, without limitation, the deadline for filing Administrative Expense Claims and Rejection Damage Claims.

## Section 14.15          Courts of Competent Jurisdiction

In the event that the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases or this Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## Section 14.16          No Admissions

As to contested matters, adversary proceedings and other Causes of Action, this Plan shall not constitute or be construed as an admission of any fact or liability, stipulation, or waiver, but rather as a statement made in settlement negotiations. This Plan shall not be admissible in any non-bankruptcy proceeding nor shall it be construed to be conclusive advice on the tax and other legal effects of this Plan as to holders of Claims against and Equity Interests in the Debtors.

### Section 14.17          Closing of the Chapter 11 Cases

When a Debtor's Estate is fully administered, the Plan Administrator may request that the Bankruptcy Court enter a final decree closing the applicable Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

### Section 14.18          Rates

This Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.  Where a Claim has been denominated in foreign currency on a proof of claim, the Allowed amount of such Claim shall be calculated in currency of the United States of America based upon the conversion rate in place as of the Commencement Date and in accordance with section 502(b) of the Bankruptcy Code.

### Section 14.19          Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit, schedule or supplement hereto provides otherwise, the rights, duties and obligations arising under this Plan and any agreements, documents and instruments executed in connection with this Plan (except as otherwise expressly provided in such agreements, documents and instruments) shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws of such jurisdiction.

### Section 14.20          Schedules, Exhibits and Supplements

All schedules, exhibits and supplements to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.  Copies of the schedules, exhibits and supplements to this Plan can be obtained by downloading such documents from the Bankruptcy Court's website (located at www.nysb.uscourts.gov).

### Section 14.21          Notices

To be effective, all notices, requests and demands to or upon the Debtors and Merrill Lynch shall be in writing and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**If to the Debtors:**

FRED LEIGHTON HOLDING, INC.
766 Madison Avenue, 5th Floor
New York, New York  10065
Telephone:  (212) 288-5055
Facsimile:  (212) 288-0286
Attn:     Thomas C. Shull

with copies to:

HERRICK, FEINSTEIN LLP
Counsel to the Debtors
2 Park Avenue
New York, New York 10016

Telephone:  (212) 592-1400
Facsimile:  (212) 592-1500
Attn:  Joshua J. Angel, Esq.

- and -

DEWEY & LEBOEUF LLP
Special Counsel to the Debtors
1301 Avenue of the Americas
New York, New York  10019
Telephone:  (212) 259-8000
Facsimile:  (212) 259-6333
Attn:  Judy G.Z. Liu, Esq.

**If to Merrill Lynch:**

MERRILL LYNCH MORTGAGE CAPITAL INC.
4 World Financial Center
New York, New York  10281
Telephone:  (212) 449-1000
Facsimile:  (212) 449-9015
Attn:  James Masciello


with copies to:

CADWALADER, WICKERSHAM & TAFT LLP
Counsel to Merrill Lynch Mortgage Capital Inc.
One World Financial Center
New York, New York  10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666
Attn:  John J. Rapisardi, Esq.


*     *     *     *     *     *     *

FRED LEIGHTON HOLDING, INC.


By: */s/ Thomas C. Shull*
Name:  Thomas C. Shull
Title:  Chief Restructuring Officer and Plan Facilitator


FRED LEIGHTON LLC


By: */s/ Thomas C. Shull*
Name:  Thomas C. Shull
Title:  Chief Restructuring Officer and Plan Facilitator


PHOENIX NEVADA 1, LLC


By: */s/ Thomas C. Shull*
Name:  Thomas C. Shull
Title:  Chief Restructuring Officer and Plan Facilitator


FRED LEIGHTON BH LLC


By: */s/ Thomas C. Shull*
Name:  Thomas C. Shull
Title:  Chief Restructuring Officer and Plan Facilitator


CALYPSO MINES LLC


By: */s/ Thomas C. Shull*
Name:  Thomas C. Shull
Title:  Chief Restructuring Officer and Plan Facilitator

ENDYMION, LLC

By: */s/ Thomas C. Shull*
Name:  Thomas C. Shull
Title:  Chief Restructuring Officer and Plan Facilitator

FOXTROT LLC

By: */s/ Thomas C. Shull*
Name:  Thomas C. Shull
Title:  Chief Restructuring Officer and Plan Facilitator

TANGO LLC

By: */s/ Thomas C. Shull*
Name:  Thomas C. Shull
Title:  Chief Restructuring Officer and Plan Facilitator

MERRILL LYNCH MORTGAGE CAPITAL INC.

By: */s/ Wendy J. Gorman*
Name:  Wendy J. Gorman
Title:  Senior Vice President