LEVI LUBARSKY & FEIGENBAUM LLP
1185 Avenue of the Americas, 17th Floor
New York, New York 10036
Telephone: (212) 308-6100
Facsimile: (212) 308-8830
Howard B. Levi, Esq.
Gail R. Zweig, Esq.

*Attorneys for FLHI Liquidation Trust*

    -and-

ALTER GOLDMAN & BRESCIA, LLP
550 Mamaroneck Avenue
Suite 510
Harrison, NY 10528
Telephone: (914) 338-0707
Facsimile: (914) 670-0031
Bruce R. Alter, Esq.
Dana P. Brescia, Esq.

*Attorneys for Jeweled Objects LLC*

**HEARING DATE AND TIME:**
July 29, 2011, 10:00 a.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> OLD DELAWARE JEWELS INC., <u>et</u> <u>al</u>., <br><br>         Debtors. | Chapter 11 <br><br> Case No. 08-11363 (RDD) <br><br> (Jointly Administered) |
| In re: <br><br> JEWELED OBJECTS LLC, <br><br>         Debtor. | Chapter 11 <br><br> Case No. 10-11831 (RDD) |

| | |
|---|---|
| FLHI LIQUIDATION TRUST,<br><br>Plaintiff,<br><br>-against-<br><br>ROBERT HOBERMAN, JILL HOBERMAN, MITCHEL MAY, MACE BLICKMAN, JERRY BLICKMAN, INC., JEWELED OBJECTS LLC, RALPH ESMERIAN, R. ESMERIAN, INC., FINE JEWELS ASSOCIATES, CALABASH ASSOCIATES LLC, KNIGHT JEWELS LLC, GIUSEPPE TORRONI, AND G. TORRONI S.A.,<br><br>Defendants. | Adversary Proceeding<br><br>No. 09-01913 |
| JOEL BOYARSKY, ACCOUNTANTS PROPRIETARY FINANCIAL SERVICENET, INC., THE PAMELA B. BLATTNER LIVING TRUST, LBV RETIREMENT PLAN, ARNOLD WOLOWITZ, CAROL WOLOWITZ and THE CAROL AND ARNOLD WOLOWITZ FOUNDATION, INC., individually and derivatively on behalf of JEWELED OBJECTS LLC,<br><br>Plaintiffs,<br><br>-against-<br><br>ROBERT HOBERMAN, MITCHEL MAY, HGL MANAGEMENT LLC, RALPH ESMERIAN, R. ESMERIAN, INC., FINE JEWELS ASSOCIATES, PRECIOUS STONES COMPANY, BENJAMIN ZUCKER, and BECKMAN, LIEBERMAN & BARANDES, LLP,<br><br>Defendants. | Adversary Proceeding<br><br>No. 10-03198 |

**REPLY IN FURTHER SUPPORT OF THE JOINT MOTION OF FLHI LIQUIDATION TRUST AND JEWELED OBJECTS LLC FOR AN ORDER AUTHORIZING AND APPROVING THE STIPULATION OF SETTLEMENT BETWEEN AND AMONG FLHI LIQUIDATION TRUST, JEWELED OBJECTS LLC AND OTHER PARTIES; AND GRANTING RELATED RELIEF**

TO THE HONORABLE ROBERT DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

In further support of the Motion [Case No. 08-11363 Dkt. No. 934; Case No. 11831 Dkt. No. 66] for entry of an order authorizing and approving the Stipulation of Settlement,

which was attached as Exhibit A to the Motion (the "Settlement Agreement"),[1] and in response to the opposition papers filed by Joel Boyarsky, Accountants Proprietary Financial Servicenet, Inc., the Pamela B. Blattner Living Trust, LBV Retirement Plan, Arnold Wolowitz, Carol Wolowitz, and The Carol Wolowitz and Arnold Wolowitz Foundation, Inc. (collectively, the "Boyarsky Parties"), Movants respectfully state as follows:

## PRELIMINARY STATEMENT[2]

1. Cloaked in meritless accusations, including the inaccurate allegation that the Settlement Agreement was not negotiated at arms' length, the Boyarsky Parties claim that JO will sustain no meaningful benefit from the Settlement Agreement based on their misleading and plainly inaccurate assumptions about the value of the 6 items of jewelry and jeweled objects that are listed on Exhibit A-2 to the Settlement Agreement (the "Exhibit A-2 Items"), and the value to be gained by the JO estate from its entering into the Settlement Agreement.

2. As described more fully below, the Settlement Agreement confers multiple benefits on JO's illiquid estate and creditors. Indeed, the record establishes that JO, as a debtor-in-possession, has exercised sound, independent business judgment by entering into and structuring the settlement, insofar as it affects JO, as it has. If the Settlement Agreement is authorized and approved by this Court, JO will no longer be weighted down by FLHI Trust's substantial claims; JO will no longer be tied up in protracted litigation; JO will be free to sell the Exhibit A-2 Items with certificates of provenance, in the ordinary course of JO's business, free and clear of all liens, interests, claims and encumbrances; and JO will receive all proceeds of the

---

[1] Because Exhibit A to the Motion did not contain a fully executed copy of the Settlement Agreement, a fully executed copy of it is annexed hereto as **Exhibit 1**.

[2] Capitalized terms used but not defined herein shall have the same meanings and definitions ascribed to them in the Motion.

3

sale that exceed $400,000.00. Because JO presently anticipates the sales price of the Exhibit A-2 Items to be $700,000.00, there will be a net gain of $200,000.00 to the JO estate (factoring in the $100,000.00 coming from the Zucker Defendants). JO's illiquid coffers will thereby be enriched by this deal and JO can then begin to satisfy the only remaining claims asserted against JO's estate, which, aside from professional fees, are the claims of secured creditors and equity holders, including the Boyarsky Parties. *See* JO's Schedules and the List of Equity Security Holders, annexed hereto as **Exhibit 2**. Indeed, by disposing of all the pending litigations in which JO is party through this Settlement Agreement, JO has paved the way for a confirmable plan.

3. For these reasons, and as set forth below and in the Motion, this Court should find that the Settlement Agreement is fair and reasonable to JO and the FL Debtors, and their respective estates and creditors. Accordingly, Movants respectfully submit that this Court should reject the Boyarsky Parties' efforts to undo the result of an arduous, lengthy mediation process that they did not want to participate in from the outset, and authorize and approve the Settlement Agreement in its entirety and pursuant to Bankruptcy Rule 9019.

**THE NEGOTIATIONS, AND THE STRUCTURE AND BASIC TERMS OF
THE SETTLEMENT AMONG THE PARTIES**

4. The Settlement Agreement is the result of many months of arms' length bargaining of the Parties under the guidance of the Court-appointed Mediator, John J. Jerome.[3] Given the multiple parties and their competing interests, the negotiations were protracted and

---

[3] Given the confidential nature of the mediation process, Movants decline to comment extensively on the discussions or the Boyarsky Parties' role in them, and state that the Boyarsky Parties were invited but declined to participate in the mediation after the negotiations between and among FLHI Trust, on the one hand, and JO, the Hoberman Defendants, the May Defendants, the Blickman Defendants and the Torroni Defendants, on the other, were completed. Moreover, during the drafting of the Settlement Agreement, the Boyarsky Parties were asked to provide comments, which they did, and those comments impacted the drafting of JO's releases.

broke down more than once; there were lengthy, heated discussions with the Mediator who helped broker a deal, with only a fraction of the bargaining taking place in one-on-one in-person meetings and the other discussions taking place in lengthy telephone calls; and the Parties were extremely far apart for much of the time.

5. The Settlement Agreement that was ultimately reached fully and finally resolves the many claims and contentions by and among most of the parties to the Hoberman Adversary Proceeding and the Boyarsky Adversary Proceeding. Specifically, the Settlement Agreement fully and finally resolves (i) all outstanding issues, contentions and claims between and/or among FLHI Trust, the Hoberman Defendants, the May Defendants, the Torroni Defendants, the Blickman Defendants, and JO in the Hoberman Adversary Proceeding; (ii) all of the outstanding issues, contentions and claims between and/or among JO, HGL Management LLC, the Hoberman Defendants, the May Defendants, the Hoberman Investors and the Zucker Defendants in the Boyarsky Adversary Proceeding; and (iii) the disputes as to title over the Contested Property and the Uncontested Property such that JO and the Hoberman Defendants will receive good and marketable title in all such Property for the purpose of and pursuant to the terms of the Settlement Agreement.

6. Through the Settlement Agreement, which is described more fully in the Motion,[4] FLHI Trust will receive the sum of $2,100,000.00 (the "Settlement Amount") in settlement of FLHI Trust's claims in the Hoberman Adversary Proceeding against JO, the Hoberman

---

[4] To the extent there are any conflicts between the terms of the Settlement Agreement and the description of the Settlement Agreement in this Reply or in the Motion, the Settlement Agreement governs.

5

Defendants, the May Defendants, the Torroni Defendants and the Blickman Defendants.[5] Of this Settlement Amount, $2 million will be funded directly by the Parties sued by FLHI Trust -- the May Defendants' share is $110,000.00; the Torroni Defendants' share is $427,424.00; the Blickman Defendants' share is $85,623.00; the Hoberman Defendants' share is a minimum of $936,000.00 and a maximum of $1,376,953.00, depending on how much money, if any, JO is able to raise from the sale of the Exhibit A-2 Items; and JO's share is a minimum of $100,000.00 and a maximum of $500,000.00, depending on how much money JO is able to raise from the sale of the Exhibit A-2 Items. *See* Settlement Agreement § 1.

7. If JO is unable to fund $400,000.00 of its share of the Settlement Amount through the anticipated sale by it of the Exhibit A-2 Items, the Hoberman Defendants are obligated to pay the shortfall, up to and including the entire $400,000.00, to FLHI Trust on the Payment Due Date. Settlement Agreement § 1(f). Further, based on JO's agreement to settle its derivative claims against the Zucker Defendants in the Boyarsky Adversary Proceeding for $100,000.00, and JO's directing these proceeds to FLHI Trust, the Zucker Defendants are funding the other $100,000.00 of JO's share of the Settlement Amount.[6] *See* Settlement Agreement § 1(c).

8. As part of its settlement with FLHI Trust, JO will obtain good and marketable title to the Exhibit A-2 Items, free and clear of any liens, interests, claims and encumbrances. *See* Settlement Agreement § 3. Moreover, because FLHI Trust's direct recovery from JO is limited to $400,000.00 and marketable title in the Exhibit A-2 Items will vest in JO, JO will

---

[5] No claims by any Party against Ralph Esmerian or R. Esmerian Inc. are waived, compromised or otherwise affected by the Settlement Agreement. *See* Settlement Agreement § 7.

[6] In accordance with the express terms of the Settlement Agreement, almost $700,000.00, which sum was required to be wired to the escrow account of counsel to FLHI Trust within seven (7) calendar days of the date of the Agreement, has already been transmitted and received into escrow.

receive *all* proceeds of sale of the Exhibit A-2 Items that exceed $400,000.00. Based on JO's receipt of an offer to purchase the Exhibit A-2 Items for $700,000.00, JO represents that it expects to net $200,000.00 above the amount it is contributing directly ($400,000.00) and indirectly ($100,000.00 through settlement with the Zucker Defendants) to the Settlement Amount.

9. JO, however, does not bear any risk that if it is not able to raise sufficient funds from the sale of the Exhibit A-2 Items by the Payment Due Date, the FLHI Trust's claims against JO will be reinstated. Because JO has extracted what amounts to a guarantee by the Hoberman Defendants of the $400,000.00 portion of the Settlement Amount due and owing from JO, JO obtains a complete release of the FLHI Trust's claims against it regardless of what portion, if any, JO itself funds of the Settlement Amount. Under the Settlement Agreement, it is the Hoberman Defendants, and *not* JO, who bear the financial burdens that may result from the failure of a sale of the Exhibit A-2 Items to close for any reason.

### THE SETTLEMENT AGREEMENT IS REASONABLE AND PROPER PURSUANT TO BANKRUPTCY RULE 9019

10. As set forth in the Motion, to approve a compromise or settlement under Bankruptcy Rule 9019(a), this Court must find that the compromise or settlement is reasonable, and in the best interests of the debtor's estate and its creditors. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). The Second Circuit has identified the key factors that this Court should consider in deciding whether to approve a proposed settlement, and they include: (1) the balance between the possibility of success in the litigation(s) being settled, and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the interests of the creditors, including the degree to

which they either do not object to or affirmatively support a proposed settlement; (4) whether the parties in interest support the proposed settlement; (5) the competency and experience of counsel who support the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arms' length negotiations. *See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (internal quotation marks and citations omitted); *see also* Motion at 13 (citing cases).

11. Although this Court must independently evaluate the settlement and its reasonableness, "[i]t is not the court's task to determine whether the settlement proposed by the parties is the best possible, or fairest, or most appropriate resolution of the dispute. Such an assessment would be tantamount to the court becoming a principal, rather than a neutral, in the parties' negotiations . . . . [T]he court must carefully consider the wishes of the majority of creditors and afford proper deference to their reasonable views." *In re Hilsen*, 404 B.R. 58, 70 (Bankr. E.D.N.Y. 2009) (citing cases).

12. Here, not a single party in interest complains that the Settlement Agreement is unfair or unreasonable insofar as it impacts FLHI Trust and the FL Debtors, their estates and creditors. Moreover, although the Examiner in the Esmerian Debtors' Cases is not a party to the Settlement Agreement, on behalf of the Esmerian Debtors, the Examiner does not oppose the Settlement Agreement, including, without limitation, its providing for good and marketable title to the Contested Property and the Uncontested Property to vest in JO and the Hoberman Defendants. Indeed, the Examiner has written and executed a letter so stating, which is annexed hereto as **Exhibit 3**.

13. The only parties in interest who have filed an objection to the Settlement

Agreement are the Boyarsky Parties, who include two of the alleged, secured creditors of the JO estate and comprise almost 50 percent of JO's equity holders. Behind all of the hyperbole and mud-slinging, the crux of the Boyarsky Parties' objection is that the Settlement Agreement releases Robert Hoberman, Mitchel May, HGL Management LLC and the Zucker Defendants from alleged, pre-petition derivative claims that the Boyarsky Parties initiated, but which claims are now owned and may be compromised only by JO so long as this Court finds, as Movants submit it should, that the terms of the Settlement Agreement exceed the minimum threshold of reasonableness.

14. Of the factors that this Court must consider in performing its analysis, "[p]erhaps the most important factor to be considered in assessing a proposed settlement is the balance between the benefits of a successful outcome in the litigation discounted to reflect the likelihood of that outcome, and the benefits of the proposed settlement." *In re Iridium Operating LLC*, 478 F.3d at 462. Although this factor often tips in favor of settlement, it still is entitled to great weight, and favors approval of the settlement before the Court in this case.

15. Certainly the fact that both adversary proceedings that are affected by the Settlement Agreement have been pending for more than a year, with so little progress having been made by the parties in advancing those litigations in discovery, much less toward ultimate resolution, argues in favor of truncating these litigations now before even more time passes.[7]

16. In addition, there are a myriad of valuable benefits to JO (as well as to FLHI Trust) that arise from the Settlement Agreement. First, the Settlement Agreement resolves all of

---

[7] The Parties to the Settlement Agreement further recognized the likely, additional hurdles and complications they would face in pursuing their respective claims and contentions because a central witness is Ralph Esmerian, who was recently convicted for, among other things, lying to this Court in connection with the bankruptcy proceedings in the FL Debtors' Cases, and will commence serving a 72 months' sentence imprisonment in a federal penitentiary in the near future.

FLHI Trust's claims against JO, which exceed $1,400,000.00, for no more than $500,000.00. Second, JO's payment is structured to maximize value to JO's estate and its creditors. Of JO's share of the Settlement Amount, $100,000.00 is coming from the Zucker Defendants, who have already wired these monies into escrow. Further, because FLHI Trust will receive the $400,000.00 of the Settlement Amount regardless of whether JO itself funds it or the Hoberman Defendants fund it, FLHI Trust has agreed to release JO with respect to any claim it has ever had against JO relating to the FLHI Amended Complaint and the Hoberman Adversary Proceeding. *See* Settlement Agreement § 6(i). There are meaningful benefits of the Settlement Agreement to the JO estate and its creditors.

17. Third, JO is assured that it will receive any and all "upside" arising from the sale of the Exhibit A-2 Items. Based on the $700,000.00 offer that JO has received for the Exhibit A-2 Items, this "upside" is presently anticipated to be valued at $200,000.00 for the JO estate. Lastly, by resolving all of the pending litigations involving JO, JO will be in a position to propose a confirmable plan. Thus, the components of the Settlement Agreement, insofar as they relate to JO, are beneficial to JO, its estate and its creditors.

18. This Court should give little weight to the Boyarsky Parties' objection that they "were deprived of their day in court" (at ¶ 5) because the Settlement Agreement compromises the alleged, derivative claims that the Boyarsky Parties initiated on behalf of JO against the Zucker Defendants, Robert Hoberman, Mitchel May and HGL Management LLC. That is because JO, as a debtor-in-possession, owns and alone is vested with the power to settle pre-petition derivative claims. *See Smart World Technologies, LLC v. Juno Online Servs., Inc. (In re Smart World Technologies, LLC)*, 423 F.3d 166, 174-75 (2d Cir. 2005) (holding that the debtor-in-possession, as the estate's legal representative, has the sole power to manage and settle causes

10

of action that belong to the estate).[8]

19. Indeed, to the extent that viable pre-petition derivative claims were actually asserted by the Boyarsky Parties in their Complaint in the Boyarsky Adversary Proceeding, JO owns such claims and is entitled to settle them so long as the settlement it reaches is fair and reasonable to the estate of JO and its creditors, which Movants submit it is here. *See In re Adelphia Commc'n Corp.*, 544 F.3d 420, 424 (2d Cir. 2008) (holding that it is the Bankruptcy Court's role, not that of a plaintiff vested with derivative standing, to check any potential for abuse by the debtor-in-possession that opts to settle claims, and re-affirming the Second Circuit's prior holdings that a party's right to be heard on settlement does not equate with ownership of the claim or the right to compromise it, which reside solely in the debtor-in-possession) (internal quotation marks and citations omitted); *see also In re Ionosphere Clubs, Inc.*, 17 F.3d 600, 602 (2d Cir. 1994) (pre-petition derivative claims against officers of a debtor-corporation are property of the debtor-corporation's estate).

20. The record before this Court compels the conclusion that JO's settling of the so-called pre-petition derivative claims against the Zucker Defendants, Robert Hoberman, HGL Management LLC and Mitchel May is a reasonable and sound exercise of business judgment, and not an abuse of it. At the outset, the Zucker Defendants were represented by their own counsel throughout the bargaining process. Moreover, even the Boyarsky Parties have made virtually no effort to demonstrate that the derivative claims against the Zucker Defendants were

---

[8] Furthermore, the Boyarsky Parties' complaint that that they "were prematurely dismissed from the mediation" (at ¶ 5) is neither accurate nor a basis upon which this Court should reject what is otherwise a fair settlement of claims by the debtor-in-possession, which actually owns these claims. In fact, the Boyarsky Parties' counsel remained in email communications with the Mediator and some of the Parties' counsel, was invited to comment on the draft Settlement Agreement, and did provide comments, which affected the drafting process by ensuring that JO have releases only with respect to the so-called derivative claims.

11

valuable ones that warrant a more than $100,000.00 settlement.

21. In addition, a careful review of the Boyarsky Parties' Complaint [Boyarsky Adversary Proceeding, Dkt. No. 1] and their objection (at ¶¶ 36-37) reveals that the Boyarsky Parties have not actually asserted colorable *derivative* claims on behalf of JO against Robert Hoberman, Mitchel May or HGL Management LLC because, among other things, the Boyarsky Parties' claims are largely predicated on the direct injuries that they allegedly sustained as a result of the allegedly fraudulent acts that Hoberman and May engaged in to entice the Boyarsky Parties to invest in JO. *See Ceribelli v. Elghanayan*, 990 F.2d 62, 63 (2d Cir. 1993) (finding that plaintiff-shareholder could maintain direct action against seller-sponsor of cooperative shares because the plaintiff-shareholder had alleged that the sale of cooperative shares to him by the seller-sponsor followed on the heels of the seller-sponsor's sale of the building, which he had previously owned, to the cooperative at an inflated price, and these allegations constituted a *direct* harm to the plaintiff-shareholder). Accordingly, advised by its own counsel, JO made a pragmatic decision that the viability of JO's derivative claims was doubtful such that the compromise of those claims would not cause measurable harm to JO. Since the individual, direct claims of the Boyarsky Parties, if they have stated any valid ones, are unaffected by the Settlement Agreement, those claims may still be pursued by the Boyarsky Parties. Settlement Agreement § 7.

22. Furthermore, the Boyarsky Parties' complaint that that they "were prematurely dismissed from the mediation" (at ¶ 5) is neither accurate nor a basis upon which this Court should reject what is otherwise a fair settlement of claims by the debtor-in-possession, which actually owns these claims. In fact, the Boyarsky Parties' counsel remained part of the settlement process via email communications, was invited to comment on the draft Settlement

Agreement, and did provide comments that affected the drafting of the Settlement Agreement to ensure that JO gave releases only with respect to the so-called derivative claims.

23. Finally, the Settlement Agreement, when viewed as a total package, reveals that JO has exercised sound business judgment in resolving its affirmative claims on the terms specified in the Settlement Agreement. The cash contributions of Robert Hoberman and Mitchel May; the Hoberman Defendants' guarantee of $400,000.00 of JO's share of the Settlement Amount; and the Zucker Defendants' absorbing of the other $100,000.00 of JO's share of the Settlement Agreement are each factors that contributed to the Parties' collective resolution of their claims. Accordingly, the releases of the Zucker Defendants, Hoberman, May and HGL Management LLC (a limited liability company controlled by Hoberman), are supported by ample consideration, which is enhanced by Hoberman and May's facilitating JO's anticipated sale of the Exhibit A-2 Items at a net benefit to JO's estate.[9] Moreover, the fact that JO is fully resolving all pending litigations in which it is a party paves the way for a confirmable plan.

24. In sum, JO's simultaneous resolution of (a) the claims asserted against it by FLHI Trust, and (b) the alleged, derivative claims originally asserted by the Boyarsky Parties on behalf of JO against the Zucker Defendants, Robert Hoberman, Mitchel May and HGL Management LLC in the Boyarsky Adversary Proceeding, enables JO to subsidize the settlement with FLHI Trust, in part, with the monies obtained through the resolution of its affirmative claims. This structure genuinely benefits JO's estate because it caps JO's liability to its largest creditor, finds sources of payment of its portion of the Settlement Amount that do not require JO to go into its

---

[9] In addition to all the other reasons cited, which show the settlement of the derivative claims asserted by JO is reasonable, is the fact that any judgment granting JO monetary relief on its affirmative, derivative claims is not only a remote possibility, but even if such a judgment were obtained, it would likely be years before it materializes and could then be thwarted by the difficulties associated with collection.

very limited cash coffers, and gives JO marketable title to the Exhibit A-2 Items. All of the foregoing will benefit the JO estate by increasing the likelihood that JO can satisfy its obligations to creditors and JO's members, including the Boyarsky Parties, and confirm a plan.

25. For all of the foregoing reasons and those set forth in the Motion, Movants submit that the Settlement Agreement is an exercise of sound business judgment by JO and is in the best interest of JO and its creditors, in addition to the best interest of the FL Debtors and their estates and creditors. Indeed, Movants submit that the Settlement Agreement is well above "the lowest point in the range of reasonableness." *See In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983).

26. Accordingly, Movants respectfully request that the Court (i) authorize and approve the Settlement Agreement; (ii) find that the sale of the six (6) items of jewelry and jeweled objects listed on Exhibit A-2 of the Settlement Agreement may properly be sold in the ordinary course of JO's business; (iii) find that a sale pursuant to 363(c) of the Code is not required; and (iv) find that the sale and transfer of the Contested Property and the Uncontested Property is free and clear of all liens, interests, claims and encumbrances, with such liens, interests, claims and encumbrances to attach to the proceeds of the sale of the Property.

WHEREFORE, the Movants respectfully request that this Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: New York, New York
July 28, 2011

                        LEVI LUBARSKY & FEIGENBAUM LLP

                        */s Gail R. Zweig*
                        Howard B. Levi, Esq.
                        Gail R. Zweig, Esq.

                        1185 Avenue of the Americas, 17th Floor
                        New York, New York 10036
                        Telephone: (212) 308-6100
                        Facsimile: (212) 308-8830

                        *Attorneys for FLHI Liquidation Trust*

                        ALTER GOLDMAN & BRESCIA, LLP

                        */s Bruce R. Alter*
                        Bruce R. Alter, Esq.
                        Dana P. Brescia, Esq.

                        550 Mamaroneck Avenue
                        Suite 510
                        Harrison, NY 10528
                        Telephone: (914) 338-0707
                        Facsimile: (914) 670-0031

                        *Attorneys for Jeweled Objects LLC*