# Exhibit 1

# STIPULATION OF SETTLEMENT

This STIPULATION OF SETTLEMENT (the "Settlement Agreement"), dated as of July 11, 2011, is entered into by and among (i) FLHI Liquidation Trust (the "Trust"); (ii) Robert Hoberman ("Hoberman"); (ii) Jill Hoberman ("Jill Hoberman"); (iii) Calabash Associates LLC ("Calabash", and collectively with Hoberman and Jill Hoberman, the "Hoberman Defendants"); (iv) HGL Management LLC; (v) Mitchel May ("May"); (vi) Knight Jewels LLC ("Knight Jewels" and collectively with May, the "May Defendants"); (vii) Giuseppe Torroni ("Torroni"); (viii) G. Torroni S.A. (G. Torroni S.A., collectively with Torroni, the "Torroni Defendants"); (ix) Mace Blickman ("Blickman"); (x) Jerry Blickman, Inc. ("JBI", and collectively with Blickman, the "Blickman Defendants"); (xi) Jeweled Objects LLC ("JO"); (xii) Benjamin Zucker ("Zucker"); (xiii) Charles Zucker Cultured Pearl Corp. d/b/a Precious Stones Company ("PSC", and collectively with Zucker, the "Zucker Defendants"); and (xiv) Bernard Hoberman; (xv) Ruth Hoberman; (xvi) Larry Goldstein; (xvii) Steve Lesser; (xviii) Robert Wolfson; and (xix) Jacqueline May (Bernard Hoberman, Ruth Hoberman, Larry Goldstein, Steve Lesser, Robert Wolfson, and Jacqueline May, collectively, the "Hoberman Investors") (all signatories to this Settlement Agreement are collectively referred to herein as the "Parties" or, each individually, as a "Party").

## RECITALS

A.  On April 15, 2008, Calypso Mines LLC, Tango LLC, Endymion, LLC, Foxtrot LLC, Old Delaware Jewels Inc. f/k/a Fred Leighton Holding, Inc., Old New York Jewels LLC f/k/a Fred Leighton LLC, Phoenix Nevada 1, LLC and Old Hills Jewels LLC f/k/a Fred Leighton BH LLC (collectively, the "FL Debtors"), each commenced a voluntary case in the Bankruptcy Court under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), which were later jointly administered under Case No. 08-11363 (RDD) (collectively, the "FL Cases").

B.     On October 30, 2009, the FL Debtors and Merrill Lynch Mortgage Capital Inc. ("Merrill") filed with the Bankruptcy Court the *First Amended Joint and Consolidated Plan of Reorganization and Liquidation* (the "FL Amended Plan") in the FL Cases.

C.     On November 9, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered its *Findings of Fact, Conclusions of Law, and Order under 11 U.S.C. § 1129(a) and (b) and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming First Amended Joint and Consolidated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "FL Confirmation Order").

D.     The Effective Date of the FL Amended Plan occurred on November 10, 2009.

E.     The Trust is the Liquidation Trust established pursuant to Section 7.10 of the FL Amended Plan.

F.     Pursuant to the FL Confirmation Order, "all Claims against the [FL] Debtors asserted or that may be asserted by [Ralph] Esmerian [("Esmerian")] or REI [R. Esmerian Inc., and hereinafter "REI")] shall be subordinated pursuant to section 510(c) of the Bankruptcy Code to all Allowed General Unsecured Claims, and neither Esmerian nor REI shall receive or retain any property or interest in property on account of such Claims." FL Confirmation Order ¶ 43.

G.     Pursuant to the FL Confirmation Order, all Causes of Action (as defined in the FL Amended Plan) were transferred to the Trust solely for the benefit of Merrill.

H.     On March 2, 2010, the Trust filed an Amended Complaint (the "FLHI Amended Complaint") in the adversary proceeding captioned *FLHI Liquidation Trust v. Robert Hoberman, et al.*, Adv. No. 09-01913 (RDD) (the "Hoberman Adversary Proceeding"). In the FLHI Amended Complaint, the Trust contends that various items of jewelry and jeweled objects are property of the FL Debtors, and seeks a judgment, in substance and in part, avoiding the transfers

2

of such items and directing the recovery of the property of the FL Debtors that was transferred or the value of such property. The property that is subject to the Hoberman Adversary Proceeding is described in the FLHI Amended Complaint as (i) 6 items of jewelry and jeweled objects that were transferred as part of a 2006 transaction between REI and JO, as amended by agreements dated March 27, 2007 and March 27, 2008 (together, the "REI/JO Transaction"); (ii) 37 items of jewelry and jeweled objects that were part of the November 2008 transactions with Jill Hoberman (the "Jill Hoberman Transactions"), and (iii) 3 other items of jewelry and jeweled objects (Tango M12064, Endymion MP3558, and the emerald stone that was part of Foxtrot NA.1681) that were transferred at various other times.

I.    The Trust's claims in the Hoberman Adversary Proceeding are Causes of Action, as defined in the FL Amended Plan.

J.    The Trust is authorized to enter into this Settlement Agreement pursuant to the FL Amended Plan and the FL Confirmation Order.

K.    On April 18, 2010, the Hoberman Defendants, the May Defendants, the Torroni Defendants and the Blickman defendants filed a motion to dismiss the FLHI Amended Complaint, and have contended that, to the extent their motions are denied, they have various defenses to the claims set forth in the FLHI Amended Complaint.

L.    On May 10, 2010, the Esmerian Debtors and Fine Jewels Associates ("FJA") filed an Answer in the Hoberman Adversary Proceeding.

M.    On April 7, 2010, JO filed a voluntary petition under Chapter 11 of the Bankruptcy Code, which is captioned as *In re Jeweled Objects LLC*, Case No. 10-11831 (RDD) (the "JO Case"). JO is a debtor in possession, and has engaged in the business of purchasing and selling jewelry, jeweled objects, antiquities and artwork.

N.   On April 8, 2010, an action that had been pending in the New York State Supreme Court involving, among others, JO, Hoberman, HGL Management LLC, May, the Esmerian Debtors and the Zucker Defendants was removed to federal court and transferred to the Bankruptcy Court and is pending as the adversary proceeding captioned *Joel Boyarksy et al. v. Robert Hoberman et al.*, Adv. No. 10-03198 (RDD) (the "Boyarsky Adversary Proceeding"). The Boyarsky Adversary Proceeding concerns claims relating to all of the items of jewelry and jeweled objects that were part of the REI/JO Transaction, and includes cross-claims asserted against the Zucker Defendants.

O.   On May 24, 2010, Stewardship Credit Arbitrage Fund, LLC ("SCAF LLC"), Stewardship Credit Arbitrage Fund, Ltd. ("SCAF Ltd."), and Northlight Fund LP ("Northlight") filed involuntary petitions in the Bankruptcy Court for relief under chapter 7 of the Bankruptcy Code against each of the Esmerian Debtors, captioned as *In re Ralph Esmerian*, Case No. 10-12721 (RDD) (the "Ralph Esmerian Case") and *In re R. Esmerian, Inc.*, Case No. 10-12719 (the "REI Case" and, collectively with the Ralph Esmerian Case, the "Esmerian Debtors' Cases"). On July 23, 2010, the Bankruptcy Court entered Orders converting the Esmerian Debtors' Cases from cases under chapter 7 to cases under chapter 11 of the Bankruptcy Code.

P.   On or about August 18, 2010, R. Todd Neilson was appointed the examiner (the "Examiner") in each of the Esmerian Debtors' Cases, and thereby became the examiner vested with expanded powers pursuant to the Bankruptcy Court's *Order Granting Debtor's Motion for Appointment of Examiner with Expanded Powers and Denying Trustee Motion Without Prejudice* entered in each of the Esmerian Debtors' Cases on or about August 5, 2010.

Q.   As a result of good faith, arms' length negotiations, and in an effort to avoid the expense, inconvenience, and uncertainty of litigation, pursuant to the terms hereof and subject to

the approval of the Bankruptcy Court (i) the Trust, the Hoberman Defendants, the May Defendants, the Torroni Defendants, the Blickman Defendants, and JO have agreed to resolve all outstanding issues, contentions and claims between and/or among them in the Hoberman Adversary Proceeding; (ii) JO, HGL Management LLC, the Hoberman Defendants, the May Defendants, the Hoberman Investors and the Zucker Defendants have agreed to resolve all of the outstanding issues, contentions and claims between and/or among them in the Boyarsky Adversary Proceeding; and (iii) the Parties have agreed that good and marketable title to the Contested Property (as defined below) and the Uncontested Property (as defined below) shall vest in JO and the Hoberman Defendants for the purpose of and pursuant to the terms of this Settlement Agreement.

**NOW THEREFORE**, in consideration of the mutual covenants, representations, disclosures and agreements between the Parties set forth in this Settlement Agreement, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    Settlement Amount. Unless the Parties shall agree in writing to a later date, the sum of $2,100,000.00 (two million and one hundred thousand dollars) (the "Settlement Amount") shall be paid to the Trust, as follows:

      a.  $427,424.00 of the Settlement Amount shall be paid to the Trust by the Torroni Defendants.

      b.  $85,623.00 of the Settlement Amount shall be paid to the Trust by the Blickman Defendants.

      c.  $100,000.00 of the Settlement Amount shall be paid to the Trust by the Zucker Defendants, and represents the proceeds of settlement of JO's, the Hoberman Defendants', the May Defendants' and HGL Management LLC's claims and causes of action against the Zucker Defendants in the Boyarsky Adversary Proceeding.

d.  $110,000.00 of the Settlement Amount shall be paid to the Trust by the May Defendants.

e.  $1,376,953.00 of the Settlement Amount shall be paid to the Trust by the Hoberman Defendants (the "Hoberman Payment Amount"), as follows:

  (i)  $976,953 of the Hoberman Payment Amount is to be derived from the anticipated sale by the Hoberman Defendants of 20 items of jewelry and jeweled objects that were part of the Jill Hoberman Transactions, which are described on Exhibit A-1 hereto.

  (ii)  $400,000 of the Hoberman Payment Amount to be derived from the anticipated sale by JO of the 6 items of jewelry and jeweled objects that were part of the REI/JO Transaction, which are described on Exhibit A-2 hereto.

f.  Notwithstanding the Hoberman Defendants' and/or JO's inability to effect a sale of one or more items of the property described on Exhibits A-1 and A-2 (together, the "Contested Property") and regardless of any sales price with respect thereto, the Hoberman Defendants shall remit the Hoberman Payment Amount no later than the Payment Due Date (as defined below) to the Trust by wiring such Amount in immediately available funds to the Trust, care of LLF, in accordance with the wire instructions set forth on the Schedule annexed hereto. Should the Hoberman Defendants not remit the Hoberman Payment Amount in full on or before the Payment Due Date (as defined below), the Bankruptcy Court shall enter a judgment for the entire Hoberman Payment Amount against each and all of the Hoberman Defendants.

g.  No later than 7 calendar days from the date of this Agreement, each Party required under subsections (a) through and including (d) of this Section to pay a portion of the Settlement Amount shall remit such portion of the Settlement Amount to the escrow account of Levi Lubarsky & Feigenbaum LLP, as escrow agent ("LLF"), in immediately available funds by wire transfer in accordance with the wire instructions set forth on the Schedule annexed hereto. LLF shall hold such portions of the Settlement Amount in escrow, and shall deliver such portions of the Settlement Amount to the Trust no earlier than 11 calendar days after entry of a Final Order (as defined below) approving of this Settlement Agreement (the "Payment Due Date"). Should a Final Order (as defined below) not be entered approving of this Settlement Agreement, LLF shall promptly return to each Party the monies that such Party transmitted to LLF to be held in escrow pursuant to the terms of this Section.

2.  Sale of Contested Property. Upon entry of a Final Order, the Contested Property may be sold by the Hoberman Defendants and JO, or their respective designees (or such other

6

person(s) as may be agreed by the Parties). In the event the Contested Property is sold within 10 calendar days after entry of a Final Order approving this Settlement Agreement, all proceeds from such sale(s) shall be remitted to the escrow account of Rattet Pasternak, LLP, as escrow agent (the "Rattet Firm"), and thereafter, on the Payment Due Date, delivered by the Rattet Firm, on behalf of the Hoberman Defendants, to the Trust in accordance with Section 1(f); provided, however, that if the foregoing amount of the proceeds of sale(s) of the Contested Property is less than the Hoberman Payment Amount, the Hoberman Defendants must pay to the Trust, on or before the Payment Due Date, the additional amount still owing to the Trust to satisfy the Hoberman Payment Amount. In addition, until such time as the proceeds of the sale(s) of the Contested Property are remitted to the Trust, the Trust shall have a lien on such proceeds of sale(s). As used in this Settlement Agreement, the term "Final Order" shall mean and refer to (i) an order of a court as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending or, (ii) in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order may be appealed, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired; provided, however, that the possibility that a motion under Section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any comparable rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order; provided, further, that notwithstanding the foregoing, an order that is subject to appeal shall be treated as a Final Order for purposes of this Settlement Agreement if no stay of the order has been obtained.

3.  <u>Good and Marketable Title</u>. The Trust acknowledges and agrees to convey to the Hoberman Defendants and JO good and marketable title to the Contested Property. Upon the Bankruptcy Court's approval of this Settlement Agreement, the Court will find that (i) JO and the Hoberman Defendants have or have had good and marketable title to all of the Contested Property and to other jewelry and jeweled objects that were part of the REI/JO Transaction and the Jill Hoberman Transactions, which other jewelry and jeweled objects are described on Exhibit B hereto (the items on Exhibit B, collectively, the "<u>Uncontested Property</u>"); (ii) JO and the Hoberman Defendants may freely market and sell all of the Contested Property and the Uncontested Property; and (iii) the Trust and all other Parties waive their right to assert a claim to the Contested Property and the Uncontested Property other than the obligations to pay under the provisions of this Settlement Agreement and the lien on the proceeds of the sale(s) of the Contested Property provided for in Section 2.

4.  <u>Other FL Debtor Property</u>. The Hoberman Investors, each of them, represent and warrant that, aside from the items listed on Exhibits A-1, A-2 and B hereto, they do not possess any other item of jewelry or jeweled objects belonging to the FL Debtors.

5.  <u>Grand Jury Subpoena(s)</u>. The Parties represent that, upon their receipt of a fully executed copy of this Settlement Agreement, they will have no objections to the withdrawal of the October 7, 2010 grand jury subpoena(s) issued to any or all of the Hoberman Defendants and JO by the United States Attorney's Office for the Southern District of New York (the "<u>USAO</u>"), and the Trust agrees to so inform the USAO.

6.  <u>Releases.</u>

(i)  <u>Releases of JO, the Hoberman Defendants, the May Defendants, the Torroni Defendants, the Blickman Defendants, the Hoberman Investors and the Zucker Defendants by the Trust.</u>  Upon the Effective Date of this Settlement Agreement (as defined below), the Trust, on behalf of itself, current or former officers, directors, trustees, beneficiaries, employees, agents, representatives, predecessors, successors, administrators, partners, limited partners, parents, affiliates, subsidiaries, members and assigns, hereby releases and discharges each of (a) the Zucker Defendants; and (b) JO, the Hoberman Defendants, the May Defendants, the Torroni Defendants, the Blickman Defendants, and the Hoberman Investors, and each of their respective, current or former officers, directors, trustees, beneficiaries, employees, agents, representatives, predecessors, successors, administrators, partners, limited partners, parents, affiliates, subsidiaries, members, assigns, attorneys, auditors, accountants and other professionals (the foregoing persons in this subsection (b), collectively, the "<u>Hoberman Adversary Released Parties</u>") from any and all claims, demands, liabilities, obligations, damages, causes of action, payments, fees, losses and expenses, known or unknown, asserted or unasserted, of whatever nature, ever had, now existing or hereafter arising out of or relating to the FLHI Amended Complaint or the Hoberman Adversary Proceeding, except for the obligations of the Hoberman Adversary Released Parties and the Zucker

Defendants arising under this Agreement. The "<u>Effective Date</u>" of this Settlement Agreement shall be the day after the Trust has received the entire Settlement Amount.

(ii) <u>Release by JO, the Hoberman Defendants, the May Defendants, the Torroni Defendants, the Blickman Defendants, the Hoberman Investors and the Zucker Defendants of the Trust</u>. Upon the Effective Date of this Settlement Agreement, JO, the Hoberman Defendants, the May Defendants, the Torroni Defendants, the Blickman Defendants, the Hoberman Investors and the Zucker Defendants, on behalf of themselves, and each of their current or former officers, directors, trustees, beneficiaries, employees, agents, representatives, predecessors, successors, administrators, partners, limited partners, parents, affiliates, subsidiaries, members and assigns, hereby each release and discharge the Trust, and its current or former current or former officers, directors, trustees, beneficiaries, employees, agents, representatives, predecessors, successors, administrators, partners, limited partners, parents, affiliates, subsidiaries, members, assigns, attorneys, auditors, accountants and other professionals (collectively, the "<u>FLHI Released Parties</u>") from any and all claims, demands, liabilities, obligations, damages, causes of action, payments, fees, losses, and expenses, known or unknown, asserted or unasserted, of whatever nature, ever had, now existing or hereafter arising out of or relating to the FLHI Amended Complaint or the Hoberman Adversary Proceeding.

(iii) <u>Release of JO, the May Defendants, the Hoberman Defendants, HGL Management LLC and the Hoberman Investors by the Zucker Defendants.</u> Upon the Effective Date of this Settlement Agreement, the Zucker Defendants, on behalf of themselves and each of their current or former officers, directors, trustees, beneficiaries, employees, agents, representatives, predecessors, successors, administrators, partners, limited partners, parents, affiliates, subsidiaries and assigns, hereby each releases and discharges each of JO, the May Defendants, the Hoberman Defendants, HGL Management LLC and the Hoberman Investors and each of their respective current or former officers, directors, trustees, beneficiaries, employees, agents, representatives, predecessors, successors, administrators, partners, limited partners, parents, affiliates, subsidiaries, assigns, attorneys, auditors, accountants and other professionals (collectively, the "<u>Boyarsky Adversary Released Parties</u>") from any and all claims, demands, liabilities, obligations, damages, causes of action, payments, fees, losses and expenses, known or unknown, asserted or unasserted, of whatever nature, ever had, now existing or hereafter arising out of or relating to the REI/JO Transaction, except for the obligations of the Boyarsky Adversary Released Parties arising under this Settlement Agreement.

(iv) <u>Release of the Zucker Defendants by JO, the May Defendants, the Hoberman Defendants, HGL Management LLC and the Hoberman Investors.</u> Upon the Effective Date of this Settlement Agreement, each of

JO, the May Defendants, the Hoberman Defendants, HGL Management LLC and the Hoberman Investors, on behalf of themselves and each of their respective current or former officers, directors, trustees, beneficiaries, employees, agents, representatives, predecessors, successors, administrators, partners, limited partners, parents, affiliates, subsidiaries and assigns, hereby each releases and discharges each of the Zucker Defendants and each of their respective current or former officers, directors, trustees, beneficiaries, employees, agents, representatives, predecessors, successors, administrators, partners, limited partners, parents, affiliates, subsidiaries, members, assigns, attorneys, auditors, accountants and other professionals (collectively, the "Zucker Released Parties") from any and all claims, demands, liabilities, obligations, damages, causes of action, payments, fees, losses and expenses, known or unknown, asserted or unasserted, of whatever nature, ever had, now existing or hereafter arising out of or relating to the REI/JO Transaction, except for the obligations of the Zucker Released Parties arising under this Settlement Agreement.

(v)  Release by and between JO, the May Defendants, the Hoberman Defendants, HGL Management LLC, and the Hoberman Investors. Upon the Effective Date of this Settlement Agreement, each of JO, the May Defendants, the Hoberman Defendants, HGL Management LLC and the Hoberman Investors, on behalf of themselves and each of their respective current or former officers, directors, trustees, beneficiaries, employees, agents, representatives, predecessors, successors, administrators, partners,

12

limited partners, parents, affiliates, subsidiaries and assigns, hereby each releases and discharges one another and each of their respective current or former officers, directors, trustees, beneficiaries, employees, agents, representatives, predecessors, successors, administrators, partners, limited partners, parents, affiliates, subsidiaries, members, assigns, attorneys, auditors, accountants and other professionals from any and all claims, demands, liabilities, obligations, damages, causes of action, payments, fees, losses and expenses, known or unknown, asserted or unasserted, of whatever nature, ever had, now existing or hereafter arising out of or relating to the REI/JO Transaction, except for each of their respective obligations arising under this Settlement Agreement.

7.    <u>Reservation of Rights</u>.  Nothing herein shall be construed to settle any matter other than as expressly agreed upon by the Parties pursuant to the terms of this Settlement Agreement.  In addition, nothing contained in this Settlement Agreement shall be construed as a release of (a) Esmerian, (b) REI, (c) the Esmerian Debtors, and/or (c) FJA, from any claims, demands, liabilities, obligations, damages, causes of action, payments, fees, losses, and expenses, known or unknown, asserted or unasserted, of whatever nature, ever had or now existing. Further, nothing contained herein shall be deemed or shall constitute a waiver of the claims asserted by JO, the Hoberman Defendants and the May Defendants against the Esmerian Debtors and FJA with respect to certain items of jewelry and jeweled objects purportedly pledged in connection with the REI/JO Transaction, but not turned over or delivered by REI to JO.  It is expressly understood that the individual claims of Joel Boyarsky, Accountants Proprietary Financial Servicenet, Inc., the Pamela B. Blattner Living Trust, LBV Retirement Plan, Arnold

13

Wolowitz, Carol Wolowitz, and the Carol Wolowitz and Arnold Wolowitz Foundations, Inc., as asserted in the Boyarsky Adversary Proceedings, against Hoberman, May, HGL Management LLC, the Esmerian Debtors, the Zucker Defendants and Beckman, Lieberman & Barandes, LLP, are in no way released, waived or compromised by this Settlement Agreement. For the avoidance of doubt, nothing in this Agreement shall be construed as an acknowledgement or agreement that Joel Boyarsky, Accountants Proprietary Financial Servicenet, Inc., the Pamela B. Blattner Living Trust, LBV Retirement Plan, Arnold Wolowitz, Carol Wolowitz, and the Carol Wolowitz and Arnold Wolowitz Foundations, Inc. have stated or can state valid individual claims against Hoberman, May, HGL Management LLC, the Esmerian Debtors, the Zucker Defendants and Beckman, Lieberman & Barandes, LLP or that such individual claims are actionable.

      8.    <u>Jurisdiction; Governing Law; Proceedings to Enforce this Agreement.</u> This Settlement Agreement shall be considered to have been executed and fully performed in the State of New York and shall be governed by the laws of the State of New York without giving effect to any conflicts of laws principles thereof. Without limiting any Party's appellate rights, the parties agree that the Bankruptcy Court shall have exclusive jurisdiction to resolve any disputes hereunder. If the Bankruptcy Court no longer has exclusive jurisdiction, the Parties each and all consent and agree that they are subject to the jurisdiction of the United States District Court for the Southern District of New York for purposes of enforcing this Settlement Agreement and any or all of its terms. The Parties further each and all consent and agree that neither this Settlement Agreement nor any of its terms shall be admissible in any suit or proceeding whatsoever as evidence of or as an admission of any liability, it being understood that this Settlement Agreement and its terms may be introduced as evidence only in any case or proceeding to

14

enforce the provisions of this Settlement Agreement or to defend against any claim released herein.

9. <u>Compromise</u>. This Settlement Agreement constitutes a compromise. Neither this settlement, nor anything contained in this Settlement Agreement, shall be construed as an admission of liability on the part of any Party.

10. <u>No Inducement or Prior Modification</u>. Each Party represents and warrants that no promise, inducement, or agreement not expressed herein has been made to such Party in connection with this Settlement Agreement, and that this Settlement Agreement constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof. Each Party hereby agrees that such Party will make no claim at any time or place that this Settlement Agreement has been orally altered or modified or otherwise changed by oral communication of any kind or character.

11. <u>Letter to Be Provided by the Examiner</u>. This Settlement Agreement is subject to the receipt, within 2 calendar days of the date of this Settlement Agreement, by the Parties, of a letter from the Examiner substantially in the form annexed hereto as Exhibit C, which provides that the Examiner or his successor in interest, as the case may be, on behalf of the Esmerian Debtors (i) does not object to this Settlement Agreement; (ii) does not object to good and marketable title passing to the Hoberman Defendants and JO with respect to the Contested Property and the Uncontested Property upon the Bankruptcy Court's approval of this Settlement Agreement; (iii) will use reasonable efforts to search for and deliver to the Hoberman Defendants and JO appropriate certificates of provenance with respect to the Contested Property and the Uncontested Property to the extent that such certificates of provenance are in the Examiner's

possession, custody or control and are necessary to effectuate a sale of the Contested Property and the Uncontested Property.

12. **Bankruptcy Court Approval; Dismissal of the FLHI Amended Complaint in the Hoberman Adversary Proceeding.** This Settlement Agreement is subject to Bankruptcy Court approval in the FL Cases and the JO Case, and the findings by the Bankruptcy Court to be made in accordance with Section 3. Upon the Effective Date of this Settlement Agreement, the Parties shall take such actions as are necessary to dismiss their claims with prejudice (including, as applicable, all counterclaims and cross-claims) in the Hoberman Adversary Proceeding and the Boyarsky Adversary Proceeding (except the claims expressly reserved in Section 6 of this Settlement Agreement).

13. **Waiver of Jury Trial.** Each Party hereto agrees waives to the fullest extent permitted by applicable law any right it may have to a trial by jury with respect to any litigation directly or indirectly arising out of, under or in connection with this Settlement Agreement or the transactions contemplated by this Settlement Agreement.

14. **Litigation Fees and Expenses.** Each Party hereto agrees to bear its own attorneys' fees and costs arising out of or related to this Settlement Agreement, including without limitation, the negotiation, documentation and Bankruptcy Court approval of this Settlement Agreement.

15. **Counterparts.** This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument. A facsimile signature shall also constitute an original signature of this Settlement Agreement.

16.  **Headings for Convenience Only.** The Parties acknowledge that the paragraph headings contained herein are only for the convenience of the Parties. The substance and provisions hereof control without regard to the headings.

17.  **Preparation of Settlement Agreement.** The Parties acknowledge that this Settlement Agreement has been negotiated and prepared in an arms' length transaction and that all Parties are deemed to have drafted this Settlement Agreement and this Settlement Agreement shall not be interpreted against any Party as the draftsperson.

18.  **Authority to Execute Settlement Agreement.** The Parties, each of them, by executing this Settlement Agreement, acknowledge that they have read this Settlement Agreement in its entirety; that they have received the advice of legal counsel of their own choosing regarding the form, substance and effect of this Settlement Agreement; that they fully understand and agree to its terms and provisions; and that they have executed this Settlement Agreement of their own free will and accord, and without any duress, coercion or undue influence exerted by or on behalf of any other Party. The Parties to this Settlement Agreement, each of them, further represent and warrant that they are competent and possess the full and complete authority to covenant, and that they have not assigned such rights, or any of their claims released herein, to any other party by way of explicit assignment, subrogation, operation of law, or otherwise, and that they intend and agree that this Settlement Agreement is final and binding and understand that, in the event of a breach, each Party may seek relief.

19.  **Other Acts and Documents.** The Parties agree to undertake such other acts and execute such other documents as may be reasonably necessary to affect the purpose and intent of this Settlement Agreement.

20.     Successors and Assigns. This Settlement Agreement, except as otherwise expressly provided herein, will be binding on, and will inure to the benefit of, the respective legatees, devisees, heirs, executors, administrators, assigns, directors, trustees, successors and partners of interest of the parties. This Settlement Agreement is not intended to have any third party beneficiaries.

21.     Amendment or Modification. This Settlement Agreement may only be amended or modified by a written instrument signed by all Parties. The Parties agree that any oral modification or termination, or modification or termination by conduct of any of the Parties will not be effective or enforceable unless the Parties have executed a written amendment expressly referring to this Settlement Agreement.

22.     Waiver of Breach. The waiver by one Party of any breach of this Settlement Agreement by the other Party will not be deemed a waiver of a future breach of the same provision, or a waiver of any other provision of this Settlement Agreement.

23.     Agreement Subject to Bankruptcy Court Approval. This Agreement is subject to the approval of the Bankruptcy Court, and the terms and provisions of the agreement contained herein shall be void and of no further force and effect if such approval is not granted.

24.     Entire Agreement. This Settlement Agreement supersedes any and all other agreements and contains the entire agreement of the Parties except as otherwise provided for herein.

[THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, the Parties execute this Settlement Agreement as of the day and year first written above.

_____
ROBERT HOBERMAN


_____
JILL HOBERMAN

CALABASH ASSOCIATES LLC

By:

_____
Title

HGL MANAGEMENT LLC

By: _____
Title _Member_


_____
MITCHEL MAY

KNIGHT JEWELS LLC

By:

_____
Title

JEWELED OBJECTS, LLC, as debtor and debtor-in-possession

By: _____
Title _Member_

**IN WITNESS WHEREOF**, the Parties execute this Settlement Agreement as of the day and year first written above.

ROBERT HOBERMAN
_____

_(signature)_

_____
JILL HOBERMAN

CALABASH ASSOCIATES LLC

By: _(signature)_
_____

Title _member_

HGL MANAGEMENT LLC

By:

_____

Title

_____
MITCHEL MAY

KNIGHT JEWELS LLC

By:

_____

Title

JEWELED OBJECTS, LLC, as debtor and debtor-in-possession

By:

_____

Title

**IN WITNESS WHEREOF**, the Parties execute this Settlement Agreement as of the day and year first written above.

_____
ROBERT HOBERMAN


_____
JILL HOBERMAN


CALABASH ASSOCIATES LLC

By:

_____
Title


HGL MANAGEMENT LLC

By:

_____
Title

_____
MITCHEL MAY


KNIGHT JEWELS LLC

By:

_____
Title


JEWELED OBJECTS, LLC, as debtor and debtor-in-possession

By:

_____
Title

GIUSEPPE TORRONI

G. TORRONI, S.A.

By: _____

Title _____

_Mace Blickman_

MACE BLICKMAN

JERRY BLICKMAN, INC.

By: _Mace Blickman    President_

Title _____

BENJAMIN ZUCKER

CHARLES ZUCKER CULTURED PEARL CORP.
D/B/A PRECIOUS STONES COMPANY

By: _____

Title _____

BERNARD HOBERMAN

RUTH HOBERMAN

LARRY GOLDSTEIN

STEVE LESSER

20

_(signature)_

GIUSEPPE TORRONI

G. TORRONI, S.A.

By:

_(signature)_ President

Title

_(signature)_

MACE BLICKMAN

JERRY BLICKMAN, INC.

By:

_(signature)_ President

Title

_____

BENJAMIN ZUCKER

CHARLES ZUCKER CULTURED PEARL CORP.
D/B/A PRECIOUS STONES COMPANY

By:

_____

Title

_____

BERNARD HOBERMAN

_____

RUTH HOBERMAN

_____

LARRY GOLDSTEIN

_____

STEVE LESSER

GIUSEPPE TORRONI
_____

G. TORRONI, S.A.

By: _____

Title _____

MACE BLICKMAN
_____

JERRY BLICKMAN, INC.

By: _____

Title _____

Ben̄jamin Zucker —
_____
BENJAMIN ZUCKER

CHARLES ZUCKER CULTURED PEARL CORP.
D/B/A PRECIOUS STONES COMPANY

By: _____
Benjamin Zucker — President
Title

BERNARD HOBERMAN
_____

RUTH HOBERMAN
_____

LARRY GOLDSTEIN
_____

STEVE LESSER
_____

20

GIUSEPPE TORRONI
_____

G. TORRONI, S.A.

By: _____

Title _____


MACE BLICKMAN
_____

JERRY BLICKMAN, INC.

By: _____

Title _____


BENJAMIN ZUCKER
_____

CHARLES ZUCKER CULTURED PEARL CORP.
D/B/A PRECIOUS STONES COMPANY

By: _____

Title _____

_Bernard Hoberman_
BERNARD HOBERMAN

_Ruth Hoberman_
RUTH HOBERMAN


LARRY GOLDSTEIN
_____


STEVE LESSER
_____

GIUSEPPE TORRONI
_____

G. TORRONI, S.A.

By: _____

Title _____


MACE BLICKMAN
_____

JERRY BLICKMAN, INC.

By: _____

Title _____


BENJAMIN ZUCKER
_____

CHARLES ZUCKER CULTURED PEARL CORP.
D/B/A PRECIOUS STONES COMPANY

By: _____

Title _____


BERNARD HOBERMAN
_____

RUTH HOBERMAN
_____

LARRY GOLDSTEIN
_____

STEVE LESSER
_____

ROBERT WOLFSON

_____
JACQUELINE MAY

FLHI LIQUIDATION TRUST

By:   CCV RESTRUCTURING, LLC, Trustee of FLHI
      Liquidation Trust

        By: _____
            Maureen A. Donahoe, Member

As to Section 1 hereof:

LEVI LUBARSKY & FEIGENBAUM LLP

By: _____

Name: _____
Title: _____

As to Section 2 hereof:

RATTET PASTERNAK, LLP

By: _____

Name: _____
Title: _____

21

_____
ROBERT WOLFSON


_____
JACQUELINE MAY

FLHI LIQUIDATION TRUST

By:     CCV RESTRUCTURING, LLC, Trustee of FLHI
        Liquidation Trust

        By: _____
              Maureen A. Donahoe, Member


As to Section 1 hereof:

LEVI LUBARSKY & FEIGENBAUM LLP

By:

        _____
        Name:
        Title:


As to Section 2 hereof:

RATTET PASTERNAK, LLP

By:

        _____
        Name:
        Title:

21

## Schedule - Wire Transfer Instructions

Citibank, N.A.
330 Madison Avenue
New York, New York 10017
Account Name: Levi Lubarsky & Feigenbaum LLP
Attorney Trust Account - IOLA
Account #: 46878046
ABA #: 021000089

| Owner | ID | Description |
|---|---|---|
| Calypso | 2 | The Duchess of Newcastle's Diamond Brooch, circa 1887 |
| Calypso | 24 | Engraved Diamond & Ruby Butterfly Brooch by Boucheron, circa 1894 |
| Calypso | 42 | Salome Brooch by Lalique,1904 |
| Calypso | 46 | Winter Landscape Pendant by Lalique, circa 1900 |
| Endymion | M12874 | Platinum Diamond Necklace.\|191-Baguette Diamonds appx. 34cts.\|51-Round Large Diamonds appx. 9.20cts.\|104-Round Diamonds appx. 7.50cts. |
| Endymion | M13389R | Platinum Diamond Pendant Necklace, French 1950's.\|Necklace:\|188-Baguette Diamonds appx. 18cts.\|1-Bullet Shape Diamond appx. 0.10ct.\|Removable Pendant:\|5-Round Diamonds appx. 1.25cts.\|12-Marquise Shape Diamonds appx. 3.00cts.\|162-Baguette Diamonds appx. 8.00cts.\| |
| Endymion | MP57 | Platinum Carved Emerald and Diamond Jungle Brooch  1942 1 Carved Emerald 26.71cts. 157 Round Diamonds 1.60cts. 2 Round Rubies  Heinz & Lutz Shop |
| FL | 211 | Platinum Diamond Round Brilliant and Baguette Line Necklace.\|1 Round Diamond 1.15cts, G/SI1.\|GIA Certificate 13576635.\|1 Round Diamond 0.74cts, F/SI1.\|GIA Certificate 11972327.\|1 Round Diamond 0.72cts, G/SI1.\|GIA Certificate 11880010. |
| FL | 13914 | Platinum Sapphire and Diamond Pendant on Chain Necklace, Tiffany & Co. 1 Oval Cushion Shape Sapphire appx. 35cts. 12 Emerald Cut Diamonds appx. 1.10cts. 141 Round Diamonds appx. 3.00cts. 14 Pieces Onyx. 18" Plain Platinum Chain. |

| Owner | ID | Description |
|---|---|---|
| Tango | M10922R2 | Platinum Sapphire and Diamond Necklace/Brooch<br>1-Oval Sapphire 62.93cts.<br>10-Baguette Diamonds<br>14-Marquise Diamonds<br>44-Rounds<br>Brooch total 3.80cts.<br><br>239-Round Diamonds<br>28-Round Diamonds<br>10-Square Diamonds<br>Necklace total 14.50cts. |
| Tango | M12760 | Platinum Round Emerald and Diamond Brooch by Gattle<br>1-Heart Shape Diamond appx. 1.90cts.<br>13-Large Baguette Diamonds appx. 1.25cts.<br>7-Small Baguette Diamonds appx. 0.45ct.<br>3-Triangle Shape Diamonds appx. 0.30ct.<br>1-Bullet Shape Diamond appx. 0.30ct.<br>1-Lozen |
| Tango | M12936 | Platinum Diamond Spray Brooch 1950's<br>30-Large Round Diamonds appx. 4.50cts.<br>56-Small Round Diamonds appx. 4.30cts.<br>63-Baguette Diamonds appx. 2.50cts. |
| Tango | MP3404R | 18K Yellow Gold Pink Diamond Brooch<br>1-Cushion Shape Pink Diamond 1.08cts.<br>4-Oval Pink Diamond 1.97cts.<br>Pear Shape Pink Diamonds<br>128-Round Diamonds appx. 16.35cts. |
| Tango | MP3690 | Platinum Emerald and Diamond Bead Pendant Earrings.\|6 Rose Cut Diamonds appx. 5.99cts.\|6 Emerald Beads appx. 2.34cts.\|2 Emerald Beads appx. 18.83cts.\|8 Faceted Diamond Beads appx. 10.40cts.\|2 Diamond Briolettes appx. 6.50cts. |
| Tango | MP3701 | Platinum Lozenge Shape Emerald and Diamond Ring<br>1-Lozenge Shape Emerald 5.54cts.<br>264-Dimaonds 0.92ct. |
| Tango | MP3706 | Emerald and Diamond Bead Necklace\|51 Emerald Beads 75.26cts.\|40 Faceted Diamond Beads 52.40cts.\|Clasp:1 Rose Cut Diamond 3.43cts.\|12 Emerald Beads 3.25cts.\|Platinum\| |

| Owner | ID | Description |
|-------|-----|-------------|
| Tango | MP3741 | Platinum Black Opal and Diamond Necklace<br>1-Black Opal 48.82cts.<br>14-Diamond Beads 15.51cts.<br>1-Rose Cut Diamond 3.81cts.<br>2-Old Mine Diamonds 0.16ct. |
| Tango | MP3835 | Platinum Sapphire and Diamond Ring |
| Tango | NA.3312 | Platinum Cabcochon Emerald and Diamond Ring 1970's<br>2-Cabochon Emeralds 10.04cts.<br>12-Baguette Diamonds 0.57ct. |
| Tango | NA.3314 | Platinum Emerald and Diamond Cluster Pendant Earclips 1968\|Platinum Emerald and Diamond Pendant Earclips\|4-Emeralds 13.03cts.\|4-Pear Shape Diamonds 0.85ct.\|56-Marquise Shape Diamonds 8.25cts. |

| Owner | ID | Description |
|---|---|---|
| Tango | M10427 | Yellow Gold Victorian Jeweled Peacock Brooch en Tremblent Circa 1860<br>Illustrated in Vever Book |
| Tango | M11418 | Platinum and 18K Yellow Gold Canary and Colorless Diamond Bird Brooch Circa 1968 79-Round Canary Diamonds appx. 4.78cts. 288-Round Diamonds appx. 10.51cts. 2-Round Cabochon Ruby Ex 0.40ct. Plat. & 18K YG Mtg. |
| Tango | M08212 | Platinum Diamond Cupid Brooch by Van Cleef and Arpels 1946<br>1-Rose Cut Diamond (Head)<br>1-Triangular Diamond appx. 0.02ct.<br>28-Baguette Diamonds appx. 2.00cts.<br>208-Round Diamonds appx. 6.20cts.<br>Van Cleef & Arpels NY #102142 |
| Tango | NA.2165 | Victorian Red Enamel Snake Bracelet with Three Fancy Cut Emeralds and Old Mine Diamonds on the Head and Rose Cut Diamonds on the Tail English Circa 1860 |
| Endymion | MP3440 | Platinum and Pink Gold Peridot and Pink Diamonds Starfish Brooch\|1-Cushion Shape Peridot 79.35cts.\|427-Marquise Pink Diamonds appx. 40cts.\|5-Natural Pink Pearls 53.32grns.\| |
| Endymion | MP3467 | Platinum & 18K Yellow Gold Three Row Emerald Cut Stones Bracelet<br>48-Oval Diamonds 22.51cts.<br>12-Emerald Cut Emeralds 10.91cts.<br>12-Emerald Cut Sapphires 15.46cts.<br>12-Emerald Cut Canary Diamonds 12.38cts.<br>12-Emerald Cut Rubies 13.39cts.<br>Plat. & 18KYG |

## EXHIBIT B

| Owner | ID | Description |
|---|---|---|
| Calypso | S2 | Jewel Vanity Case with Oriental Scene, Cartier 1927 |
| Calypso | S4 | Jeweled Vanity Case with Medieval Hunting Scene, VCA 1926 |
| Endymion | M11551R | Antique Silver Emerald Bell and Diamond Pendant Earrings.\|2-Emerald Bells 14.95cts. and 14.27cts.\|2-Old Mine Diamonds appx. 2.50cts.\|2-Old Mine Diamonds appx. 1.20cts.\|72-Old Mine & Rose Cut Diamonds appx. 2cts.\|16-Briolette Diamonds appx. 10.79cts.\|2- |
| Endymion | M13210 | Platinum Baguette and Round Diamonds Bracelet Boucheron 1938 84-Baguette Diamonds appx. 11.96cts. 111-Round Diamonds appx. 13.86cts. 90-Round Diamonds appx. 3.38cts. #1647 |
| Endymion | M13223 | Platinum Sapphire and Diamond Bracelet. Drayson English, Circa 1935.\|51 Oval Sapphires appx. 35cts.\|4 Old European Cut Diamonds appx. 1.50cts.\|59 Old European Cut Diamonds appx. 4.50cts.\|44 Baguette Diamonds appx. 3.00cts. |
| Endymion | M13489 | Platinum Diamond Bracelet\|1-Emerald Cut Diamond appx. 1.50cts.\|10-Emerald Cut Diamonds appx. 5.50cts.\|103-Baguette Diamonds appx. 13.50cts.\|6-Marquise Shape Diamonds appx. 2.00cts.\|6-Round Diamonds appx. 0.80ct.\|8-Fancy Cut Diamonds appx.3.00cts. |
| Endymion | MP3466 | Platinum Cushion Shape Kashmir Sapphire and Diamond Earclips 2-Cushion Shape Sapphires 11.19cts. 56-Baguette Diamonds 6.34cts. |

27

| Owner | ID | Description |
|---|---|---|
| Endymion | MP3523 | Platinum Green, Yellow, and White Diamond Butterfly Brooch,\|10 Round Vivid Green Yellow Diamonds 5.88cts.\|1 Cushion Diamond H SI1 5.31cts.\|2 Cushion Diamonds 2.82cts., 3.07cts. (5.89cts.)\|2 Pear Shape Diamonds 5.65cts., 5.66cts. (11.31cts.)\|2 Pear Shape D |
| FL | 11678 | Platinum Diamond Bracelet Circa 1930's\|Baguette Diamonds\|Old Mine Diamonds\|Total appx. 6.50cts. |
| FL | 13230 | 18K Yellow Gold Diamond Briolette Pendant Earrings, Harry Winston.\|Natural Fancy Yellow Diamond Briolette 22.78cts, VS1.\|Original GIA Certificate 14907250.\|Natural Fancy Yellow Diamond Briolette 20.34cts, VS1.\|Original GIA Certificate 14907253 |
| FL | 13231 | 18K Yellow Gold Diamond and Canary Diamond Briolette Necklace, Harry Winston\|Fancy Light Yellow Diamond Briolette 31.90cts. VS1.\|GIA Certificate 14907246.\|18 Diamond Beads appx. 29.98cts.\|74 Marquise Diamonds appx. 17.79cts. |
| FL | 14644 | Platinum Diamond Necklace, Bulgari, circa 1950's.\|3 Old Mine Cushion Cut Diamonds appx. 13.00cts.\|15 Round Diamonds appx. 7.00cts.\|2 Round Diamonds appx. 1.20cts.\|163 Round Diamonds appx. 18.00cts.\|72 Baguette Diamonds appx. 7.00cts.\|Original Fitted Box. |
| FL | 14959 | Double Strand Diamond Bead Necklace with Diamond Tawis.\|180 Faceted Diamond Beads appx. 167.50cts.\|13 Faceted Diamond Tawis Drops appx. 57.54cts.\|52 Round Diamonds appx. 2.73cts.\|1 Oval Rose Cut Diamond appx. 1.16cts. |
| Tango | M12102 | Platinum Onxy Bow Brooch with Onyx and Diamond Tassels Cartier Circa 1910 #70099 In Box with Certificate of Authenticity from Cartier |
| Tango | M12671 | Platinum Diamond Bracelet American, 1940's\|162-Old European Shape Diamonds appx. 27.00cts.\|156-Rectangular Shape Diamonds appx. 19.60cts. |

| Owner | ID | Description |
|---|---|---|
| Tango | M13089R | Platinum Sugarloaf Cabochon Emerald and Diamond Pendant 1910<br>Pendant: 1-Sugarloaf Cabochon Emerald appx. 14.80cts.<br>380-Rose Cut Diamonds appx. 4.00cts.<br>Chain: 78 Round Diamonds appx. 1.60cts. |
| Tango | MP3763 | Platinum Emerald and Diamond Ring\|Square Emerald Cut Emerald 5.78cts.\|2 Trilliant Shape Diamonds appx. 1.20cts. |

## Exhibit C

[Form of letter from the Examiner appointed in the Esmerian Debtor Cases]

As you know, I, R. Todd Neilson (the "Examiner"), am the examiner with expanded powers appointed by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the chapter 11 cases of R. Esmerian, Inc. ("REI") and Ralph Esmerian ("Esmerian", and collectively with REI, the "Esmerian Debtors"). I have been provided with a copy of the Stipulation of Settlement dated as July __, 2011 between and among (i) FLHI Liquidation Trust (the "Trust"); (ii) Robert Hoberman ; (ii) Jill Hoberman; (iii) Calabash Associates LLC ("Calabash", and collectively with Robert Hoberman and Jill Hoberman, the "Hoberman Defendants"); (iv) HGL Management LLC; (v) Mitchel May; (vi) Knight Jewels LLC ; (vii) Giuseppe Torroni; (viii) G. Torroni S.A.; (ix) Mace Blickman; (x) Jerry Blickman, Inc.; (xi) Jeweled Objects LLC ("JO") (xii) Benjamin Zucker; (xiii) Charles Zucker Cultured Pearl Corp. d/b/a Precious Stones Company; (xiv) Bernard Hoberman; (xv) Ruth Hoberman; (xvi) Larry Goldstein; (xvii) Steve Lesser; (xviii) Robert Wolfson; and (xix) Jacqueline May ((the Stipulation of Settlement, hereinafter, the "Settlement Agreement").

On behalf of myself, solely in my capacity as the Examiner in the Esmerian Debtors' Cases, and on behalf of any successor in interest to me as the Examiner in he Esmerian Debtors' Cases, as the case may be, write to state that I (i) have no objections to the Settlement Agreement; (ii) do not object to good and marketable title passing to the Hoberman Defendants and JO with respect to the property identified and described on Exhibits A-1, A-2 and B to the Settlement Agreement (the "Contested and Uncontested Property") upon the Bankruptcy Court's approval of this Settlement Agreement; and (iii) agree to use reasonable efforts to search for and deliver to the Hoberman Defendants and JO appropriate certificates of provenance with respect to the Contested Property and the Uncontested Property to the extent that such certificates of provenance are in the my or my successor's possession, custody or control, as the case may be, and that are necessary to effectuate a sale of the Contested Property and the Uncontested Property by the Hoberman Defendants and JO. In addition, the Examiner has no objections to the withdrawal of the October 7, 2010 grand jury subpoena(s) issued to any or all of the Hoberman Defendants and JO by the United States Attorney's Office for the Southern District of New York In addition, the Examiner has no objections to the withdrawal of the October 7, 2010 grand jury subpoena(s) issued to any or all of the Hoberman Defendants and JO by the United States Attorney's Office for the Southern District of New York.

Nothing in this letter should be construed as my, in my capacity as the Examiner, on behalf of the Esmerian Debtors, or any successor in interest to the Esmerian Debtors or myself as examiner, giving nor receiving any releases or waiving any claims or defenses to *any* person or

entity.  Nor should this letter be construed as making any accommodation other than as expressly set forth herein.

Very truly yours,


R.  TODD  NEILSON,  in  his  capacity  as  the examiner duly appointed by the Bankruptcy Court in  the  chapter  11  cases  of  R.  Esmerian,  Inc.  and Ralph Esmerian